**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| JESSICA FULLER, individually and on behalf of all similarly situated persons,<br><br>        Plaintiffs,<br><br>              v.<br><br>HYDE SCHOOL; LAURA GAULD; MALCOLM GAULD; GEORGIA GAULD MACMILLAN; DONALD MACMILLAN; LAURIE GAULD HURD,<br><br>        Defendants. | Civil Action No. 2:25-cv-00354-NT<br><br>Hon. Nancy Torresen |

# DEFENDANTS' MOTION TO DISMISS
# FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT
# AND INCORPORATED MEMORANDUM OF LAW

Defendant the Hyde School and individual defendants Laura Gauld, Malcolm Gauld, Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd hereby move to dismiss the First Amended Individual and Class Action Complaint ("FAICC") in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### INTRODUCTION

Plaintiff Jessica Fuller purports to represent current and former students of the Hyde School, a residential high school in Bath, Maine in operation since the 1960s.  Plaintiff alleges that over the course of several decades, the Gauld family, including the individual defendants, ran the Hyde School as a scheme to extract free labor from students under the guise of "character development," to reduce the school's grounds maintenance costs.  "[S]tudents were expected to perform unpaid labor, including campus maintenance, cleaning tasks, and landscaping," while allegedly subjected to physical and psychological abuse.  FAICC at 2.  Ms. Fuller asserts sixteen causes of action under federal and state criminal forced labor and human trafficking statutes, and Maine law tort claims.  Ms. Fuller seeks to vindicate alleged harms to over one hundred students over nearly two decades.[1]  *Id.* ¶¶ 128, 131.

Ms. Fuller fails sufficiently to allege a claim against any Defendant.  The only labor she was allegedly forced to perform during the approximately seven months that she attended the school was "pulling weeds," "cutting the grass," "cleaning campus facilities," and similar chores around campus that any teenager could be expected to do as part of caring for one's home.  FAICC ¶¶ 99, 120.  She fails to allege facts demonstrating that she performed these tasks under the kind of physical or psychological coercion prohibited by the criminal statutes.  Nor does she allege facts connecting any of the individual defendants to the harms she allegedly sustained and

---

[1]  Defendants vigorously deny the amended complaint's allegations.

fails even to allege that three of the five individual defendants were involved with the school when she attended in 2014-2015. All of her tort claims, which accrued in 2016 at the latest, are time-barred. Without a cognizable cause of action, Ms. Fuller lacks standing to assert claims on behalf of the putative classes. The complaint should be dismissed.

### STATEMENT OF FACTS

The Hyde School is a "reputable boarding school" for high school students in Bath, Maine founded by Joseph Gauld in 1966. FAICC ¶¶ 1, 3, 166(j). Tuition at the Hyde School is allegedly around $68,300 annually. *Id*. ¶ 29. Joseph Gauld allegedly founded the school as a "character development school." *Id*. ¶ 17. According to the complaint, Joseph Gauld published books, articles, and other materials over several decades in which he promoted his educational model, including alleged "forced labor practices." *Id*. ¶¶ 17, 19-20.

An aspect of Hyde's educational model was a disciplinary system called "Work Crew," which allegedly including "cleaning windows, picking up litter, . . . raking leaves" and "shoveling walkways in February after a Maine snowstorm." *Id*. ¶¶ 35-37. Defendant Malcolm Gauld is quoted as stating, "[w]hile physical labor has a bad rap these days, we've come to value its therapeutic, restorative effect[.]" *Id*. ¶ 38. The school allegedly "promoted its punitive disciplinary model as essential for student growth and development." *Id*. ¶ 41.

"[E]xercise was generally the first line of punishment at Hyde." *Id*. ¶ 53. Students were placed on "5:30," requiring students "to rise at 5:30 AM and perform basic chores around campus" and were "subjected to forced exercise." *Id*. The exercise allegedly "often resulted in students passing out, vomiting, and/or injuring themselves." *Id*. ¶ 54. Next was "2-4," during which students were allegedly suspended from the regular curriculum program and required to perform work duties around campus. *Id*. ¶ 58. Students on "2-4" were required to, among other

chores, "shovel snow from all walkways and common areas on Hyde's campus;" "dig holes,"

"landscape Hyde's campus by moving rocks," "gardening, clearing pathways, and cutting grass;"

"build walls and other structures on Hyde's campus;" "clear out the Hyde school basement that

had visible signs stating asbestos was present;" "work at local farms;" "pick up dead birds and

animals around campus;" "clear brush and cut trees down;" and "landscape staff members'

homes."[2]  *Id*. ¶ 62.  Students on "2-4" were allegedly "forbidden from speaking to other students

or attending classes, and put under severe food restrictions, such as being limited to just peanut

butter and jelly sandwiches."  *Id*. ¶ 60.  Ms. Fuller alleges that she was placed on "2-4" and was

required to perform the following unpaid labor:

    a.  Pulling weeds on the Hyde campus;

    b.  Gardening the Hyde campus;

    c.  Cutting the grass on the Hyde campus;

    d.  Cleaning campus facilities and buildings;

    e.  Cleaning toilets while [*sic*] a rag and bleach while sick;

    f.  Pushing and pulling heavy wheel barrels for long periods of time.

*Id*. ¶¶ 118, 120.

Other students – though not Plaintiff Fuller – were allegedly sent on a "Tude Trip,"

during which they camped at the Hyde School's wilderness property in Eustis, Maine and were

tasked with building structures and clearing trails and brush to prepare the property for use

during Hyde's summer leadership program and orientation program.  *Id*. ¶¶ 67-68, 74, 76-77.

Students allegedly lacked adequate clothes or food while camping and working at the Eustis

property.  *Id*. ¶ 74.  Finally, some students – though not Plaintiff Fuller – were allegedly forced to

---

[2]  The amended complaint includes photos of the alleged forced labor at paragraph 63, in a social media post from 2017 in which defendant Malcolm Gauld allegedly "boasted about said forced labor."  The photos show a group of teenagers raking leaves, which the amended complaint suggests is evidence that Defendants committed crimes under several federal criminal involuntary servitude, forced labor, and human trafficking statutes.

clear brush, move boulders, "and other hard labor" on Seguin Island. *Id*. ¶¶ 78-80. Defendants allegedly "had a contract with the owners of the island under which Defendants had access to it to provide services to students and provided free student labor in exchange." *Id*. ¶ 79.

Defendants allegedly "benefited from this free forced labor by not having to pay normal wages to laborers." *Id*. ¶ 86. Students and families were allegedly "manipulated" "into thinking this forced labor was 'character development' and that it was teaching them morality, responsibility, and giving them an appreciation and respect for community and hard work," and that it was "required for them to develop and grow." *Id*. ¶¶ 87-88. Apart from the forced labor allegations, the amended complaint alleges that "students were subjected to regular surveillance, fear of public humiliation, forced self-disclosure, emotional manipulation, threats of punishment, and isolation." *Id*. ¶ 43.

Plaintiff asserts claims against the Hyde School and five individuals, each of whom are related to founder Joseph Gauld by descent or marriage. The amended complaint alleges that "for nearly sixty years, the Gauld family has operated Hyde as a coordinated enterprise, with each Defendant playing a role in the systematic recruitment, manipulation, and exploitation of students while sharing in the financial benefits generated by Hyde's operations." *Id*. ¶ 25. The specific fact allegations regarding each individual defendant are sparse:

- <u>Defendant Laura Gauld</u> is Joseph Gauld's daughter-in-law and the current President and Principal Officer of Hyde. *Id*. ¶¶ 2-3. She has held executive positions at Hyde since 2004. *Id*. ¶ 27. Hyde allegedly paid her over $310,000 in 2021. *Id*. Laura allegedly "personally implemented and enforced policies requiring student forced labor;" "[d]irectly supervised staff who carried out forced labor assignments;" "[p]ersonally observed and approved the '2-4' forced labor system;" "[m]ade executive decisions to

understaff Hyde to necessitate student labor;" and "[f]ailed to take corrective action when forced labor was reported."  *Id.* ¶¶ 240, 250.

- <u>Defendant Malcolm Gauld</u> is Joseph Gauld's son and Laura Gauld's husband.  *Id.* ¶¶ 2-3. Malcolm was Hyde's Headmaster from 1987-1998, its President from 1998-2018, and currently its Executive Director.  *Id.*  Hyde allegedly paid him "over $250,000 annually" for his various positions at Hyde, and $1,509,153 in 2020 "as Executive Director."  *Id.* ¶ 26.  Malcolm allegedly "designed and implemented forced labor policies;" "[p]ublicly promoted the forced labor system as 'therapeutic;'" "[p]ersonally directed students to perform unpaid labor;" "[c]reated the 'Brother's Keeper'[3] surveillance system to facilitate forced labor;" and "[f]ailed to implement adequate safeguards to protected students from being subjected to forced labor by staff."  *Id.* ¶¶ 241, 251.

- <u>Defendant Georgia Gauld MacMillan</u> is Joseph Hyde's daughter and wife of defendant Donald MacMillan.  *Id.* ¶ 4.  She served at some unalleged time as the head of campus for Hyde's Maine and Connecticut campuses.  *Id.*  Georgia "was and/or is still the Executive Director of Family Education at Hyde."  *Id.*  Georgia allegedly "implemented forced labor policies;" "personally supervised forced labor;" "[r]eceived financial compensation from Hyde's forced labor operations;" "[d]irectly participated in disciplinary decisions that resulted in forced labor;" and "[c]oncealed forced labor practices from families during education sessions."  *Id.* ¶ 242.

- <u>Defendant Donald MacMillan</u> is Joseph Gauld's son-in-law.  *Id.* ¶ 5.  He served at some unalleged time as the Head of School at Hyde "and is a current staff teacher."  *Id.*  Donald allegedly "[p]ersonally directed student forced labor;" "[i]mplemented classroom policies

---

[3] "Brother's Keeper" was allegedly a "surveillance system . . . through which students were required to report infractions to the administration."  FAICC ¶ 33.

that supported the forced labor system;" "[r]eceived compensation from Hyde's forced labor operations;" "[d]irectly supervised students performing unpaid labor;" and "[f]ailed to report forced labor violations despite mandatory reporting obligations." *Id.* ¶ 243.

- Defendant Laurie Gauld Hurd is Joseph Gauld's daughter. *Id.* ¶ 6. She is the current Director of Community Engagement at Hyde. *Id.* Laurie allegedly "marketed Hyde while concealing forced labor practices;" "[r]eceived financial benefit from Hyde's forced labor operations;" "[p]ersonally participated in recruitment that brought students to forced labor conditions;" "[c]reated marketing materials that misrepresented the true nature of student 'work';" and "[a]ctively concealed forced labor practices from the community and prospective families." *Id.* ¶ 244.

The amended complaint does not allege, even on "information and belief," that Georgia, Donald, or Laurie served any role at the school from July 2014 through February 2015, when Plaintiff Fuller attended. Plaintiff Fuller's allegations in support of her own claims, at paragraphs 99-127, refer only to "Defendants" generally, without explaining what any individual defendant did that was unlawful and contributed to her alleged injuries.

Plaintiff Fuller asserts sixteen causes of action: Counts 1-3 and 5-10 assert claims against Hyde and the individual defendants for violations of federal trafficking, involuntary servitude, and forced labor laws, 18 U.S.C. §§ 1584, 1589, 1590, and 1594, and 18 U.S.C. § 2255. Count 4 asserts a claim against Defendants under Maine's human trafficking statutes, 5 M.R.S. § 4701 and 17-A M.R.S. §§ 304 and 305. Ms. Fuller also seeks to bring Counts 1-10 on behalf of current and former Hyde School students. Counts 11-15 assert Maine state law tort claims on behalf of Plaintiff Fuller only against Defendants for negligence, negligent and intentional

infliction of emotional distress, negligent hiring, retention, and supervision, and premises liability.  Count 16 seeks various forms of injunctive relief.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In reviewing the sufficiency of a complaint, the Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  *Lyman v. Baker*, 954 F.3d 351, 360 (1st Cir. 2020) (citations omitted). "Although a complaint does not need 'detailed factual allegations' to survive a motion to dismiss, a plaintiff's factual allegations 'must be enough to raise a right to relief above the speculative level.'"  *Dagi v. Delta Airlines, Inc*., 961 F.3d 22, 27 (1st Cir. 2020) (citation omitted).

## ARGUMENT

I.     **Plaintiff Fuller Fails to State a Claim under the Federal Criminal Forced Labor and Human Trafficking Statutes.**

Counts 1-3 and 5-10 allege that Defendants committed federal forced labor and human trafficking crimes.  These statutes implement the Thirteenth Amendment's prohibitions against slavery. *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017).  Under 18 U.S.C. § 1595, Congress provided victims a private civil remedy against criminal perpetrators and those who knowingly benefit from schemes involving forced labor and human trafficking.  Under § 1595, Ms. Fuller seeks recompense for herself and putative classes for Defendants' alleged criminal

conduct under 18 U.S.C. § 1584 (involuntary servitude) (**Counts 1 and 8**[4]); 18 U.S.C. § 1589 (forced labor) (**Counts 2 and 8**); 18 U.S.C. § 1590 (trafficking for forced labor) (**Counts 3 and 8**); and 18 U.S.C. §§ 1594(a) and (b) (attempt and conspiracy) (**Counts 6 and 7**).  Plaintiff also brings claims under 18 U.S.C. § 2255, which provides a civil remedy for victims of violations of §§ 1589 and 1590 who were minors at the time the alleged violations (**Counts 5 and 9**). Dismissal of each of these claims is warranted, as to both Ms. Fuller and the putative classes.

> **a.  The FACC does not allege that Defendants obtained labor by means of physical or legal coercion as required to state a claim for violation of § 1584.**

Counts 1 and 8 allege Hyde and the individual defendants subjected Ms. Fuller to involuntary servitude in violation of 18 U.S.C. § 1584.  That statute imposes criminal penalties on anyone who "knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term[.]"  18 U.S.C. § 1584.  "[T]he phrase 'involuntary servitude' was intended . . . 'to cover those forms of compulsory labor akin to African slavery[.]'"  *United States v. Kozminski,* 487 U.S. 931, 942 (1988) (citation omitted). The statute is narrow in scope, "limited to cases involving the compulsion of services by the use or threatened use of physical or legal coercion" and does not include "compulsion through psychological coercion."  *Id.* at 948-49; *see also United States v. Alzanki*, 54 F.3d 994, 1001 (1st Cir. 1995).  "Modern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement."  *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 540 (3d Cir. 2012) (citation omitted) (citing cases).

Dismissal of Counts 1 and 8 is warranted because Plaintiff does not allege that any defendant obtained her labor by means of physical or legal threats or coercion.  *See* FAICC

---

[4] Count 8 alleges claims against the individual defendants under § 1595 for the individual defendants' purported violations of 18 U.S.C. §§ 1584, 1589, and 1590.  Count 8 appears to be duplicative of Counts 1-3.

¶¶ 144(a)-(l), 240-44 (describing acts supporting these claims).  Plaintiff does not allege that she experienced the kind of compulsion that the statute criminalizes, where "the victim's only choice is between performing the labor on the one hand and physical and/or legal sanctions on the other."  *Steirer by Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 999 (3d Cir. 1993) *abrogated on other grounds* (citing *Kozminksi*, 487 U.S. at 943).  *Compare with United States v. King*, 840 F.2d 1276, 1280-81 (6th Cir. 1988) (religious sect violated § 1584 where it "repeatedly used and threatened to use physical force to make the children perform labor and . . . the children believed they had no viable alternative but to perform such labor," given the "severity, frequency, and widespread nature of the beatings," which created a "pervasive climate of fear").

### b.  The FACC does not allege a plausible claim under § 1589.

Section 1589 makes it a crime to obtain the labor or services of a person by any one of, or by any combination of, the following means:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589(a).  In Counts 2 and 8, Plaintiff claims Defendants are liable as direct perpetrators and as knowing participants "in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a)."  18 U.S.C. § 1589(b).  Plaintiff Fuller does not allege a plausible claim under § 1589.  While Ms. Fuller generally invokes the language of the statue, she fails to allege *facts* demonstrating that Defendants unlawfully compelled her to remain in servitude within the meaning of the statute.

####### i. Statutes barring trafficking and forced labor were not intended for chores performed as part of an educational program.

Congress did not make it a federal crime to require teenagers at a boarding school to complete chores around campus as part of the maintenance of their shared home.  The statutes at issue here are intended to reach, *inter alia*, domestic slaves in appalling conditions, women held in sexual slavery, and children coerced to work in cobalt mines.[5]  Plaintiff's allegations that she performed lawncare and cleaning as part of her school's "punitive" character development curriculum, and then went home part-way through the school year, are not in the same ballpark.

In *U.S. v. Toviave,* 761 F.3d 623 (6th Cir. 2014), a criminal defendant brought four young relatives from Togo to live with him, where he made them clean, cook, do laundry, and babysit under punishment including beating them if they misbehaved or failed to follow his rules. Overturning the criminal conviction under § 1589, the Sixth Circuit explained that "it has always been true that parents can make their children perform this kind of work.  The forced labor statute could not have been intended to overturn this longstanding parental right."  *Id*. at 626.  That the defendant's treatment of the children was "reprehensible" and "abusive" did not change the analysis.  *Id*.  "[T]reating household chores and required homework as forced labor because the conduct was enforced by abuse either turns the forced labor statute into a federal child abuse statute, or renders the requirement of household chores a federal crime."  *Id*. at 625.  The Court held, absent "clear expression of Congressional intent," it was inappropriate to "transform a statute passed to implement the Thirteenth Amendment . . .  into one that generally makes it a crime for a

---

[5]  *See, e.g.*, *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) (woman held captive and forced to commit sexual acts); *United States v. Callahan*, 801 F.3d 606 (6th Cir. 2015) (woman held captive "in subhuman conditions" and forced to perform labor while subjected to "continual and prolonged abuse"); *Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024) (children recruited to work in dangerous cobalt mining operations).

person *in loco parentis* to require household chores, or makes child abuse a federal crime." *Id.* at 627–29.  Applying the reasoning in *Toviave*, to the extent Ms. Fuller was harmed by the school's disciplinary methods, she was required to seek recourse through claims other than the federal trafficking and forced labor statutes.

Further, federal Courts of Appeals have long recognized that student work within an educational program is not illegal child labor or subject to minimum wage laws.  *See, e.g.*, *Steirer by Steirer*, 987 F.2d at 1000 ("There is no basis in fact or logic which would support analogizing a mandatory community service program in a public high school to slavery."); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 532 (6th Cir. 2011) (boarding school did not run afoul of child labor laws where students participated in vocational training programs as part of curriculum); *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005) (student not entitled to wages under the FLSA for chores performed at a boarding school as part of curriculum); *Marshall v. Regis Educ. Corp.*, 666 F.2d 1324, 1327 (10th Cir. 1981) (student Resident Assistants were not employees under the FLSA given the financial aid and educational objectives of the RA program).[6]

Like in those cases, the amended complaint alleges that the school's "Work Crew" requirement is inseparable from its educational curriculum.  *E.g.*, FAICC ¶¶ 30-38, 41, 87-88.  Per the complaint, student labor did not displace paid workers; without the student labor that allegedly makes up a core component of the school's philosophy, there would be no school.[7]  The chores that Plaintiff Fuller was allegedly required to perform – "pulling weeds," "gardening," "cleaning toilets" – were well within the scope of work she alleges that the school made public, and the

---

[6] Cases construing the FLSA are relevant to the extent that Plaintiff Fuller seeks "compensation at prevailing wage rates for all unpaid labor, including overtime."  *See* FAICC Prayer for Relief.

[7] Plaintiff's theory that the school's disciplinary model is a cover for a scheme to recruit students to perform forced labor to reduce its groundskeeping costs is circular and implausible.  *E.g.* FAICC ¶¶ 86, 148, 170, 190.  It makes no sense that Defendants would operate a school for the purpose of obtaining forced labor to marginally reduce the costs of operating a school.

school allegedly promoted the work aspect of its curriculum to families.  *E.g.*, *id.* ¶¶ 20, 35, 37-41, 63, 120, 164, 228(o).  While parents cannot lawfully commit their children to involuntary servitude, *see King,* 840 F.2d at 1282-83, they may consent to their children engaging in the kinds of chores alleged here.  *E.g.*, *Toviave*, 761 F.3d at 625-26.  While it is conceivable that in some other case, a student at a residential school may plead the kind of illegal exploitation addressed by § 1589, Ms. Fuller does not do so here.

> ii.  Plaintiff does not plausibly allege that Defendants obtained her labor "by <u>means of</u>" unlawful coercion.

"Section 1589 is intended to address *serious* trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence.  The harm or threat of harm, considered from the vantage point of a reasonable person in the place of the victim, must be sufficiently serious to *compel* that person to *remain* in her condition of servitude when she otherwise would have left."  *Muchira v. Al-Rawaf*, 850 F.3d 605, 618-19 (4th Cir. 2017) (emphases in original, citations and internal quotation marks omitted).  Ms. Fuller does not allege that she experienced harm or threat of harm within the meaning of the statute.

"Serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."  18 U.S.C. § 1589(c)(2).  Plaintiff Fuller alleges that she was required to perform a variety of landscaping and campus cleaning chores "under threat of physical and emotional harm, deprivation of food and housing, and further forced labor without pay."  FAICC ¶ 119.  But while Ms. Fuller alleges that she was subjected to "attack therapy," "peer criticism,"

and neglect, she does not allege that these were the "means" by which Defendants coerced her labor. To the contrary, she alleges that forced labor was a threat to compel students' compliance with "attack therapy" and peer surveillance, or to deter students from other actions. *E.g.*, *id.* ¶¶ 65, 112, 114, 115; *see Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1155 (9th Cir. 2022) ("[T]he phrase 'by means of'' . . . requires a proximate causal link between one or more of the unlawful means enumerated in § 1589(a) and the labor actually obtained."). The only alleged consequences of refusing to perform the forced labor were that students "were punished with additional forced labor or exercise." FAICC ¶ 64. Neither the alleged forced labor nor the alleged exercise constitutes "serious harm" under the statute, which requires the consequences to be so dire as to leave the victim no choice but to perform the forced labor.

Ms. Fuller's theory that she was broken down by her circumstances and manipulated to perform the required labor also fails. *Id.* ¶¶ 122-27. She claims Defendants "exercised total control over student's daily lives, including when and where they ate, slept, worked, communicated with family, and received medical or psychological care," which simply describes the reality of a boarding school for teenagers.[8] *Id.* ¶ 144(b). Plaintiff must do more than allege that her "environment caused her to experience psychological harm" to demonstrate the kind of compulsion the statute addresses. *Muchira*, 850 F.3d at 620 (plaintiff's allegations that her employer's restrictive "house rules," long work hours and verbal reprimands, caused her to experience serious psychological harm in the form of depression, acute stress, and panic attacks was, without more, insufficient to prove a § 1589 claim). She must allege that she was "in such fear or circumstances that [s]he did not reasonably believe [s]he could leave." *United States v. Bradley*, 390 F.3d 145, 153 (1st Cir. 2004), *cert. granted, judgment vacated on other grounds*,

---

[8] Ms. Fuller also alleges that she was "physically restrained," but does not provide any context, nor does she allege that any labor was obtained "by means of" restraint. FAICC ¶ 101.

545 U.S. 1101 (2005).  Ms. Fuller attended the school for only seven months, demonstrating that notwithstanding the school's allegedly repressive and coercive tactics, she was able to leave without consequence.  *E.g.*, *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1031 (7th Cir. 2024) (voluntary participants in a residential rehabilitation program were not subject to threats of serious harm for refusing to meet work requirements where "plaintiffs in no way present a plausible basis for concluding that a reasonable person would not have felt free to leave the program").

Additionally, Plaintiff Fuller fails to allege sufficient facts to hold any of the individual defendants personally liable.  Plaintiff does not allege that any individual defendant deployed serious harm or threats to compel her to perform labor, as required to state a claim under § 1589(a).  Nor does she sufficiently allege that the individual defendants knowingly participated in a venture that involved forced labor at the time she attended Hyde, as required to state a claim under §1589(b).  Her claims reference "Defendants," without specification, and describe in only the most general terms what the individuals purportedly did.  *See, e.g.,* FAICC ¶¶ 100-27, 162-66, 172, 239-245.  Plaintiff's pleadings purport to describe crimes committed against over a hundred current and former students over two decades.  While Rule 8 does not require detailed pleading, Plaintiff must do more to put Defendants on notice about the alleged crimes each of these individuals purportedly committed against *her*, specifically.  As noted above, she fails even to allege that three of the individual defendants – Georgia, Donald, and Laurie – had any involvement in Hyde at the time she attended.  Counts 2 and 8 must be dismissed.

### c. Because there is no plausible allegation of "forced labor," Plaintiff's claims under §§ 1590, 1594, and 2255 also fail.

Counts 3 and 6-8 seek to hold Defendants liable for trafficking and harboring individuals for the purpose of forced labor, and attempt and conspiracy to commit forced labor violations.

*See* 18 U.S.C. §§ 1590, 1594.  Counts 5 and 9 assert liability against Hyde and the individual defendants under 18 U.S.C. § 2255, for committing violations of §§ 1589 and 1590 against a minor.  These claims fail because, as demonstrated above, Plaintiff Fuller fails to allege that the school's disciplinary model involved forced labor within the meaning of these federal criminal statutes, or that any defendant subjected her to unlawful coercion to perform forced labor.  *See, e.g.*, *Pasamba v. HCCA Intern, Inc.*, 2008 WL 2562928 at *6 (D. Ariz 2008) (noting that "[t]o plead trafficking with respect to peonage, slavery, involuntary servitude, or forced labor, Plaintiff must allege facts that would prove peonage, slavery, involuntary servitude, or forced labor.").  Counts 3 and 5-9 must be dismissed.

## II.    Plaintiff cannot assert a claim under 5 M.R.S.A. § 4701 for violations of 17-A M.R.S. §§ 304 and 305.

In Count 4, Plaintiff asserts a state law claim under 5 M.R.S.A. § 4701, which provides a civil remedy for a "victim of a human trafficking offense" which is defined to include sex trafficking and "criminal forced labor and aggravated criminal forced labor under Title 17-A, sections 304 and 305, respectively."  5 M.R.S.A. §§ 4701(1)(A) & (1)(C)(1), § 4701(2).  Ms. Fuller alleges that the predicate human trafficking offense was Defendants' violation of 17-A M.R.S.A. §§ 304 and 305, which define criminal forced labor of minors.  FAICC ¶ 199.  Ms. Fuller cannot assert a claim under these statutes because §§ 304 and 305 were enacted effective August 1, 2018 – three years after Ms. Fuller allegedly left the Hyde School.  Section 4701 was amended to add §§ 304 and 305 to the definition of "human trafficking offense" at the same time.  *See* 2018 Me. Legis. Serv. Ch. 416 (S.P. 639) (L.D. 1740).  Nothing in those statutes or legislative history indicate that the Legislature intended either § 4701 or criminal code §§ 304 and 305 to apply to conduct predating their enactment, contrary to the general prohibition against retroactive (and ex post facto) laws.  *Cf. Dupuis v. Roman Catholic Bishop of Portland*, 2025 ME

6, ¶ 33, 331 A.3d 294, 309 (discussing the general rule that laws apply prospectively only).[9]
Plaintiff Fuller's claim under 5 M.R.S.A. § 4701 must be dismissed.

### III.    Plaintiff Lacks Standing to Assert the Class Claims.

As demonstrated above, the amended complaint fails to state a forced labor or trafficking claim on behalf of the only named plaintiff, Jessica Fuller.  Without cognizable claims of her own, Ms. Fuller lacks standing to assert the corresponding class claims.

A "requisite of an ordinary case or controversy is an injury to the plaintiff traceable to the defendant." *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 768 (1st Cir. 2011) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).  "Persons who wish to represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 35 (1st Cir. 2020) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)) (dismissing class claim where plaintiff did not allege an injury under that claim).  "In a class action suit with multiple claims, at least one named class representative must have standing with respect to each claim."  *In re Asacol Antitrust Litig.*, 907 F.3d 42, 48 (1st Cir. 2018) (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 2:5 (5th ed. 2012)).  Similarly, "[a]s a general rule in the First Circuit, named plaintiffs in a class action do not have standing to assert claims against defendants who are not directly implicated in the alleged harms suffered by those named plaintiffs."  *Winne v. Nat'l Collegiate Student Loan Tr. 2005-1*, 1:16-cv-00229-JDL, 2017

---

[9] Similarly, construing the federal statutes discussed above, courts have concluded that "permitting private litigants to bring suit under Section 1595 for violations of Sections 1589 and 1590 based on conduct predating [their enactment] would have an impermissible retroactive effect, one that this Court declines to endorse absent an affirmative contrary expression of intent from Congress."  *Doe v. Siddig*, 810 F. Supp. 2d 127, 136 (D.D.C. 2011), *vacated in part on other grounds*, 2011 WL 13567857 (D.D.C. Sept. 27, 2011); *accord Ditullio v. Boehm*, 662 F.3d 1091, 1102 (9th Cir. 2011) (declining to apply § 1595 retroactively).

WL 3573813, at *4 (D. Me. Aug. 17, 2017) (citing *Barry v. St. Paul Fire & Marine Ins. Co.*, 555 F.2d 3, 13 (1st Cir. 1977)).[10]  To the extent this Court dismisses Counts 1-10 as to Plaintiff Fuller, the corresponding class claims should be dismissed as well.

## IV. Plaintiff Fuller's Individual Tort Claims Fail.

### a. All of Ms. Fuller's tort claims are time-barred.

Ms. Fuller alleges individual claims for negligence and negligent infliction of emotional distress against the Hyde School and individual defendants (Counts 11 and 12); intentional infliction of emotional distress against the individual defendants (Count 13); negligent hiring, retention, and supervision against all defendants (Count 14); and premises liability against all defendants (Count 15).  The statute of limitations for each of these claims is six years.  14 M.R.S.A. § 752.  Because Ms. Fuller alleges that she was a minor when she attended Hyde, where all of the allegedly tortious conduct occurred, the statute of limitations under § 752 was tolled until she reached the age of 18.  14 M.R.S.A. § 853; *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020).  Ms. Fuller alleges that she was 17 years old in February 2015, so her claims were tolled until 2016, when she turned 18.  FACC ¶ 99.  The latest Ms. Fuller could have brought her tort claims was in 2022.  Counts 11-15 are time-barred.

### b. Plaintiff fails to connect any individual defendant to her alleged tort injuries.

Ms. Fuller does not allege a facially plausible tort claim against any individual defendant. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

---

[10]  Ms. Fuller's lack of shared interest in prosecuting the class claims is also evident from the fact that she apparently does not personally endorse or have personal knowledge of many of the allegations in the complaint.  The complaint appears to delineate allegations made by Plaintiff from the allegations made only on the "report" of unnamed "Class Members."  *Compare, e.g.*, FAICC ¶ 53 *with* ¶ 52. The split pleadings indicate a lack of "identity of issues" that would give the named plaintiff "essentially the same incentive to litigate the counterpart claims of the class members[.]"  *Plumbers' Union Local No. 12 Pension Fund*, 632 F.3d at 770.

U.S. at 678.  Ms. Fuller fails to allege a proximate causal connection between some breach of duty by the defendant and Ms. Fuller's alleged injuries.  As one example, Count 12 alleges that Laurie "had a duty to accurately represent Hyde and breached it through deceptive practices," but fails to allege what those deceptive practices were, how Laurie's actions harmed Plaintiff Fuller in particular, and what made the conduct "sufficiently outrageous to constitute negligent infliction of emotional distress."  FACC ¶¶ 273(e), 274.  Similarly, the complaint alleges that Donald, "[a]s teacher, had direct duty to students and breached it through personal participation in abuse," but does not allege that Plaintiff Fuller was one of his students – or even that Laurie or Donald was at the school at the same time as Ms. Fuller.  *Id.* ¶ 273(d), 277(d).  Each of the tort claims is similarly non-specific, failing to apprise Defendants of what they purportedly did to cause Plaintiff Fuller's injuries.

The tort claims suffer from additional infirmities.  Count 11 (against Hyde) is premised on purported violations of 22 M.R.S. ¶ 4011-A, which mandates reporting known or suspected child abuse, but does not provide a private right of action.  *See Orduna as next friend of E.O. v. United States*, No. 1:20-cv-00228-LEW, 2021 WL 1082533, at *2 (D. Me. Mar. 18, 2021).  Count 14 alleges negligent hiring, retention, and supervision of staff, but Maine courts recognize a negligent hiring claim only in the context of hiring contractors, and in any event, it does not allege what role any individual defendant had with respect to hiring or supervising staff.  *See Arsenault v. One Call Logistics, LLC*, No. 2:24-cv-00022-JAW, 2024 WL 4134845, at *15 n.7 (D. Me. Sept. 10, 2024).  Count 15 alleges premises liability against all defendants, without alleging that any of the individual defendants are "owners" of the school with a personal obligation to protect invitees from reasonably foreseeable dangers.  *See Doe v. Missionary*

*Oblates of Mary Immaculate E. Province*, 761 F. Supp. 3d 218, 226 (D. Me. 2025).  The Court need not reach these issues, however, because all of the tort claims are time-barred.

## V.      Count 16 for "Injunctive Relief and Asset Preservation" Fails to State a Claim.

Count 16, titled "Injunctive Relief and Asset Preservation," requests that this court enter various orders, including various forms of "immediate injunctive relief," in the form of an attachment of Defendants' assets under Federal Rule of Civil Procedure 64, operational restraints, document preservation, and an accounting of Defendants' assets, liabilities, and financial interests.  Plaintiffs have not followed the proper procedures for obtaining any of the requested relief.[11]

Federal Rule of Civil Procedure 64 states, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," including an attachment.  Fed. R. Civ. P. 64(a)-(b).  A party seeking an attachment must do so by motion under the applicable Maine state law, which requires a supporting affidavit.  Local Rule 64(a)-(b); Me R. Civ. P. 4A and 4B; *e.g.*, *Hilton Sea, Inc. v. DMR Yachts, Inc.*, 750 F. Supp. 35, 36 (D. Me. 1990).  Plaintiff has not complied with the procedural rules for obtaining an attachment of assets.

Likewise, "[t]he appropriate procedure for requesting a preliminary injunction is by motion, although it can also be requested by an order to show cause."  Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2949 (3d ed.).  "[U]nverified allegations in a pleading are insufficient to support a preliminary injunction."  *Huber Res. Corp. v. Olson*, Docket No. 1:23-cv-00410-NT, 2024 WL 3486430, at *6  n.5 (D. Me. July 19, 2024) (citing Wright & Miller).  Further, Plaintiff

---

[11] *Cf. Julian v. George Weston Bakeries Distribution, Inc*., No. 05–77–P–S, 2005 WL 1926643, at *4-5 (D. Me. Aug. 11, 2005), *aff'd*, 2005 WL 2106390 (D. Me. Aug. 31, 2005) (dismissing claims for class certification, punitive damages, and a jury trial on the grounds that they could "not be obtained as a result of a count asserted in the complaint").

Fuller lacks standing to seek to "[e]njoin Defendants from requiring or permitting any student at Hyde to engage in forced labor or labor performed under threat or coercion."  FAICC ¶ 295(b).  Ms. Fuller is not a current student, and imposing operational restraints will not redress her alleged injuries.  "The mere existence of past injury . . . does not justify forward looking equitable relief."  *Doe 1 v. Apple Inc*., 96 F.4th 403, 413 (D.C. Cir. 2024) (holding former child cobalt minors lacked standing to sue for an injunction seeking to end forced labor practices prospectively).  Finally, the Court need not enjoin Defendants from destroying records.  Defendants intend to comply with their discovery obligations in this lawsuit, including the obligation to preserve records.  Count 16 should be dismissed.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Honorable Court dismiss the First Amended Class Complaint with prejudice.

Dated:  October 7, 2025

*/s/ Martha C. Gaythwaite*
Martha C. Gaythwaite
Sarah K. Grossnickle
VERRILL DANA, LLP
One Portland Square
Portland, ME  04101-4054
(207) 774-4000
mgaythwaite@verrill-law.com
sgrossnickle@verrill-law.com

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2025, I electronically filed the foregoing document

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

all counsel of record.

*/s/ Martha C. Gaythwaite*

21