**IN THE UNITED STATES COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| JESSICA FULLER, individually and on behalf of all similarly situated persons,<br><br>    Plaintiffs,<br><br>    vs.<br><br>HYDE SCHOOL; LAURA GAULD; MALCOLM GAULD; GEORGIA GAULD MACMILLAN; DONALD MACMILLAN; LAURIE GAULD HURD<br><br>    Defendants. | Civil Action No.: 2:25-cv-00354<br>Hon. Stacey D. Neumann |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S**
**FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT**

Plaintiff Jessica Fuller ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, Island Justice Law and Justice Law Collaborative, hereby file Plaintiff's Opposition to Defendants' Motion to Dismiss ("Defendants' Motion") Plaintiff's First Amended Individual and Class Action Complaint ("FAICC").

## I.     INTRODUCTION

Plaintiff brings this action on behalf of herself and other survivors of systemic forced labor at Hyde School, a residential facility in Bath, Maine that for sixty years operated as a commercial enterprise generating millions in annual revenue while extracting forced labor from minors under the guise of "character development."

Plaintiff alleges a calculated system of labor exploitation: minors subjected to food and water deprivation, physical restraints, isolation, and psychological abuse to compel manual labor that generated economic value for Defendants - clearing wilderness properties for revenue-

1

generating programs, maintaining income-producing facilities, fulfilling contractual obligations, and conducting construction work - all without compensation and under threat of punishment.

In *Bates v. Sequel Youth and Family Services, LLC*, a federal court denied dismissal of nearly identical forced labor claims in the troubled teen industry. No. 2:23-CV-01063-RDP, 2025 U.S. Dist. LEXIS 202430 (N.D. Ala. Oct. 14, 2025). Plaintiff's allegations are materially indistinguishable.

On July 31, 2025, Plaintiff Fuller filed her FAICC asserting violations of 18 U.S.C. §§ 1584, 1589, 1590, 1594, 2255, and Maine's human trafficking statute, 5 M.R.S. § 4701. Defendants now move to dismiss, asking this Court to reject well-pleaded allegations and draw inferences in Defendants' favor – precisely what Rule 12(b)(6) forbids.

Plaintiff voluntarily withdraws the following counts asserted: Negligent Infliction of Emotional Distress against Hyde and Individual Defendants - **Counts 11 and 12**; Intentional Infliction of Emotional Distress against the Individual Defendants - **Count 13**; Negligent Hiring, Retention, and Supervision against all Defendants - **Count 14**; Premises Liability against all Defendants - **Count 15**; and Injunctive Relief and Asset Preservation against all Defendants - **Count 16**. Accordingly, Defendants' arguments regarding statutes of limitations and injunctive relief procedures are therefore moot. As to Counts 1-10, Defendants' Motion should be denied.

The threshold question is whether the alleged facts, if true, plausibly show Defendants obtained labor through means prohibited by federal and state trafficking statutes. Taking all allegations as true and drawing reasonable inferences in Plaintiff's favor, the answer is yes.

Within seven days of this Court's order, Plaintiff will file a Second Amended Complaint removing the withdrawn counts and, if necessary, addressing any technical deficiencies the Court may identify. For the reasons below, Defendants' Motion as to Counts 1-10 should be denied.

## II.    TVPRA AND RECENT PRECEDENT

### A.    Congressional Intent and Statutory Framework

The TVPA has been reauthorized several times to strengthen and expand victims' rights against those that benefit or conspire to benefit from their forced labor. *See, e.g.*, § 1595 (a). The TVPRA (acronym for the reauthorized TVPA) uses expansive language to provide victims' with claims against "whoever" benefits, attempts to benefit, or conspires to benefit by receiving "anything of value" from participating in a venture in violation of the underlying statutes. *Id.* It is against this expansive and victim-friendly backdrop that Defendants' attempts to constrain the TVPRA must be properly viewed. *See, e.g., Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1276 (11th Cir. 2020)(finding the "plain and unambiguous" general terms of the TVPRA "evinces no intent on the part of Congress to restrict the application of the statute to particular actors or particular victims.")

### B.    Recent Federal Court Decision Confirms Viability of Forced Labor Claims in Residential Facility Context

On October 14, 2025, the U.S. District Court for the Northern District of Alabama addressed forced labor claims in the troubled teen industry. *Bates* U.S. Dist. LEXIS 202430. Former students brought claims under 18 U.S.C. §§ 1589, 1590, and 1595 against corporate entities and an executive, and the court denied the motion to dismiss in full.

The Bates allegations closely parallel this case: students were forced to maintain campuses, perform landscaping, manual labor, and build structures; coercion included food/water restriction, forced exercise, isolation, threats of extended placement, and physical restraint; defendants benefited financially from reduced operating costs; and individual defendants founded, led, implemented, and profited from the forced labor systems. *Id.*

3

## III.   LEGAL STANDARD FOR RULE 12(b)(6) MOTIONS TO DISMISS

To survive a Rule 12(b)(6) motion, a complaint must provide enough factual content to state a plausible claim, raising the right to relief above speculation. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678. Courts disregard legal conclusions and formulaic recitations, crediting well-pled facts and reasonable inferences in the plaintiff's favor. *Ocasio-Hernández v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). Rule 8 does not require evidentiary detail, only facts sufficient to "nudge" the claim from conceivable to plausible. Twombly, 550 U.S. at 570. Here, Fuller alleges specific forced labor practices, coercive techniques, institutional program structure, and Defendants' financial benefit, plausibly stating all claims. Defendants' motion must be denied.

## IV.   ARGUMENT

### A.   Plaintiff Has Plausibly Alleged Claims Against Defendants for Forced Labor and Human Trafficking Individually and on Behalf of The Putative Class

Defendants claim Plaintiff Fuller has not stated a federal forced labor or human trafficking claim. This is incorrect. Plaintiff asserts claims for herself and the putative class under: involuntary servitude (§ 1584, Counts 1 & 8); forced labor (§ 1589, Counts 2 & 8); trafficking for forced labor (§ 1590, Counts 3 & 8); attempt and conspiracy (§§ 1594(a), 1594(b), Counts 6 & 7); and civil remedies for minors (§ 2255, Counts 5 & 9). As shown below and confirmed by recent federal precedent, these allegations meet the plausibility standard.

#### 1.   Plaintiff Has Sufficiently Alleged that Defendants Obtained Labor by Means of Physical or Legal Coercion Pursuant to § 1584

Plaintiff alleges that Defendants obtained labor from her and Class Members through threats of punishment, including enforcement of surveillance systems like "Brother's Keeper," physical punishment, public shaming, isolation, and withholding basic necessities. FAICC ¶¶

4

144(a)-(l), 204–12. Students who resisted were punished with food and sleep restrictions, isolation, public shaming, and intensified physical exertion. *Id.* ¶ 144(e). Defendants conditioned access to hygiene, family contact, and adequate food and water on work compliance. *Id.* ¶ 213(a)-(d). These disciplinary mechanisms coerced labor from Plaintiff and Class Members. *Id.* ¶ 242(d).

Plaintiff has plausibly alleged involuntary servitude under § 1584 for herself and Class Members. Defendants' motion as to Counts 1 and 8 should be denied.

### 2. Plaintiff Plausibly Alleges Claims Against Defendants for Obtaining and Benefitting from Forced Labor Under § 1589

Section 1589 makes it a crime to knowingly provide or obtain forced labor, or benefit from it, through: (1) force or threats; (2) serious harm or threats thereof; (3) abuse of legal process; or (4) any scheme causing a person to believe noncompliance would result in serious harm or restraint. 18 U.S.C. § 1589(a)(1-4).

Plaintiff alleges Defendants obtained the forced labor of Plaintiff and Class Members through extreme emotional abuse and serious harm, using internal disciplinary systems ("2-4" and "Work Crew"), verbal degradation, threats of strenuous exercise, withholding food and water, and threats of violence, isolation, restraint, and loss of privileges. FAICC ¶¶ 162, 164-166(a)-(j).

Plaintiff also alleges that Defendants benefitted financially. Hyde School, founded in 1966 by Joseph Gauld as a "character development" school, generates substantial revenue—e.g., $13.3 million in 2005—and holds significant assets, with leadership positions held by the Gaulds and spouses. *Id.* ¶¶ 16-17, 28-29. Forced labor reduced operating costs by performing tasks such as shoveling snow, digging, building walls, landscaping, and maintaining Hyde-owned properties, including the Eustis property marketed for summer programs. *Id.* ¶¶ 62, 67-69.

These allegations satisfy the plausibility standard under *Iqbal* and within the First Circuit. Defendants' motion to dismiss Counts 2 and 8 should be denied.

> a.  **Plaintiff's Allegations Describe Commercial Labor Exploitation, Not Household Chores or Educational Programming**

Defendants minimize systematic forced labor as mere "chores around campus that any teenager could be expected to do." Def. Mot. at 2. This ignores the commercial and coercive nature of the labor.

> i.  **The Nature and Scope of the Labor Distinguishes This Case**

Plaintiff does not allege ordinary household chores. She alleges a formalized forced labor system including: full-time labor while suspended from academics under "2-4" status, FAICC ¶ 58; campus construction including building walls, *Id.* ¶ 62; hazardous work like clearing a basement with asbestos, *Id.*; wilderness labor camps with inadequate food, shelter, and clothing, *Id.* ¶¶ 67-68, 74; work on third-party properties, *Id.* ¶¶ 78-80; maintenance of staff homes, *Id.* ¶ 62; and extended manual labor including digging, moving rocks, clearing brush, felling trees, and shoveling snow. *Id.*

This was systematic extraction of construction, landscaping, and maintenance labor from captive minors under threat of serious harm. In *Bates*, the court held that students "so fearful of punishment…performed forced labor when instructed," confirming that allegations like Plaintiff's plausibly state forced labor claims under § 1589. 2025 U.S. Dist. LEXIS 202430, at *5-6

> ii.  **The Economic Benefit to Defendants Removes This Case from Any "Household Chores" Exception**

Even if some chores could be part of residential education, Defendants' substantial financial benefit places this case squarely under the TVPRA. Hyde generates over $13 million annually, holds over $23 million in assets, and charges tuition exceeding $68,000 per year. FAICC ¶¶ 28-29. Gauld family members draw large salaries: Malcolm Gauld $1.5 million (2020), Laura Gauld $310,000+ (2021). Id. ¶¶ 26-27. Student labor directly enhanced profits by:

6

- **Reducing operating costs**: free labor for groundskeeping, maintenance, and construction. Id. ¶ 86.
- **Improving revenue-generating property**: forced work on Hyde's Eustis property marketed for summer programs. Id. ¶¶ 67-69.
- **Fulfilling third-party contracts**: labor on Seguin Island satisfied Hyde's obligations while generating benefits. Id. ¶ 79.
- **Maintaining income-producing facilities**: work on campus facilities housing paying students.

Congress intended the TVPRA to apply when for-profit entities coerce labor to reduce costs and increase revenue, regardless of educational claims. In *Bates*, the court held that understaffed facilities relying on free labor to reduce costs violated § 1589. 2025 U.S. Dist. LEXIS 202430, at *4; Here, Hyde's economic benefit is even clearer: reduced staffing costs, revenue-generating property maintenance, fulfillment of contracts, and work on staff homes. FAICC ¶¶ 168, 222-223. This reaches the low bar of receiving "anything of value" as expansively qualified by § 1595.

When a commercial enterprise profits from coerced minor labor, the TVPRA applies, notwithstanding any purported educational purpose.

### iii.    Cases Limiting Forced Labor Claims to "Household Chores" Are Inapplicable to Commercial Enterprises

Defendants rely on *U.S. v. Toviave*, 761 F.3d 623 (6th Cir. 2014), likening student labor to household chores. This is misplaced for four reasons:

1. **Toviave involved a private household**, not a commercial enterprise. The Sixth Circuit limited its holding to ordinary family chores, avoiding federalization of parenting decisions. Here, a multi-million-dollar business systematically extracted labor from paying customers. Other courts confirm this limitation (*Doe v. Howard*, 2023 WL 4001635, *5; *Doe v. Moravian College*, 2020 WL 7624840, *9). Courts have consistently held that Toviave's "household chores" reasoning does not extend to commercial entities systematically extracting labor from paying customers for financial gain. See *Bates*, 2025 U.S. Dist. LEXIS 202430 at *7-8 (distinguishing *Toviave* in forced labor case involving commercial residential facility).

2. **Institutional labor claims survive dismissal**, even for cleaning/maintenance. In *Bates* students were required to clean, maintain facilities, perform landscaping, and manual labor, under threat of punishment, which plausibly stated § 1589 claims. 2025 U.S. Dist. LEXIS 202430. Plaintiff here alleges materially identical conditions: campus cleaning,

landscaping, wilderness and construction labor, and punishment through food restriction, forced exercise, isolation, and extended labor. FAICC ¶¶ 53-54, 58-64, 118, 120.

3. ***Toviave* does not immunize all chores**. *U.S. v. Callahan*, clarified that § 1589 reaches coercion beyond physical force, including systematic abuse like that alleged here (food deprivation, isolation, psychological abuse, physical restraint). 801 F.3d 606, 618 (6th Cir. 2015).

4. **Other cases cited by Defendants are inapposite**:
   o *Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989 (3d Cir. 1993), involved voluntary community service.
   o *Blair v. Willis*, 420 F.3d 823 (8th Cir. 2005), addressed a Thirteenth Amendment claim pre-TVPRA.
   o *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518 (6th Cir. 2011), involved FLSA and vocational education. Here, labor was coerced to reduce operating costs, unrelated to education.

Where a commercial enterprise systematically coerces minors for profit, the TVPRA applies. Similar allegations were sufficient to deny dismissal in *Bates.* Even a center operating under federal authority is not shielded from compliance with the forced labor provisions of the TVPRA. *See Barrientos*, 951 F.3d at 1276-77.

### b.   Plaintiff Plausibly Alleges That Defendants Obtained Labor "By Means Of" Serious Harm Under § 1589

Section 1589(a) prohibits obtaining labor "by means of" the coercive methods enumerated in subsections (1) through (4). "Serious harm" means:

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2). Plaintiff's allegations satisfy each element and overcome the plausibility threshold required at this stage.

As the FAICC makes clear, the coercive system operated at Hyde as follows: (1) "Attack therapy" and peer surveillance broke down students' psychological resistance and isolated them

8

from potential allies; (2) physical restraint, isolation, and restricted family contact eliminated escape options; (3) food and water deprivation created immediate physical need; and (4) threats of escalating punishment (more labor, more exercise, extended placement) compelled immediate compliance with labor demands. Each element reinforced the others to create a comprehensive system of compulsion. This is precisely the type of "scheme, plan, or pattern" prohibited by § 1589(a)(4).

### i. Plaintiff Alleges Multiple Forms of Harm Deployed to Obtain Labor

Plaintiff alleges specific harms directly linked to labor compliance:

- **Food and Water Deprivation:** Access to basic necessities, including adequate food and water, was conditioned on labor. FAICC ¶ 213(a). Students on "2-4" status were severely restricted (e.g., limited to peanut butter and jelly sandwiches) and faced food and sleep deprivation if they resisted. Id. ¶¶ 60, 144(e).

- **Physical Restraint and Isolation:** Students were physically restrained with excessive force and isolated from peers while on labor assignments. Id. ¶¶ 60, 101, 109. These measures were integral to the labor system.

- **Threats of Continued Labor and Escalating Punishment:** Refusal to work resulted in additional forced labor and punishments (food deprivation, isolation, intense physical exertion). FAICC ¶ 64. This coercive cycle is precisely what § 1589 prohibits.

- **Psychological Coercion:** Defendants exercised total control over students' daily lives, including meals, sleep, work, communication with family, and medical/psychological care. Id. ¶ 144(b). Control included constant surveillance ("Brother's Keeper"), restricted family contact, verbal degradation and public humiliation ("attack therapy" and peer criticism), and forced exercise to collapse. Id. ¶¶ 33, 44-51, 54, 164(b), 213(c).

- **Deprivation of Medical Care and Hygiene:** Psychiatric medication was withheld, and access to personal care and hygiene items was conditioned on labor compliance. Id. ¶¶ 103, 213(b).

### ii. These Harms Satisfy the "Serious Harm" Standard

Defendants compare Plaintiff's allegations to the "restrictive house rules" in *Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017), which the court found insufficient. That case involved an

adult, not physically restrained, threatened, or prevented from leaving, who alleged only verbal reprimands and cultural rules. *Id.*

The facts here go far beyond simple restrictive house rules. Plaintiff was 16, physically restrained, deprived of food, water, and psychiatric medication, isolated from peers and family, subjected to forced exercise causing collapse, and threatened with escalating punishments for non-compliance. FAICC ¶¶ 54, 60, 64, 74, 99, 101, 103, 109, 213, 214, 228. She and Class Members reasonably believed compliance was necessary to avoid loss of academic credit, family contact, and ability to leave Hyde.

In *Bates* the court held that similar measures—food restrictions, isolation, threats of extended placement, and physical punishment—plausibly constituted "serious harm" under § 1589(c)(2), finding students complied out of fear of punishment. 2025 U.S. Dist. LEXIS 202430, at *4-6.

Plaintiff alleges even more severe harms here: limited meals (peanut butter and jelly sandwiches), forced exercise causing injury or collapse, sleep deprivation (including outdoors), isolation, physical restraint, denial of psychiatric medication, and threats of additional labor and escalating punishment. FAICC ¶¶ 54, 60, 64, 74, 101, 103, 109, 213, 228.

If *Bates* satisfies the serious harm threshold, Hyde's alleged system plainly does as well. Both involve institutional environments where minors faced coordinated punishments to compel labor—precisely what § 1589 prohibits.

### iii.    The Statute Expressly Requires Considering the Victim's Age and Circumstances

The "serious harm" analysis is not conducted from the perspective of a reasonable adult with full autonomy. It asks whether the harm was "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same

circumstances" to perform labor. 18 U.S.C. § 1589(c)(2) (emphasis added). Plaintiff's "background" and "circumstances" included:

- **Age**: She was 16 years old—a minor subject to her parents' enrollment decisions and Hyde's restrictions on communication. FAICC ¶¶ 99, 213(c).
- **Dependency**: She was entirely dependent on Defendants for food, shelter, medical care, and contact with the outside world. *Id.* ¶ 144(b).
- **Isolation**: She was physically located in Bath, Maine, separated from her family and community, unable to freely leave campus or communicate with outsiders. *Id.* ¶ 213(c).
- **Information control**: Defendants manipulated students and families "into thinking this forced labor was 'character development' and that it was teaching them morality . . . and that it was required for them to develop and grow." *Id.* ¶¶ 87-88. Students were led to believe compliance was necessary to "advance through the program and ultimately leave the school." *Id.* ¶ 214.

A reasonable 16-year-old in these circumstances, facing food deprivation, isolation, physical restraint, and told that labor compliance was the path to freedom, would feel compelled to perform the demanded labor. That is all § 1589(c)(2) requires.

### iv.    Plaintiff Is Not Required to Show She Was Held in Indefinite Captivity

Defendants argue Plaintiff's claim fails because she "attended the school for only seven months" and "was able to leave without consequence." Def. Mot. at 14. This misstates the facts and law. Plaintiff, a minor, had no realistic ability to leave safely on her own. § 1589 prohibits obtaining labor through coercion—it does not require indefinite servitude. The question is whether Defendants used prohibited means to compel labor while she was under their control. *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1155 (9th Cir. 2022); *U.S. v. Dann*, 652 F.3d 1160, 1168 (9th Cir. 2011).

Plaintiff's eventual departure does not show she felt free to leave while subjected to food deprivation, isolation, and threats of escalating punishment. Whether she reasonably believed she could leave is a factual question inappropriate for a motion to dismiss. Cf. *Taylor v. Salvation Army*

11

*Nat'l Corp.*, 110 F.4th 1017, 1030 (7th Cir. 2024). Plaintiff alleges she believed compliance was mandatory to eventually secure release. FAICC ¶ 214.

The *Bates* plaintiffs further undermine Defendants' argument. One stayed 14 months, another approximately10 months, and neither "escaped," yet the court found forced labor claims viable. 2025 U.S. Dist. LEXIS 202430, at *6, *10. Similarly, Plaintiff's seven-month attendance does not defeat her § 1589 claim. Fuller alleges she left not because she felt free to do so, but because her parents withdrew her after observing the conditions she was under. FAICC. The fact that external intervention ended her captivity does not mean she was free to leave on her own.

### v.    The "By Means Of" Causation Is Adequately Pleaded

Defendants argue Plaintiff fails to show the harms were the "means" of obtaining labor, claiming labor threatened compliance with "attack therapy." Def. Mot. at 13. This misreads the Complaint. Plaintiff alleges a coercive system where attack therapy broke down resistance, surveillance prevented collective action, isolation eliminated outside support, and food deprivation, physical punishment, and threats of escalating labor compelled immediate compliance.

The Ninth Circuit has clarified that § 1589's "by means of" requires only that prohibited coercion be a means—not the sole means—of obtaining labor. *Giles*, 31 F.4th at 1155. Plaintiff alleges:

- Labor performed under threat of physical and emotional harm, deprivation of food and housing, and further forced labor. FAICC ¶ 119.
- Access to basic necessities was conditioned on compliance. Id. ¶ 213.
- Resisting labor triggered food/sleep deprivation, isolation, public shaming, and intensified physical exertion. Id. ¶ 144(e).

*Bates* found similar allegations sufficient: students faced extended placements, isolation, and seclusion, plausibly compelling labor under threat of punishment. 2025 U.S. Dist. LEXIS 202430 at *5-6, *12. The same reasoning applies here.

### c.    Plaintiff Has Alleged Sufficient Facts to Impose Liability on the Individual Defendants

Defendants argue Counts 2 and 8 should be dismissed because Plaintiff does not allege that individual defendants personally inflicted the harms or knowingly participated in a forced labor venture. Hyde's Mot. at 14. This misstates the law and ignores precedent recognizing individual executive liability under § 1589(b).

### i.    The Standard for Individual Liability Under § 1589(b)

§ 1595(a) provides a civil remedy to victims of § 1589 violations. Liability extends to anyone who knowingly: (1) provides or obtains labor by prohibited means, or (2) benefits from participation in a venture "by receiving anything of value." 18 U.S.C. § 1589(a).

Individual defendants need not personally commit every coercive act. Liability covers those who knowingly benefit from a venture engaged in forced labor. *Ricchio v. McLean*, 853 F.3d 553, 557-59 (1st Cir. 2017) (allowing TVPRA claims against executives who participated in and benefitted from the venture).

### ii.    Recent Precedent Confirms Individual Defendants Who Hold Leadership Roles and Benefit From Forced Labor Face Liability Under § 1589(b)

The Northern District of Alabama recently upheld civil beneficiary liability under § 1589(b) against an individual in circumstances similar to the Gauld Defendants. In *Bates*, the court denied dismissal of claims against John Ripley, co-founder and Chairman, majority owner, and executive who received substantial financial benefits, including distributions, dividends, and a

$1.25 million founder's fee. 2025 U.S. Dist. LEXIS 202430 at *2-6, *15-21. Ripley did not personally commit the forced labor; facility staff did. Yet the court found liability because Ripley:

1. Participated in the venture via leadership roles and founding responsibilities, including signing reports and listing his home as principal office;
2. Knowingly benefitted financially from the venture, aware of distributions and fees;
3. Had constructive knowledge of TVPRA violations through oversight, audits, and incident reviews;
4. Made statements showing cost-benefit awareness, e.g., "you can… make money in this business if you control staffing." *Id.* at *3-5

The court held that beneficiary liability under § 1595 requires plausible allegations that the defendant: (1) knowingly benefitted, (2) participated in a venture, (3) the venture violated the TVPRA as to plaintiffs, and (4) the defendant knew or should have known of the violations. *Id.* at *15 (citing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021)).

### iii.    The Gauld Defendants' Roles Mirror and Exceed Ripley's

Plaintiff alleges facts showing each Gauld Defendant knowingly participated in and benefitted from Hyde's forced labor system, meeting the *Bates* standard:

- **Laura Gauld (President & Principal Officer since 2004):** "personally implemented and enforced policies requiring student forced labor," directly supervised staff carrying out forced labor, personally observed and approved the "2-4" system, understaffed Hyde to necessitate labor, failed to correct reported abuses, and received over $310,000 in 2021. FAICC ¶¶ 27, 240, 250. *Compare Bates:* Ripley conducted oversight and audits; Laura Gauld's role was even more direct.

- **Malcolm Gauld (Headmaster/President/Executive Director 1987-present):** designed and implemented forced labor policies, publicly promoted the system as "therapeutic," directed student labor, created the "Brother's Keeper" surveillance system, failed to safeguard students, and received $1,509,153 in 2020. FAICC ¶¶ 26, 241, 251. *Compare Bates:* Ripley recognized labor cost savings; Malcolm Gauld actively promoted and enforced forced labor while profiting.

- **Georgia Gauld MacMillan (Former Head of Campus; Executive Director of Family Education):** implemented and supervised forced labor, participated in disciplinary decisions, received financial benefits, and concealed labor practices from families. FAICC ¶ 242.

- **Donald MacMillan (Former Head of School; Current Teacher):** directed student labor, implemented policies supporting forced labor, compensated from labor operations, supervised unpaid labor, failed to report violations. FAICC ¶ 243.

- **Laurie Gauld Hurd (Director of Community Engagement):** marketed Hyde while concealing forced labor, received financial benefit, participated in recruitment for labor conditions, created misleading marketing, and actively concealed practices from the community. FAICC ¶ 244.

Plaintiff further alleges that for nearly sixty years, the Gauld family operated Hyde as a coordinated enterprise, systematically recruiting, manipulating, and exploiting students while sharing in the financial benefits. FAICC ¶¶ 25, 144(g).

Under § 1589(b) and *Bates*, these allegations suffice to show that each individual defendant:

1. Participated in Hyde through leadership, implementation, supervision, marketing, or recruitment;
2. Knowingly benefitted financially through substantial salaries and compensation;
3. Had actual or constructive knowledge of forced labor via leadership, direct involvement, enterprise-wide promotion of labor, and oversight of finances.

### iv.    The Constructive Knowledge Standard in *Bates* Supports Plaintiff's Allegations

The *Bates* court held that constructive knowledge can be shown through: leadership roles providing oversight; weekly audits and incident review procedures; knowledge of incidents (injuries, deaths, abuse charges) occurring at facilities; and statements demonstrating awareness of cost-benefit relationship between staffing and profitability. 2025 U.S. Dist. LEXIS 202430 at *20-21. The court specifically found that "the quote from Defendant Ripley, combined with Plaintiffs' allegations regarding controlling staffing and 'rigorous oversight' from corporate leadership … is enough to plausibly allege that Defendant Ripley had at least constructive knowledge that minor students were being forced to perform labor." *Id.* at *21.

Importantly, the *Bates* court clarified that "an overt or direct act" putting the defendant on notice of TVPRA violations is not required. *Id.* at *20. Courts have found constructive knowledge

properly pleaded based on "red flags" supporting open signs of violations. 2025 U.S. Dist. LEXIS 202430 at *19-20. Here, Plaintiff alleges comparable or stronger facts:

- Hyde operated a coordinated enterprise "with each Defendant playing a role in the systematic recruitment, manipulation, and exploitation of students while sharing in the financial benefits." FAICC ¶ 25.
- Malcolm Gauld **publicly stated** that physical labor had "therapeutic, restorative effect," demonstrating not just awareness but active promotion of labor as a core program component. *Id.* ¶ 38.
- Malcolm Gauld allegedly posted photos on social media in 2017 showing students raking leaves and "boasted about said forced labor." *Id.* ¶ 63 & n.2.
- Defendants "exercised total control over student's daily lives" and implemented the "Brother's Keeper" surveillance system requiring students to report infractions—creating visibility into all student activities including labor. *Id.* ¶¶ 33, 144(b).
- The forced labor system was publicly documented in school materials and promotional content, including founder Joseph Gauld's published books and articles "over several decades" promoting the "forced labor practices." *Id.* ¶¶ 17, 19-20, 35, 37-41.
- Hyde allegedly "promoted its punitive disciplinary model as essential for student growth and development," meaning individual defendants with leadership and marketing roles necessarily knew about and endorsed it. *Id.* ¶ 41.

Under *Bates*, these allegations more than satisfy the constructive knowledge requirement. Each individual defendant held a leadership position providing visibility into Hyde's operations, received financial compensation from Hyde's revenue (which was enhanced by free student labor reducing costs by an estimated hundreds of thousands of dollars annually), and participated in an enterprise where forced labor was an open, documented, and promoted practice.

If Ripley's oversight role, financial benefit, and statement about controlling staffing satisfied constructive knowledge in *Bates*, then the Gauld Defendants' direct implementation, public promotion, personal supervision, and substantial compensation from Hyde's forced labor operations easily satisfy the same standard.

### v.    Any Technical Deficiency as to Individual Defendants' Tenure Warrants Leave to Amend, Not Dismissal

Defendants correctly note the Complaint does not specify whether Georgia Gauld, Donald MacMillan, and Laurie Gauld held their positions during Plaintiff Fuller's July 2014–February

16

2015 attendance. Even if this is a pleading deficiency, it does not justify dismissal - Rule 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006).

Granting leave serves multiple purposes:

1. **Clarify Tenure:** Plaintiff can add factual allegations regarding each defendant's role during the relevant period. Discovery will provide precise employment dates and organizational involvement.

2. **Add Named Plaintiffs:** The proposed Class spans 2006–2025. FAICC ¶ 128. Even if some defendants were not present during Plaintiff Fuller's attendance, other Class Members experienced forced labor under their supervision. Including those individuals as named plaintiffs would moot any timeline concern.

3. **Preserve Class Claims:** Plaintiff may pursue class claims on behalf of members subjected to forced labor while these defendants held leadership roles. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015).

Timeline concerns are premature at this stage. As the Northern District of Alabama noted in its 2024 *Bates* decision denying a motion to dismiss class claims against corporate defendants, "striking a class claim before a motion for certification (and before the benefit of pre-certification discovery) is rare." *Bates v. Sequel Youth & Fam. Servs.*, LLC, 2024 U.S. Dist. LEXIS 118421, at *29 (N.D. Ala. July 3, 2024) (citing *Moore v. Walter Coke, Inc.*, 294 F.R.D. 620, 627 (N.D. Ala. 2013)). Class definitions are "working definitions" subject to refinement through pre-certification discovery. *Bates*, 2024 U.S. Dist. LEXIS 118421, at *29.

In *Bates*, the court rejected dismissal of class claims even where the named plaintiff did not personally experience conduct spanning the full class period. 2024 U.S. Dist. LEXIS 118421, at *29-30 (quoting *Wallace v. VF Jeanswear Ltd. P'ship*, 2020 WL 999341, at *5 (N.D. Ala. 2020) ("as long as the class allegations make it plausible that discovery will lead to facts that would justify certifying a class action, the court will not dismiss the class claims.") Allegations showing ongoing practices before, during, and after the plaintiff's attendance sufficed to survive dismissal.

*Id.* Beneficiary liability is therefore assessed over the venture's life, not narrowly on the named plaintiff's enrollment period. *Id.*

Here, Plaintiff alleges Hyde's forced labor system:

- Was founded and promoted by Joseph Gauld over decades through publications, FAICC ¶¶ 17, 19–20;
- Was publicly documented and promoted as "character development," *Id.* ¶¶ 30–38, 41;
- Involved formalized, institutionalized disciplinary programs ("5:30," "2-4," "Work Crew"), *Id.* ¶¶ 53–64;
- Was openly promoted by Malcolm Gauld as "therapeutic" and "restorative," *Id.* ¶¶ 38, 63;
- Generated economic benefits knowingly shared by Defendants, *Id.* ¶¶ 25, 67–69, 78–80, 86, 97–98.

These allegations plausibly show a longstanding institutional practice spanning 2006–2025. Any gaps regarding specific defendants' roles during Plaintiff Fuller's attendance can be remedied through amendment or discovery.

At this stage, Plaintiff need only show that the class allegations make it plausible that discovery could justify certifying a class action. *Bates*, 2024 WL 3316989, at *30 (finding sufficient allegations of claims occurring both "prior to" and "after [plaintiff's] departure from the facility)

### vi.     Plaintiff's Allegations Satisfy Rule 8's Notice Requirements

Defendants complain that Plaintiff's allegations reference "Defendants" generally without specifying what each individual did. Def. Mot. at 14. This argument fails under both Rule 8 and *Bates*. Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff has alleged:

- **Each individual defendant's role and position** at Hyde (founder, president, headmaster, executive director, head of school, head of campus, director of community engagement). FAICC ¶¶ 2-6, 26-27, 242-44.
- **Specific actions by each defendant** (implemented policies, supervised staff, directed students to labor, created surveillance systems, marketed while concealing practices, received compensation). *Id.*

18

- **The coordinated nature of the enterprise** in which "each Defendant play[ed] a role in the systematic recruitment, manipulation, and exploitation of students while sharing in the financial benefits." *Id.* ¶ 25.
- **Knowledge elements** alleging each defendant "had knowledge of and actively participated in Hyde's coordinated and unified enterprise which utilized unpaid child labor." *Id.* ¶ 144(g).

This is sufficient to put each defendant on notice of the claims against them. Plaintiff need not plead evidence or provide the level of detail appropriate for summary judgment. *See Twombly*, 550 U.S. at 555-56.

The *Bates* court rejected an identical argument. Defendant Ripley argued the complaint was a "shotgun pleading" that failed to specify which defendants were responsible for which acts. *Bates*, 2025 U.S. Dist. LEXIS 202430 at * 21-23. The court disagreed, finding the complaint: did not improperly adopt allegations from preceding counts; separated claims into distinct counts; and specified which defendants were responsible for which conduct and which claims were brought against which defendants. *Id.* The court held: "Plaintiffs have brought only two of its four claims against Defendant Ripley. Within each of those claims, Plaintiffs specify how Defendant Ripley was involved in and benefited from the venture and what he knew or should have known about the venture." *Id.* at *23

The same is true here. Plaintiff brings only certain counts against individual defendants (Counts 1-10), and within those counts specifies their roles, actions, benefits, and knowledge. FAICC ¶¶ 144, 162-66, 239-44. Under *Bates*, this satisfies Rule 8.

### vii.    Laura and Malcolm Gauld's Involvement During Plaintiff's Attendance Is Uncontested

At minimum, Defendants do not (and cannot) dispute that Laura Gauld and Malcolm Gauld held leadership positions during Plaintiff Fuller's attendance. Laura Gauld has held executive positions since 2004 and is the current President. FAICC ¶¶ 3, 27. Plaintiff attended July 2014 -

February 2015. *Id.* ¶ 99. Moreover, Malcolm Gauld was President from 1998-2018 and is the current Executive Director. *Id.* ¶ 26. He was unquestionably present and in control during Plaintiff's attendance.

Even if the Court finds deficiencies as to Georgia, Donald, and Laurie, Counts 1-10 must survive as to Laura and Malcolm Gauld. These two defendants alone are sufficient to maintain all statutory claims and class claims. The other individual defendants can be addressed through amendment or addition of named plaintiffs, as discussed above.

### 3. Because Plaintiff Plausibly Alleges Her Forced Labor Claims Pursuant to § 1589, Plaintiff's Claims Under §§ 1590 (Trafficking), 1594 (Attempt and Conspiracy), and 2255 (Remedies for Minors) Also Survive

18 U.S.C. § 1590 makes it a crime to recruit, harbor, transport, or obtain by any means, any person for "labor or services in violation of this chapter." *Id.* § 1590. Violations of "this chapter" include violations of § 1589, forced labor through coercion.

Regarding trafficking, Plaintiff alleges that "Defendants obtained labor by means of deception, coercion, and psychological control" including through misleading marketing materials, transporting students to forced labor sites, maintaining exclusive control over Plaintiff and Class Members' housing, transportation, food and water, and harboring Plaintiff and Class Members in order to benefit from their forced labor. FAICC ¶¶ 184-190 (emphasis added).

As set forth above, Plaintiff has sufficiently pleaded her forced labor claims under § 1589. Accordingly, her trafficking claim (Count 3), and her claims for attempt (Count 6) and conspiracy (Count 7) to commit forced labor violations based on the same conduct, also survive.

The *Bates* court upheld identical claims. Plaintiffs in *Bates* asserted claims under both § 1589 (forced labor) and § 1590 (trafficking). *Bates*, 2025 U.S. Dist. LEXIS 202430 at *2. The court held that § 1590 "makes it a crime to traffic any person for 'labor or services in violation of

20

this chapter,' including forced labor." *Id.* at *11. Because plaintiffs plausibly alleged forced labor violations, their trafficking claims also survived. *Id.* at *17-18.

Counts 5 and 9 of Plaintiff's FAICC assert liability against Hyde and the individual defendants pursuant to 18 U.S.C. § 2255, which provides civil remedies for minors who were victims of §§ 1589 and 1590, among others. These claims survive because Plaintiff has sufficiently alleged forced labor violations under § 1589 and trafficking under § 1590, and Plaintiff Fuller and Class Members were minors at the time of their forced labor.

The *Bates* court specifically held that § 2255 provides the procedural vehicle for civil claims under § 1595 for violations of §§ 1589 and 1590: "Section 2255(a) 'specifically authorizes victims who were minors at the time certain … offenses were committed to bring civil actions for such criminal violations.'" *Bates*, 2025 U.S. Dist. LEXIS 202430 at *11 (quoting *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1173 (N.D. Ala. 2022)). The court further held that "§ 1595 provides the civil cause of action for violations of §§ 1589 and 1590," and therefore "Plaintiffs' claims, 'through the operation of 18 U.S.C. § 2255, provide for nationwide service of process.'" *Id.* at *12.

Plaintiff's claims under §§ 1590, 1594, and 2255 are derivative of her § 1589 claims. Because those underlying claims are plausible under *Twombly*/*Iqbal* and consistent with *Bates*, Counts 3, 5, 6, 7, and 9 survive. Defendants' Motion to Dismiss Counts 3, 5, 6, 7, and 9 should be denied.

### A.    Plaintiff's § 4701 Claim Should Not Be Dismissed

Defendants argue Plaintiff's forced labor claim under Maine's § 4701 fails because Plaintiff pled the predicate definition of forced labor under statutes enacted in 2018. *See* Hyde's Motion at 15-16. This argument fails for two independent reasons.

### 1.    The 2007 Version of § 4701 Prohibited the Conduct Alleged

The pre-2018 version of § 4701 already prohibited the conduct Plaintiff alleges. The 2007 enactment defined "human trafficking offense" to include:

> Compelling a person to provide or to continue to provide labor or services by . . . **using any scheme, plan or pattern intended to cause that person to believe that if the person does not perform certain labor or services, including prostitution, that the person or another person will suffer serious harm or restraint.**

5 M.R.S.A. § 4701(1)(C) (2007) (emphasis added).

Plaintiff alleges exactly this: Defendants used a scheme of discipline, deprivation, surveillance, and psychological manipulation to cause Plaintiff and Class Members to believe that if they did not perform labor, they would suffer serious harm (food deprivation, isolation, physical punishment, loss of family contact, inability to progress through the program) or restraint (physical restraint, confinement to "2-4" status, placement in wilderness camps). FAICC ¶¶ 33, 53-54, 58-64, 144, 162-66, 213-14.

The 2018 amendments to § 4701 did not create new substantive liability—they added cross-references to criminal code provisions. The 2007 definition remains in the current statute at § 4701(1)(C)(2), and the 2018 amendments merely added §§ 304 and 305 as additional enumerated offenses at § 4701(1)(C)(1). *See* 5 M.R.S.A. § 4701(1)(C)(1)-(2) (current version).

Plaintiff's conduct falls squarely within the 2007 definition that was in effect during her attendance. The substance of her claim (that Defendants used a coercive scheme to make her believe she would suffer serious harm if she didn't perform labor) is identical under either the 2007 or 2018 version of § 4701(1)(C).

Defendants' retroactivity argument is a red herring. Plaintiff is not seeking retroactive application of a new law. She is alleging conduct that violated the statute as it existed in 2014-2015. The 2018 amendments are irrelevant to that analysis.

### 2.      Any Technical Deficiency Can Be Cured by Amendment

To the extent the Court finds any ambiguity in Plaintiff's citation to the current version of § 4701, the appropriate remedy is leave to amend, not dismissal. Plaintiff can easily amend her Complaint to cite the 2007 version of § 4701(1)(C) and make clear that her claim rests on the scheme-based definition that was in effect during her attendance.

The substance of the claim gives Defendants "fair notice of what the claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2). Defendants plainly understand that Plaintiff alleges they used a coercive scheme to extract labor. Whether the Complaint cites the 2007 or 2018 version of the statute is a technicality that does not warrant dismissal, especially at the pleading stage before discovery.

Federal courts routinely allow amendment to correct statutory citations or clarify legal theories where the underlying factual allegations remain unchanged. *See Aponte-Torres*, 445 F.3d at 58; *Sanchez*, 37 F.3d at 717. That principle applies with particular force here, where the allegedly "wrong" citation is to a statute that contains the same substantive prohibition Plaintiff invokes.

Count 4 should survive, or at minimum, Plaintiff should be granted leave to amend to clarify her citation to the 2007 version of § 4701.

### B.      Plaintiff Has Standing to Assert the Class Claims

To satisfy the standing requirements, a plaintiff must plead three elements: injury in fact, traceability, and redressability. *Kerin v. Titeflex Corp*., 770 F.3d 978, 981 (1st Cir. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Persons who wish to represent a class must allege that they personally have been injured. *Yan v. ReWalk Robotics Ltd*., 973 F.3d 22, 35 (1st Cir. 2020)(internal citations omitted). The traceability element "examines the causal connection between the assertedly unlawful conduct and the alleged injury." *Allen v. Wright*, 468

U.S. 737, 753 n.19 (1984). At this stage of the litigation, a plaintiff's burden on the element of traceability is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997).

Defendants inaccurately contend that Plaintiff Fuller lacks standing to assert class claims because she fails to state a forced labor or trafficking claim on her own behalf. As set forth in detail above, Plaintiff Fuller has thoroughly and sufficiently alleged injuries of coerced forced labor, and trafficking for her labor, by Defendants. Plaintiff alleges:

**Injury in fact**: She was subjected to forced labor through a coercive disciplinary system involving food deprivation, isolation, physical restraint, and threats of serious harm. FAICC ¶¶ 99-127. She performed unpaid labor including pulling weeds, gardening, cutting grass, cleaning facilities, and other manual tasks. *Id.* ¶¶ 118, 120.

**Traceability**: Her injuries are directly traceable to Defendants' conduct. She was forced to perform labor "under threat of physical and emotional harm, deprivation of food and housing, and further forced labor without pay." *Id.* ¶ 119. Defendants implemented and enforced the policies requiring this labor, supervised staff carrying out the forced labor assignments, and financially benefited from the free labor. *Id.* ¶¶ 86, 97-98, 240-44.

**Redressability**: Her injuries can be redressed through monetary damages, injunctive relief, and other remedies available under the TVPRA and § 4701.

In accepting all of Plaintiff Fuller's allegations as true, as is required at this procedural stage, Plaintiff has plausibly alleged viable forced labor and trafficking claims on her own behalf. Therefore, she has standing to assert each of the corresponding class claims.

Moreover, even if the Court were to find any limitation on Plaintiff Fuller's individual claims against certain defendants based on timing, this would not defeat her standing to pursue class claims. In a class action, "at least one named class representative must have standing with respect to each claim." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 48 (1st Cir. 2018). Plaintiff Fuller has standing as to claims against defendants who were unquestionably present during her attendance (Laura and Malcolm Gauld). She can assert class claims on behalf of Class Members affected by other defendants during their respective tenures.

V.    **CONCLUSION**

Defendants ask this Court to conclude that systematic extraction of labor from minors through food deprivation, isolation, physical punishment, and psychological coercion is merely "educational programming" exempt from federal trafficking laws. At the motion to dismiss stage, this Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in her favor. *Ocasio-Hernández*, 640 F.3d at 3. Plaintiff has alleged:

- **Specific labor**: Pulling weeds, cutting grass, cleaning facilities, shoveling snow, building structures, clearing wilderness, working on third-party property and staff homes;
- **Specific coercive means**: Food and water deprivation, isolation, physical restraint, denial of medication, forced exercise to collapse, attack therapy, surveillance, restricted family contact;
- **Specific economic benefits**: Reduced operating costs, enhanced revenue-generating properties, fulfilled contractual obligations, maintenance of income-producing facilities;
- **Specific individual participation**: Founded, led, implemented, supervised, promoted, marketed, and financially benefited from the forced labor system;
- **Specific knowledge**: Direct involvement in creating and enforcing the system, public statements promoting it, oversight through audits and surveillance, participation in an enterprise where forced labor was openly documented and promoted.

These allegations easily satisfy Rule 8's plausibility standard and are consistent with the allegations the *Bates* court found sufficient.

Whether Defendants can ultimately prove these allegations false or provide lawful justifications is a question for summary judgment or trial, not dismissal. At this stage, Plaintiff need only plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support her claims. *Twombly*, 550 U.S. at 556. She has done so.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. DENY Defendants' Motion to Dismiss Counts 1-10 in its entirety;
2. In the alternative, if the Court finds any technical deficiency, GRANT Plaintiff leave to amend within 14 days; and
3. ALLOW limited discovery on the financial benefit, individual defendant roles, and coercive conditions before reconsidering any motion to dismiss.

Dated: November 25, 2025

Respectfully Submitted
Plaintiffs,

By their attorneys,

*/s/ Kelly A. Guagenty*
Kelly A. Guagenty, Esq. (BBO #658872)
*(Admitted pro hac vice)*
Kimberly Dougherty, Esq. (*pending phv*)
JUSTICE LAW COLLABORATIVE
210 Washington St.
North Easton, MA 02356
(508) 230-2700
kelly@justiclc.com
kim@justiclc.com

and,

John Steed, Esq. (ME Bar #5399)
ISLAND JUSTICE
PO Box 771
Stonington, ME 04681
Phone: 207-200-7077
john@islandjusticelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Kelly A. Guagenty*
Kelly A. Guagenty, Esq.