UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JESSICA FULLER, individually and on behalf of all similarly situated persons, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:25-cv-00354-SDN |
| HYDE SCHOOL; LAURA GAULD; MALCOLM GAULD; GEORGIA GAULD MACMILLAN; DONALD MACMILLAN; LAURIE GAULD HURD, | Hon. Stacey D. Neumann |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT**

Defendant the Hyde School and individual defendants Laura Gauld, Malcolm Gauld, Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd respectfully submit this reply brief in support of their motion to dismiss the First Amended Individual and Class Action Complaint ("FAICC") in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

In response to Defendants' motion, Plaintiff Fuller voluntarily withdrew all her standalone individual tort claims and her claim for injunctive relief (Counts XI-XVI). The remaining claims are those she purports to bring on behalf of herself and a putative class of former and current Hyde School students under various federal and state trafficking and forced labor statutes (Counts I-X). Dismissal of the remaining claims is warranted for the reasons stated in Defendants' opening brief and below.

1

### A.     Plaintiff mischaracterizes and possibly invents caselaw.

Plaintiff alleges that she was required to pull weeds, garden, cut the grass, and clean campus facilities – the kinds of activities that the Court in *United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014) held that those acting *in loco parentis* could require of children without implicating the TVPRA.  FAICC ¶ 120.  On page 7, Plaintiff argues that *Toviave* does not apply to this case because:

> **Toviave involved a private household,** not a commercial enterprise. The Sixth Circuit limited its holding to ordinary family chores, avoiding federalization of parenting decisions. Here, a multi-million-dollar business systematically extracted labor from paying customers.  Other courts confirm this limitation (*Doe v. Howard,* 2023 WL 4001635, *5; *Doe v. Moravian College,* 2020 WL 7624840, *9). Courts have consistently held that Toviave's "household chores" reasoning does not extend to commercial entities systematically extracting labor from paying customers for financial gain. *See Bates,* 2025 U.S. Dist. LEXIS 202430 at *7-8 (distinguishing *Toviave* in forced labor case involving commercial residential facility).

Plaintiff's Response Brief ("Br.") at 7.  The undersigned has not been able to locate either the *Howard* or *Moravian College* cases cited here.  The Westlaw citations go to other sources (a "patent status file" and to *Bellanger v. Bosch*, Civ. No. 19-2770 (PAM/BRT), 2020 WL 7624840 (D. Minn. Dec. 22, 2020), a decision on the timeliness of a petition for habeas corpus relief).  Cases with similar names either have nothing to do with forced labor claims, or do not support the contentions in the paragraph quoted above.[1]

Further, the *Bates* decision does not cite *Toviave* at all, much less "distinguish" it, as Plaintiff claims in the paragraph quoted above.  The pages of the *Bates* decision that Plaintiff pincites address the legal standards for Federal Rules 8, 12(b)(2) and 12(b)(6), and contain no

---

[1] *See Doe v. Moravian College*, Civil No. 5:20-cv-00377-JMG, 2023 WL 144436 (E.D. Pa. Jan. 10, 2023) (addressing Title IX and tort claims; no forced labor allegations); *Doe v. Howard Univ.*, 594 F. Supp. 3d 52 (D.D.C. 2022) (addressing Title IX and tort claims; no forced labor allegations); *Doe v. Howard*, Civil Action No. 1:11-cv-1105, 2012 WL 3834867 (E.D. Va. Sept. 4, 2012) (addressing forced labor claims, but predating *Toviave* and not distinguishing between private households and commercial enterprises).

analysis of any forced labor claim. *Bates v. Sequel Youth and Family Servs., LLC*, Case No. 2:23-CV-01063-RDP, 2025 U.S. Dist. LEXIS 202430, at *7-8 (N.D. Ala. Oct. 14, 2025) (also available on Westlaw at 2025 WL 2917756). This one paragraph contains multiple blatant errors of law, including two possibly invented case citations.

As to the substance of Plaintiff's assertions, Hyde is a non-profit, 501(c)(3) school, not a for-profit, commercial enterprise. FAICC ¶ 1. Plaintiff implicitly concedes that this distinction matters, and she attempts to avoid it by claiming that "labor was coerced to reduce operating costs, unrelated to education." Br. at 8. But her Amended Complaint places the work she performed squarely inside the scope of the school's espoused curriculum, and squarely within the reasoning of cases rejecting involuntary servitude and unpaid labor claims based on compulsory work performed as part of a school curriculum. *See*, *e.g.*, *Steirer v. Bethlehem Area Sch. Dist.*, 789 F. Supp. 1337 (E.D. Pa. 1992), *aff'd sub nom. Steirer by Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989 (3d Cir. 1993);[2] *Bobilin v. Bd. of Ed., State of Hawaii*, 403 F. Supp. 1095 (D. Haw. 1975); and cases cited in Defendants' Brief at 11. The Amended Complaint alleges that the school openly marketed to prospective families its educational philosophy—including the work component – as a central aspect of the Hyde School character development model. *E.g.*, FAICC at 2, ¶¶ 30-41, 87-88. This is also a distinction from *Bates*, the Northern District of Alabama case that plaintiff cites throughout her brief.[3] In *Bates*, the Court found it significant to the forced labor claims that the executive of the defendant facility was quoted, "you can . . . make

---

[2] Plaintiff distinguishes *Steirer* on the grounds that it involved "voluntary community service." Br. at 8. Wrong: the point of the suit was that the community service was mandatory and compulsory. She then describes *Blair v. Wills*, 420 F.3d 823 (8th Cir. 2005) as addressing "a Thirteenth Amendment claim pre-TVPRA," which is not an accurate description of that case either. Br. at 8.

[3] Needless to say, this Alabama decision is not binding on this Court. That case also included significantly different allegations, including allegations that staff were charged with child abuse and children were killed while in the defendants' care. *Id.*, 2025 WL 2917756, at *7.

money in this business if you control staffing." *Bates*, 2025 WL 2917756, at *7. Here, Plaintiff quotes Defendants as expressing only a belief in the therapeutic and educational benefits of the work students were asked to perform. *See, e.g.*, FAICC ¶¶ 35-41.

The fact that the school may have derived an economic benefit from student's campus work is not dispositive. The *Toviave* court acknowledged that "the duties assigned by Toviave are 'labor' in the economic sense of the word" because "one could, and people often do, pay employees to perform these types of domestic tasks." 761 F.3d at 626. The Court nonetheless held that they were not forced labor under the federal statutes because a parent, and one standing *in loco parentis*, has a separate right to require those types of chores. *Id*. at 625-26. Courts have similarly dismissed unpaid labor claims against schools under the FLSA and the Thirteenth Amendment upon finding that the economic benefit that the school derived from student labor was secondary to its educational purpose. *E.g., Bobilin*, 403 F. Supp. At 1104 ("Assuming . . . that the cafeteria duty allows the State to reap a financial benefit, that is, the obviation of any necessity to hire, at great expense, professional employees to perform the school-related housekeeping duties in the stead of the students, it is clear that . . . public, and not private, interest and benefit are being served."); *see also* cases cited at Defendants' Br. at 11. Plaintiff's allegations fall outside the scope of the criminal human trafficking and forced labor laws asserted here.[4]

---

[4] *See, e.g., Ruderman v. Kenosha Cnty*., 752 F. Supp. 3d 1084, 1091 (E.D. Wis. 2024) (appeal pending) ("Just as a parent can require children to clean their rooms and help with household chores, jail administrators can hold inmates to participation in the same communal duties. Neither the parent nor the jail administrator is 'obtain[ing] the labor or services' of the child or detainee by illegal means within the language and intent of Section 1589. This does not mean that the parent or jail personnel can be abusive; the parent's role is limited by state child abuse laws and the jailer's conduct is limited by the Constitution and Section 1983. But this is simply not human trafficking, modern slavery, or Forced Labor.").

B.     **Plaintiff inserts 13 words into the text of 5 M.R.S.A. § 4701.**

Plaintiff's argument that she stated a claim under 5 M.R.S.A. § 4701 rests on statutory language that a) Plaintiff partially fabricates, and b) is misleadingly incomplete.

Section 4701, which provides a civil remedy for a "victim of a human trafficking offense," has been amended multiple times since its initial enactment. Plaintiff concedes that she erroneously cited the current version of the statute in her complaint, which reflects amendments made after she left the Hyde School, including the addition of specific reference to the criminal forced labor statutes, 5 M.R.S.A. §§ 304 and 305. Br. at 22-23. Plaintiff then grossly misquotes the 2007 version of the statute at page 22 of her brief to argue that she nonetheless stated a claim, falsely representing to the Court that the statute included the words "compelling a person to provide or to continue to provide labor or services," in its definition of "human trafficking offense." *Id.*; see copy of the 2007 statute at **Exhibit A**. Those thirteen words do not exist in any version of the statute.

Regardless, the 2007 version was amended effective 2013 and remained in effect until 2018, through Plaintiff's time at Hyde. That version of the statute, applicable to Plaintiff's claims, defined "Human trafficking offense" to include:

> (1) Aggravated sex trafficking and sex trafficking under Title 17-A, sections 852 and 853, respectively; and
>
> **(2) All offenses in Title 17-A, chapters 11, 12 and 13 if** accompanied by the destruction, concealment, removal, confiscation or possession of any actual or purported passport or other immigration document or other actual or purported government identification document of the other person or **done using any scheme, plan or pattern intended to cause the other person to believe that if that person does not perform certain labor or services, including prostitution, that the person or a 3rd person will be subject to a harm to their health, safety or immigration status.**

5 M.R.S.A. § 4701(1)(C) (effective October 9, 2013 to July 31, 2018) (emphasis added); see copy of the 2013 statute at **Exhibit B**. A predicate offense under Title 17-A (Maine Criminal

5

Code) is the crucial component of the definition.  It was also a key component of the 2007 version, though Plaintiff omits that part of the definition in her erroneous quotation on page 22. *See* Exhibit A.  Under either version of the statute, it is not enough merely to allege a scheme to coerce forced labor, as Plaintiff contends.

The criminal forced labor statues, 5 M.R.S.A. §§ 304 and 305, did not exist at the time Plaintiff Fuller attended Hyde.  Those statutes were added to the Criminal Code in 2018, in the same bill that amended section 4701 to cross-reference them.[5]  Therefore, to state a claim under this statute, as in effect during Ms. Fuller's attendance at Hyde, she must identify some other predicate crime.  Plaintiff does not identify another crime that she would plead in an amendment to her complaint.

Plaintiff ends her argument about the section 4701 claim by misquoting the text of Federal Rule of Civil Procedure 8(a)(2).  Plaintiff purportedly quotes the Rule as requiring "fair notice of what the claim is and the grounds upon which it rests."  Br. at 23.  That is not the language of the rule, but a judicial gloss on the rule.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Plaintiff is not pro se.  She has at least three attorneys from two law firms representing her.  The number and gravity of the misquotations, misattributions, and other inaccuracies in her brief is astonishing.

### C. Plaintiff Fuller does not state a claim against three of the five individual defendants.

Plaintiff concedes that the amended complaint does not allege, even on information and belief, that individual defendants Georgia, Donald, or Laurie served any role at the school from July 2014 through February 2015, when Plaintiff Fuller attended.  Br. at 16-17.  Plaintiff suggests

---

[5] FORCED LABOR—TRAFFICKING, 2018 Me. Legis. Serv. Ch. 416 (S.P. 639) (L.D. 1740) (WEST).  The statutes became effective August 1, 2018.

that discovery will permit her to flesh out her allegations against these defendants. *Id*. at 18. "The assertion of a need for discovery does not trump the plausibility requirement: a plaintiff must state a plausible claim before she can invoke a right to discovery. In other words, a plaintiff can open the door to discovery only if she first alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of actionable misconduct." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (quoting *Twombly*, 550 U.S. at 556). Plaintiff has not done that here. At most, Plaintiff alleges that Georgia, Donald, and Laurie participated in, caused, or otherwise benefited from the abuse of *other students*, which does not, alone, make it plausible that they caused *Plaintiff's* harm or benefited from *Plaintiff*'s labor. Her claims against those defendants are purely speculative.

     Plaintiff implicitly concedes that any amendment will not shore up her own claims against these defendants. She contends: "Plaintiff Fuller has standing as to claims against defendants who were unquestionably present during her attendance (Laura and Malcolm Gauld). She can assert class claims on behalf of Class Members affected by other defendants during their respective tenures."[6] Br. at 24. This is wrong as a matter of law: "[a]s a general rule in the First Circuit, named plaintiffs in a class action do not have standing to assert claims against defendants who are not directly implicated in the alleged harms suffered by those named plaintiffs." *Winne v. Nat'l Collegiate Student Loan Tr. 2005-1*, 1:16-cv-00229-JDL, 2017 WL 3573813, at *4 (D. Me. Aug. 17, 2017) (citing *Barry v. St. Paul Fire & Marine Ins. Co*., 555 F.2d 3, 13 (1st Cir. 1977)). Plaintiff Fuller's individual claims against defendants Georgia, Donald, and Laurie should be dismissed, along with the respective class claims.

---

[6] *See also* Br. at 20 ("[Laura and Malcolm Gauld] alone are sufficient to maintain all statutory and class claims. The other individual defendants can be addressed through amendment *or addition of named plaintiffs*, as discussed above.") (emphasis added).

7

The *Bates* decision Plaintiff cites at page 17 is distinguishable.  In that case, defendants sought dismissal of class claims to the extent they arose from forced labor violations occurring before or after the Plaintiff's time at the defendant facility.  *Bates v. Sequel Youth & Family Services, LLC*, 2024 WL 3316989, at *10 (N.D. Ala. July 5, 2024).  The Court held that limitation of the class definition was premature at the pre-certification stage and found the class claims adequately pleaded.  *Id*.  The issue there was whether, having stated her own claims against the facility, the plaintiff also adequately alleged class claims against the same facility on behalf of other class members in attendance before or after her time there.  Here, Plaintiff has not adequately alleged individual claims against at least three of the defendants, Georgia, Donald, and Laurie; therefore, she lacks standing to bring the class claims against those defendants, regardless of when the class members' claims arose.

D.  **Plaintiff confuses constitutional standing with class certification under Rule 23.**

Plaintiff repeatedly conflates allegations regarding her own experience at Hyde with the experiences of other unidentified students.[7]  She does not allege that she was forced to work on the Eustis property, or on Seguin Island, or on staff homes or other third-party properties.  She does not allege that she was forced to sleep outside, clear asbestos, or build walls.  Br. at 6.  In determining whether Plaintiff stated a claim, this Court must distinguish between the allegations about other students and Plaintiff's own allegations of harm; alleged harm to other students has no bearing on whether Plaintiff stated a claim for relief.  As demonstrated in Defendants' opening brief, Plaintiff's allegations alone fail to state a claim.

---

[7] Plaintiff also relies on facts that were not alleged in the Amended Complaint, claiming: "Fuller alleges she left not because she felt free to do so, but because her parents withdrew her after observing the conditions she was under." Br. at 12.  This is nowhere alleged in the complaint and should be disregarded.  Plaintiff's citation for this assertion is merely "FAICC" without reference to a specific paragraph, suggesting an awareness that this allegation cannot be found in the FAICC.

Where Plaintiff fails to establish an individual claim (including a claim against a particular defendant), she lacks standing to assert the corresponding class claim. This is a matter of constitutional standing, not whether a class can or should be certified under Rule 23, or whether Plaintiff is an appropriate class representative. Those latter questions will be addressed if or when this case moves forward to the class certification stage. But that cannot happen unless Plaintiff has satisfied Article III's "case or controversies" requirement with respect to each defendant and each claim. *E.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 35 (1st Cir. 2020) ("Persons who wish to represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (citations omitted). *Neale v. Volvo Cars of N. America, LLC*, 794 F.3d 353, 362 (3d Cir. 2015), which Plaintiff cites at page 17, reiterates this point, holding that that Article III "cases or controversies" requirement is satisfied as to unnamed, putative class members "so long as a class representative has standing." "Before even getting to the point of class certification, however, class representatives need to present a justiciable claim." *Id*. at 366.

### E.      Plaintiff should not be granted leave to amend.

While leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), courts need not "mindlessly grant every request for leave to amend." *Aponte-Torres v. Univ. Of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006). Plaintiff has not moved for leave to amend nor proffered a proposed amended complaint. Plaintiff "made no attempt to supplement [her] bare request for leave to amend, nor did [she] preview what additional facts or

9

legal claims might be included in a second amended complaint (should one be allowed)." *Id*. "The absence of supporting information may, in and of itself, be a sufficient reason for the denial of leave to amend." *Id*. Plaintiff's vague assertion that she can provide additional information in an amendment, or that any deficiency can be cured by the addition of a new named plaintiff, does not show that she can cure the deficiencies in her pleading. *E.g*., Br. at 17, 20.

Additionally, "[a] district court may deny leave to amend when the request is characterized by undue delay, *bad faith*, futility, [or] the absence of due diligence on the movant's part." *Calderon-Serra v. Wilmington Tr. Co*., 715 F.3d 14, 19 (1st Cir. 2013) (citation and internal quotation marks omitted; emphasis added). As yet another example of Plaintiff's bad faith misrepresentation of caselaw, Plaintiff cites *Sanchez v. Puerto Rico Oil Co*., 37 F.3d 712, 717 (1st Cir. 1994) in support of the proposition that courts "routinely allow amendment to correct statutory citations or clarify legal theories[.]" Br. at 23. But *Sanchez* says absolutely nothing about amendment of pleadings. The multiple fictitious citations, misattributions, and misquotations in Plaintiff's response brief violate Federal Rule of Civil Procedure 11(b) and Maine Rules of Professional Conduct 3.3(a)(1)-(2) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal  or . . . misquote to a tribunal the language of a book, statute, ordinance, rule or decision . . . ."). Plaintiff should be sanctioned, not granted leave to amend.

## CONCLUSION

For the reasons stated above, and in Defendants' opening memorandum in support of its motion, Defendants respectfully request that this Honorable Court dismiss the First Amended Class Complaint with prejudice.

Dated: December 9, 2025

                                          */s/ Sarah K .Grossnickle*
                                          Martha C. Gaythwaite
                                          Sarah K. Grossnickle
                                          VERRILL DANA, LLP
                                          One Portland Square
                                          Portland, ME 04101-4054
                                          (207) 774-4000
                                          mgaythwaite@verrill-law.com
                                          sgrossnickle@verrill-law.com

                                          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on December 9, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                          */s/ Sarah K. Grossnickle*