UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JESSICA FULLER, individually and on behalf of all similarly situated persons,<br><br>　　　Plaintiffs,<br><br>　　vs.<br><br>HYDE SCHOOL; LAURA GAULD; MALCOLM GAULD; GEORGIA GAULD MACMILLAN; DONALD MACMILLAN; LAURIE GAULD HURD<br><br>　　　Defendants. | Civil Action No.: 2:25-cv-00354-SDN<br><br>Hon. Stacey D. Neumann |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S NOTICE OF ERRATA**

Plaintiff Jessica Fuller ("Plaintiff"), through undersigned counsel, respectfully submits this Response to Defendants' Reply to Plaintiff's Notice of Errata ("Response"). Plaintiff's Response is based on individual personal knowledge of Plaintiff's lead counsel, Attorney Kelly Guagenty of the Justice Law Collaborative ("Lead Counsel"), related to prior briefing before the Court and the research and investigative efforts of Plaintiff's new local counsel, Kevin Fitzgerald of the Fitzgerald Law Group ("Local Counsel"), related to his more recent involvement in the case.

I.　　INTRODUCTION

In the First Amended Individual and Class Action Complaint ("FAICC"), Plaintiff asserts various causes of action on behalf of herself and other survivors of systemic forced labor at Hyde School, a residential facility in Bath, Maine, that for sixty years operated as a commercial enterprise despite their 501(c)(3) status thereby generating millions in annual revenue while extracting forced labor from minors under the guise of "character development." Dkt. 6 at 1-2, ¶¶ 1, 17, 31 and 40. Plaintiff alleges that Defendants engaged in a calculated system of labor

exploitation with minors being subjected to food and water deprivation, physical restraints, isolation, and psychological abuse to compel them to perform manual labor under the threat of punishment which generated substantial economic value for Defendants and without compensation to these students. *Id*. at 2-3, ¶¶ 33-38, 43, 53-66, and 99-120.

To effectuate this scheme, Hyde utilized systems like "Brother's/Sister's Keeper" (a surveillance program which required students to report infractions to administration creating an environment of constant fear and mutual surveillance for many students), "5:30" (a program where students with alleged ethical infractions or poor attitudes were compelled to engage in chores and forced exercise under unsafe conditions in the early morning), and "2-4" (an advanced system of punishment where students were removed from classes, placed under food restrictions, and required to perform extensive manual labor, often outdoors and in extreme conditions). *Id*. at ¶¶ 33-38 and 53-66. It is the substance of these claims and the applicable law that should determine how this important case is ultimately resolved and not the prior briefing errors of Lead Counsel no matter how serious those mistakes may be.

Lead Counsel recognizes that the allegations raised in the FAICC are regrettably not why we are at this specific juncture in the case. The parties are before the Court in this moment due to mistakes made in prior briefing that were ultimately due to a lack of oversight and cursory review by Lead Counsel. These errors were inadvertent and were not intended to deceive the Court or Defendants. Nonetheless, Lead Counsel is remorseful that they occurred and apologizes to the Court and Defendants for the inaccuracies. Appreciating the seriousness of the situation, Lead Counsel has attempted in prior filings and herein to explain as fully as possible what happened and has also proactively taken steps to ensure that these issues do not occur again so the Court and the parties can focus on the merits of the case moving forward.

## II. LEAD COUNSEL'S PRIOR BRIEFING ERRORS WERE INATTENTIVE MISTAKES BUT NOT AN ATTEMPT TO DECEIVE THE COURT

Defendants have used words and phrases like "fabricated," "invented," and "lack of candor" in characterizing the errors in Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Individual and Class Action Complaint ("Opposition"). Dkt. 26 at 2-3, and 5; Dkt. 30 at 1-2. These assertions carry potential serious professional and ethical implications. Lead Counsel has been practicing law for over twenty-two years. This is the first time that issues of this nature have occurred in any court filing made by Lead Counsel who takes her ethical obligations to the Court, the parties, and her client seriously.

Multiple attorneys, including one outside the firm, participated in researching and drafting the Opposition and were supervised by Lead Counsel. That process involved researching and outlining arguments; revising various sections over multiple drafts; and adding, removing and moving case citations and supporting law as drafts developed until Lead Counsel believed the Opposition was sufficiently ready for filing. This iterative process was admittedly poorly overseen and resulted in citations appearing in the wrong places and the inclusion of case law purporting to support propositions that it did not. Although there were many cooks in the kitchen, it was Lead Counsel's responsibility and professional obligation, as the partner assigned to the case and the firm attorney admitted in this action, to ensure the Opposition was accurate and included proper citations and descriptions of supporting law. That responsibility was not sufficiently met due to inadequate supervision and review during the drafting and proofing stages. This was a failure of process, but not a lack of candor with, nor an attempt to mislead the Court.

As an initial attempt to address these errors and respond to certain accusations levied by Defendants, Lead Counsel immediately filed the Notice of Errata as a good faith effort to demonstrate to the Court that many of the issues raised by Defendants were inattentive mistakes

and not intentional deceptions. The Notice of Errata was based on Lead Counsel's quick reconstruction of what occurred during the multi-attorney drafting process. The intent of the Notice of Errata was to acknowledge citation errors and case descriptions, correct the record, and accept responsibility for these mistakes. In hindsight, and in part due to the expediency with which it was filed, Lead Counsel admits that the Notice of Errata could have also been better handled.

Courts have recognized the distinction between inadvertent errors and intentional dishonesty, or bad faith. Indeed, other district courts have weighed whether the errors were repeated after warnings from the Court and whether counsel was diligent in remedying the matter. *See Flycatcher Corp. v. Affable Ave.,* LLC, 2026 U.S. LEXIS 23980, *37 (S.D.N.Y. Feb. 5, 2026) (finding bad faith after counsel "violated Rule 11 repeatedly and brazenly, despite multiple warnings from the Court and fellow counsel."); *Veramancini v. Cnty. Of Orange*, 2026 U.S. Dist. LEXIS 35478, *3-4 (C.D. Cal. Feb. 19, 2026) (issuing sanctions after three separate rounds of briefing with inaccurate citations were filed despite prior warnings from the Court). An attorney who submits a brief with inaccuracies through inadequate review has not fulfilled their professional obligations. An attorney who deliberately fabricates citations or intentionally misrepresents law to deceive a court has committed something graver. Lead Counsel has conceded to the fullest extent possible herein the inadvertent errors that clearly occurred with the hope that the Court will see them for what they are - a professional mistake, but not an act of intentional deception.

### III. PLAINTIFF'S RESPONSES TO THE VARIOUS BRIEFING ISSUES RAISED BY DEFENDANTS

As an effort to be as complete and transparent as possible, Lead Counsel includes below the various briefing issues raised by Defendants in Defendants' Reply in Support of Motion to Dismiss the First Amended Individual and Class Action Complaint (Dkt. 26) and Defendants'

Reply to Plaintiff's Notice of Errata (Dkt. 30), as well as Lead Counsel's response to each issue some of which have also been explained in prior filings.

### A. *Doe v. Howard*

The parties agree that *Doe v. Howard* is a real case and not a fabrication. Defendants assert that the Notice of Errata misstated the proposition for which *Doe v. Howard* was originally cited (i.e. that *Toviave's* household-chores reasoning does not extend to commercial enterprises, not merely as to damages). Dkt. 30 at 1. *Doe v. Howard* mistakenly was included in the Opposition in a string citation relating to courts recognizing limitations to *Toviave*. The Notice of Errata's description that the case was cited for the proposition that courts award substantial damages in forced servitude cases was also inaccurate.

### B. *Doe v. Moravian College*

The parties agree that *Doe v. Moravian College* is a real case and not a fabrication. Defendants assert that *Moravian College* does not discuss forced labor statutes or the *Toviave* analysis at issue. Dkt. 30 at 2. Lead Counsel acknowledges that citation to *Moravian College* was inapposite to the forced labor and *Toviave* discussion in which it appeared in the Opposition and Notice of Errata.

### C. *Bates v. Sequel Youth & Family Services*

Defendants assert that the Opposition misrepresented the *Bates* decision as distinguishing *Toviave*. Dkt. 30 at 2. Although *Bates* correctly supports other propositions in the Opposition related to forced labor claims in a residential facility context, Lead Counsel acknowledges that *Bates* does not discuss or distinguish *Toviave*.

### D. Plaintiff's Factual Allegations Regarding the Reason She Left Hyde School

Defendants assert that the Opposition relies on facts about why Plaintiff left Hyde that were not contained in the FAICC. Dkt. 26 at n.7. This specific factual detail was not alleged in the FAICC and, therefore, should not have been referenced in the Opposition. Lead Counsel contends that if discovery is permitted to go forward the evidence in the record will ultimately support this factual detail.

### E. *Steirer v. Bethlehem Area School District*

Defendants assert that Plaintiff impermissibly distinguishes *Steirer* on the grounds that it involved voluntary community service. Dkt. 26 at n.2. The crux of *Steirer* involved an involuntary community service program at a school and the issue in the case was whether a school could condition graduation on students completing sixty hours of community service at outside organizations like AIDS Outreach, the YMCA, and Special Olympics. *Steirer*, 987 F.2d at 991. Whereas here, Plaintiff alleges Defendants used forced labor for *their own benefit*.

### F. *Blair v. Wills*

Defendants assert that Plaintiff inaccurately describes *Blair* as addressing a Thirteenth Amendment claim pre-TVPRA. Dkt. 26 at n.2. On this point, Defendants are partially correct. *Blair*, in relevant part, addressed whether a boarding school was an employer of students within the context of a claim under the Fair Labor Standards Act (FLSA). *Blair v. Wills*, 420 F.3d 823, 828-29 (8th Cir. 2005). Defendants are correct that the decision did not discuss a Thirteenth Amendment claim. The case involved allegations of forced chores and physical and psychological abuse but not an express claim of slavery under the Thirteenth Amendment. *Id.* at 826.

Since the Eighth Circuit decided *Blair* in 2005, Congress has reauthorized and amended the TVPRA several times. Notably, in 2008, Congress amended the TVPRA to define the operative

6

term "serious harm" to include "any harm, whether physical or nonphysical, including psychological, financial, or reputational…" that would compel a reasonable person to continue performing labor to avoid that harm. William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, Sec. 1589. Forced Labor., 122 STAT. 5044, 5067 (2008) (codified at 18 U.S.C. § 1589(c)(2)). Lead Counsel's distinguishment of the case should have been more robust so as to properly inform the Court of the comparative timelines between *Blair* and the expansion of the § 1589 of the TVPRA to expressly include the "any harm" as a potential coercive mechanism for forced labor.

### G.    *Sanchez v. Puerto Rico*

Defendants assert that Plaintiff inaccurately describes *Sanchez* for the proposition that courts routinely allow amendment to correct statutory citations or to clarify legal theories. Dkt. 26 at 10. Lead Counsel acknowledges that the wrong case was cited for this proposition.

### H.    **5 M.R.S.A. § 4701**

Defendants assert that, in the Opposition, Plaintiff cited to a version of 5 M.R.S.A. § 4701 which was not in effect at the time she attended Hyde and included quoted language purporting to come from 5 M.R.S.A. § 4701 which does not exist in any version of the statute. Dkt. 26 at 5. As acknowledged in the Notice of Errata, Lead Counsel miscited to the 2007 version of 5 M.R.S.A. § 4701 and that a paraphrase of the statute should have been presented as a description of the statutory scheme rather than as a direct quotation. Dkt. 29 at 3.

### I.    **Fed. R. Civ. P. 8(a)(2)**

Defendants assert that Plaintiff misquotes Fed. R. Civ. P. 8(a)(2). Dkt. 26 at 6. As Lead Counsel explained in the Notice of Errata, the quoted language is the Supreme Court's interpretation of Fed. R. Civ. P. 8(a)(2) in *Conley v. Gibson*, 355 U.S. 41, 47 (1957), as cited in

7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), not the rule's verbatim text. Dkt. 26 at 4. The citation should have been to *Twombly* and *Conley* rather than the rule itself.

**IV.    LEAD COUNSEL IS PROACTIVELY TAKING STEPS TO ENSURE THAT NO FURTHER BRIEFING ISSUES OCCUR MOVING FORWARD**

Lead Counsel acknowledges that accepting responsibility for the briefing issues alone is insufficient under the circumstances. Accordingly, Lead Counsel is taking additional, proactive steps to ensure that no further briefing issues occur in this case. First, Kim Dougherty and Karen Barth Menzies – two partners from Justice Law Collaborative ("JLC") – have filed for and been admitted *pro hac vice* in the case. *See* ECF No. 35. Attorney Dougherty is one of the firm's two co-founders, has been practicing law for over twenty years and has held leadership positions in national litigation involving child sexual and physical abuse, wrongful death litigation and other drug and device litigations. Since 2021, she has primarily dedicated her practice to providing trauma informed legal services to clients, including those within the troubled teen industry. Attorney Barth Menzies has been practicing law for over three decades and held leadership positions, including as lead counsel, in numerous national litigations involving prescription drugs and medical devices. Over her career, Attorney Barth Menzies has been an advocate for cases involving women's health issues and represented victims of sexual abuse and harassment. Both attorneys will be active participants in litigating the case, including reviewing briefing before it is filed with the Court.

Second, Plaintiff has retained Kevin Fitzgerald of the Fitzgerald Law Group, to serve as Local Counsel. Attorney Fitzgerald has over twenty years' experience litigating mass tort prescription drug and medical device claims and other catastrophic injury cases. Attorney Fitzgerald has also known Attorney Barth Menzies for approximately fifteen years and worked with her in prior litigations. On February 2, 2026, Justice Law Collaborative first began

8

communicating with Attorney Fitzgerald about the case and the possibility of him joining Plaintiff's legal team as Local Counsel. Over the following week, Attorney Fitzgerald conducted due diligence into the case which included multiple telephone calls, video conferences, and email exchanges with JLC, reviewing the filings on the Court's docket, and a video conference with Plaintiff. After this review process, Attorney Fitzgerald filed his Notice of Appearance on behalf of Plaintiff on February 13, 2026.[1]

## V.     THE COMPLAINT ALLEGES PLAUSIBLE CLAIMS OF FORCED LABOR AND HUMAN TRAFFICKING AND, THEREFORE, SATISFIES THE STANDARDS OF FED. R. CIV. P. 12(b)(6) AND SHOULD NOT BE DISMISSED

Plaintiff respectfully suggests that any citation or other briefing issues with the Opposition or Notice of Errata do not reflect on the strength of Plaintiff's claims asserted in the FAIIC. Under the Federal Rules of Civil Procedure, a complaint is not judged based on inaccuracies in later filed documents. The FAICC was filed before any of the aforementioned briefing errors occurred and

---

[1] To establish a clear and accurate record, Plaintiff reluctantly brings to the Court's attention an event that occurred in the weeks following the Court's Order dated December 16, 2025, allowing Plaintiff time to secure new local counsel. On February 12, 2026, prior to entering his appearance, Attorney Fitzgerald left a voicemail for Defendants' counsel introducing himself and explaining that he would be filing a Notice of Appearance on behalf of Plaintiff. Within hours of leaving the voicemail and at a time when only counsel for the parties knew that Attorney Fitzgerald would be entering his appearance, Attorney Fitzgerald received an unsolicited email from an Attorney Christopher Mann in Bath, Maine. Attorney Fitzgerald has no prior relationship with Attorney Mann and does not know him in any professional or personal capacity. Attached to Attorney Mann's email were six pleadings from the case that had been forwarded to Attorney Mann by Defendant Laura Gauld, including briefing related to the Defendant's Motion to Dismiss (Dkt. 25 and 26), the Motions to Withdraw filed by Attorney John Z. Steed (Dkt. 27 and 28), the Notice of Errata (Dkt. 29), and Defendant's Reply to the Notice of Errata (Dkt. 30). Attorney Mann's email read: *"Kevin: no vested interest, just a former Hyde Student, 68-72. Just an FYI brother. Regards."* Although the email does not contain any confidential or privileged information, Attorney Fitzgerald promptly brought the disclosure to Defendants' counsels' attention. This email is notable for what it does not say as much as for what it does as well as its timing. It contains no legal analysis and advances no substantive argument. Instead, it forwards materials from ongoing litigation which Defendants have characterized as reflecting negatively on Lead Counsel to prospective incoming counsel at a time when only the litigants knew the appearance was forthcoming. Plaintiff does not raise these concerns lightly or for any tactical advantage nor is Plaintiff seeking any court intervention at the present time. The legal profession depends upon good faith dealing between members of the bar, and Plaintiff's counsel has no desire to make accusations that are not supported by the record. In light of Defendants calling into question Lead Counsel's candor to the Court and their suggestion of sanctions (Dkt. 26 at 10), as well as Attorney Fitzgerald's new appearance in the case, Plaintiff believes it is important to advise the Court of this event and is hopeful that the litigants can return to dealing in good faith moving forward.

should be evaluated on its own merits. Should the Court find that filing a corrected Opposition is the best path forward to resolve the issues on the merits, Plaintiff welcomes that opportunity.

Under Fed. R. Civ. P. 12(b)(6), a complaint survives dismissal if it contains sufficient factual allegations, that if accepted as true, state a claim for relief that is plausible on its face. *See, e.g., Bryan C. v. Lambrew*, 340 F.R.D. 501, 508 (D. Me. 2021) (quoting *Bell Atl.Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). The FAICC meets this standard. The FAIIC alleges with sufficient specificity required at this stage of the pleadings that Defendants operated a systematic, institutional program through which students were forced to perform extensive physical labor under threat of punishment, food deprivation, isolation from peers and family, and the imposition of further physical labor as a consequence of non-compliance. Dkt. 6 at 2-3, ¶¶ 33-38, 43, 53-66, and 99-120. The FAIIC further alleges that forced labor of students was extracted for the financial benefit of Hyde (*Id.* at ¶¶ 83, 148, 173, 190); that Hyde increased profits by minimizing expenses and relying on free, forced labor (*Id.* at ¶¶ 170-172, 190-191); that the individual defendants each played a role in implementing these practices and exploiting students (*Id.* at ¶¶ 25-26, 39, 96-98); and that the entire scheme was deliberately misrepresented to paying families under the guise of character development (*Id.* at ¶¶ 31, 40, 87-88, 183). Dkt. 6 at 2-3, ¶¶ 25-26, 31, 39, 40, 83, 87-88, 96-98, 148, 170-173, 183, and 190-191. These are not legal conclusions dressed as facts. They are detailed, specific factual allegations that, if taken as true and with all reasonable inferences drawn in Plaintiff's favor, plausibly describe a scheme to obtain labor through serious harm and the threat of serious harm within the meaning of 18 U.S.C. § 1589.

## VI.   CONCLUSION

Lead Counsel accepts full responsibility for the lapses that occurred in the Opposition and Notice of Errata and has tried to correct the record to the fullest extent possible. Lead Counsel

would like to again express her sincere apology to the Court and Defendants for these inadvertent mistakes. Lead Counsel is hopeful that the Court will see these errors for what they are – inattentive blunders that have been acknowledged by an attorney of twenty years' experience who has never had similar issues arise in any prior case. Lead Counsel has tremendous respect for the Court and has not attempted to intentionally mislead the Court. Accordingly, Plaintiff respectfully requests that the Court find that the FAICC states plausible claims for relief under the applicable law and pleading standards and deny Defendant's motion to dismiss.

Dated: March 4, 2026                                    Respectfully Submitted,


                                                        */s/ Kelly A. Guagenty*
                                                        Kelly A. Guagenty (MA BBO 658872)
                                                        *(Admitted pro hac vice)*
                                                        Kimberly Dougherty (MA BBO 658014)
                                                        *(Admitted pro hac vice)*
                                                        Karen Barth Menzies (CA SBN 180234;
                                                        CO SBN 62689)
                                                        *(Admitted pro hac vice)*
                                                        JUSTICE LAW COLLABORATIVE, LLC
                                                        210 Washington Street
                                                        North Easton, MA 02356
                                                        Phone: (508) 230-2700
                                                        Email: kelly@justicelc.com;
                                                        kim@justicelc.com;
                                                        karen@justicelc.com


                                                        */s/ Kevin M. Fitzgerald*
                                                        Kevin M. Fitzgerald
                                                        FITZGERALD LAW GROUP, LLC
                                                        120 Exchange Street, Suite 200
                                                        Portland, ME 04101
                                                        Phone: (207) 874-7407
                                                        Email: kfitzgerald@fitz-lawgroup.com

                                                        *Attorneys for Plaintiff Jessica Fuller*

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 4, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                  */s/ Kelly A. Guagenty*
                  Kelly A. Guagenty