# Exhibit 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| JESSICA FULLER, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>HYDE SCHOOL; LAURA GAULD; MALCOM GAULD; GEORGIA GAULD MACMILLAN; DONALD MACMILLAN; LAURIE GAULD HURD,<br><br>Defendants. | Civil Action No. 2:25-cv-00354-SDN<br><br>Hon. Stacey D. Neumann |

**DECLARATION OF ATTORNEY KELLY A. GUAGENTY IN SUPPORT OF HER RESPONSE TO ORDER TO SHOW CAUSE**

I, Kelly A. Guagenty, being duly sworn, do hereby depose and state as follows:

1. I am an attorney duly licensed to practice law in the Commonwealth of Massachusetts (BBO No. 658872). I was first admitted to the Massachusetts Bar in 2003. I have been admitted *pro hac vice* to practice before this Court in the above-captioned matter. I submit this Declaration in support of Attorney Kelly A. Guagenty's Response to the Order to Show Cause.

2. I take full responsibility for the citation errors and inaccuracies contained in Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Individual and Class Action Complaint ("Opposition") (ECF No. 25) and the Notice of Errata Regarding Plaintiff's Opposition to Defendants' Motion to Dismiss ("Notice of Errata") (ECF No. 29). These errors were unintentional but serious and should not have occurred.

**<u>Background/Standard Practice</u>:**

3. In my practice, it is my standard procedure to conduct a final, line-by-line verification of every citation in any court filing submitted under my name. This process includes confirming that each cited authority exists, that the citation is accurate, and that the authority supports the proposition for which it is cited.
4. This final verification process is also the policy followed by other attorneys at my firm.
5. In connection with the Opposition filed in this case, I did not complete that full, line-by-line verification process. Instead, I performed a more limited electronic check using Lexis to confirm that cited authorities existed and appeared generally relevant.
6. This deviation from my standard practice was a significant lapse in diligence and allowed citation errors to remain in the Opposition that was filed with the Court.

**<u>Use of Artificial Intelligence ("AI"):</u>**

7. My firm does not routinely rely on AI tools in drafting court filings. However, I have since determined that AI, including ChatGPT or Claude, was used at some point during the drafting of the Opposition by one or more members of my team.
8. Due to the collaborative drafting process for the Opposition, the number of contributors, and limitations of the document management system that was used, I cannot identify precisely when or by whom AI was first used.
9. Regardless of which team member used AI or at what stage, I accept full responsibility for the errors as the attorney who signed and filed the Opposition.
10. I also understand that the use of AI does not dimmish an attorney's obligation to ensure the accuracy of court filings.

**Timeline of Relevant Events:**

11. Beginning in mid-September 2025, my elderly mother, who was living alone approximately 40 minutes away from my home, began experiencing a rapid decline in her physical and mental health. At the time, I was the primary caregiver for my elderly mother.
12. Throughout the next two months, it became clear that my mother could no longer live independently and needed to quickly secure placement in an assisted living facility.
13. On October 7, 2025, Defendants filed their Motion to Dismiss First Amended Individual and Class Action Complaint and Incorporated Memorandum of Law (ECF No. 20).
14. The Opposition was drafted between approximately mid-October and late November 2025 through a collaborative process involving multiple contributors, including an associate attorney, a contract attorney, a paralegal, and me. The team worked independently and remotely.
15. As supervising counsel, I was responsible for overseeing the process and ensuring the accuracy of the final submission.
16. During this same period, my familial responsibilities included coordinating my mother's medical care, researching and securing assisted living facility placement, and assisting with my mother's transition including all her belongings out of her home of approximately twenty years.
17. On November 22-23, 2025, which immediately preceded the Thanksgiving holiday, I spent the weekend moving my mother out of her home and into my personal residence on a temporary basis.
18. I began reviewing the final draft of the Opposition that had been prepared on November 24, 2025, but did not complete a final, line-by-line verification of every citation per my

usual practice.

19. That same evening, I traveled from Natick, Massachusetts to Boston Logan Airport to pick up my youngest daughter returning from college in North Carolina. Upon returning home, I continued to review the draft Opposition into the early morning under significant fatigue.
20. Early the next morning of November 25, 2025, my oldest daughter returned home from college in Arizona for Thanksgiving.
21. Due to an internal deadline driven by the Thanksgiving holiday and lack of staff available from Wednesday onward that week, I authorized the filing of the Opposition on November 25, 2025, without completing my standard final verification process.
22. In the days that followed, I continued caring for my mother and prepared for her transition to the assisted living facility, which occurred on December 6, 2025.
23. The time and emotional toll of these personal events was significant and exhausting. I offer a description of these personal circumstances only to provide context in answering the Court's question posed in the Order to Show Cause. I recognize that they do not excuse my obligation to ensure the accuracy of filings submitted to the Court.
24. On December 9, 2025, Defendants filed a Reply in Support of Motion to Dismiss the First Amended Individual and Class Action Complaint ("Reply") (ECF No. 26) identifying citation issues in the Opposition.
25. On December 10, 2025, I filed the Notice of Errata as an effort to address the briefing issues. This filing, although made in good faith, also contained additional inaccuracies.
26. On March 4, 2026, I filed Plaintiff's Response to Defendants' Reply to Plaintiff's Notice of Errata (ECF No. 36) which identified and sought to comprehensively and specifically address each specific briefing error made in the prior filings.

27. The briefing errors included mischaracterizations of case law, inapposite citations, a non-verbatim statutory quotation, improper attribution of legal standard, and reliance on a factual allegation that was not contained in the First Amended Complaint.

28. I acknowledge and accept full responsibility for each of these errors.

**Professional Background:**

29. I have been admitted to practice law in the State of Massachusetts since 2003.

30. In more than twenty-two years of practice, I have never been sanctioned by any court, been the subject of a bar complaint or any disciplinary proceeding or been found to have engaged in professional misconduct.

31. This is also the first time I have been required to respond to an order to show cause.

32. The briefing errors at issue were an isolated lapse in my professional judgment during an unusually demanding and exhausting time in my personal life and do not reflect my ordinary practice, work product, or professional standards.

33. I am sincerely remorseful for the briefing inaccuracies and apologize to the Court, to opposing counsel, and my client for the errors that occurred.

**Corrective Measures Taken:**

34. When the briefing errors were first brought to my attention, I immediately filed the Notice of Errata to try to address the inaccuracies. In hindsight, while that filing was made in good faith, it was done too quickly and contained its own mistakes which compounded the problems rather than correcting them.

35. Since first discovering the briefing errors in December 2025, I have taken multiple remedial steps to address these problems and prevent similar issues from occurring in the future, including: (a) two additional experienced partners from my firm have been assigned

to and admitted in the case and will review all filings; (b) new local counsel has been retained and is actively involved; (c) firm-wide citation verification protocols have been reinforced with all attorneys and staff; (d) a firm policy has been implemented requiring disclosure of any use of AI in drafting; (e) I have registered for and will attend a full-day continuing legal education program on AI and emerging technology on April 29, 2026; and (f) through my own research I have increased my knowledge of the risks associated with AI in the legal practice.

36. Additionally, at all times, I have tried to fully acknowledge the briefing errors and take responsibility for them, and I have been forthcoming about the use of AI in the drafting process.

37. I have also become more attentive to identifying potential indicators of AI use in legal drafting.

38. I respectfully submit this Declaration to provide a full and candid explanation of the circumstances surrounding the citation errors.

39. I remain committed to ensuring the accuracy of all future filings and to maintaining the highest standards of professional responsibility before this Honorable Court.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 28th day of April 2026.

Kelly A. Guagenty, Esq.