UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JESSICA FULLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:25-cv-00354-SDN |
| | ) | |
| HYDE SCHOOL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER IMPOSING SANCTIONS</u>**

This issue comes before the Court on the matter of whether Plaintiff's counsel, Attorney Kelly Guagenty, should be sanctioned for submitting two filings to the Court which used artificial intelligence ("AI") to generate erroneous legal citations. *See* ECF Nos. 25, 29. On April 14, 2026, the Court issued a show cause order to Attorney Guagenty asking why she should not be sanctioned for making false statements of fact or law to the Court. ECF No. 38. After considering the record, applicable law, and counsel's response to the Court's show cause order, ECF No. 39, the Court determines it is appropriate to impose non-monetary sanctions.

**BACKGROUND**

Plaintiff Jessica Fuller brought claims against her former school, the Hyde School, and other institutional defendants alleging child exploitation of students. *See* ECF No. 1. On October 7, 2025, Defendants moved to dismiss the complaint for failure to state a claim. ECF No. 20. Plaintiff responded in opposition on November 25, 2025. ECF No. 25 ("the Response"). In their reply, Defendants asserted the Response contained inaccurate, misleading, and potentially fabricated sources. *See* ECF No. 26 at 2–6.

Plaintiff subsequently filed a "Notice of Errata" attempting to address these concerns but instead introduced additional inaccuracies in the challenged citations. *See* ECF No. 29. Defendants objected to the Notice of Errata. ECF No. 30. After independently reviewing the sources cited in both the Response and the Notice of Errata, the Court found that several cases were cited for unsupported propositions; some quoted language could not be located in the cited sources; and other quotations contained inaccurate pincites, all consistent with Defendants' objections.

On March 4, 2026, Plaintiff's counsel responded to Defendants' objection to the Notice of Errata, seeking to clarify the issues in the two filings. ECF No. 36. She explained that the inaccuracies were not fabrications and were not intended to mislead the Court but instead resulted from an "admittedly poorly overseen" drafting process which involved multiple attorneys and drafts. *Id*. at 3.

In April 2026, the Court issued an order to show cause directing counsel to explain why she should not be sanctioned for making false statements of law or fact to the Court. ECF No. 38. She responded on April 28, 2026, apologizing to the Court and accepting responsibility for the errors. ECF No. 39. For the first time, she disclosed that she or someone on her team had used AI—either Claude or ChatGPT—in the drafting process. *Id*. at 2. She also acknowledged that she had not conducted a line-by-line citation check. *Id*. She further stated she had apologized to her client, retained new local counsel and additional firm oversight for her filings, implemented new firm policies on AI use and disclosure, and registered for a continuing legal education ("CLE") program on AI on April 29, 2026. *Id*. at 7–8. She also indicated a willingness to file an amended opposition to Defendants' motion to dismiss. *Id*. at 10.

2

**ANALYSIS**

Federal Rule of Civil Procedure 11 establishes the standard that attorneys and parties must meet when filing documents in federal court. Rule 11(b)(2) requires the attorney filing any litigation document to certify "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Filing papers "without taking the necessary care in their preparation" is an "abuse of the judicial system" subject to Rule 11 sanctions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990). Rule 11 creates an incentive for attorneys "to stop, think and investigate more carefully before serving and filing papers," *id.*, which in practice means an attorney must, at a minimum, read and "thereby confirm the existence and validity of, the legal authorities on which they rely," *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024).

When Rule 11 is violated, the Court may consider sanctions either sua sponte or on motion. *See* Fed. R. Civ. P. 11(c)(2)–(3). Any sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The determination of whether to impose sanctions is conducted under an "objective standard of reasonableness" and "based upon what was reasonable at the time the attorney acted." *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990). The misuse of generative AI in litigation poses particular risks to the integrity of the judicial process, as illustrated in the seminal federal case on this topic. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023). When unverified, AI-generated citations are submitted, the opposing party must expend time and resources to uncover the errors, the Court must divert attention from other matters to verify fictitious authorities, and clients may be deprived of arguments grounded in real precedent. False attributions to parties can harm

3

reputations and erode public confidence in the legal system, and repeated incidents risk fostering cynicism about both the legal profession and the judiciary. At a time when public confidence in the judiciary is increasingly fragile, these lapses do more than merely delay proceedings; they foster a corrosive cynicism toward the legal profession and the rule of law. Furthermore, such conduct creates the risk that future litigants may disingenuously question the authenticity of genuine rulings, thereby undermining the finality of judicial decisions. Ultimately, while technology may evolve, the attorney's nondelegable duty to exercise independent professional judgment and verify all representations made to the tribunal remains a cornerstone of our legal system—one that cannot be sacrificed to the convenience of automation.

All of those issues are at play here. Counsel relied on generative AI to draft a filing that included inaccurate case citations and descriptions, and those inaccuracies were presented to the Court as though they reflected genuine legal authorities. Although AI can be a useful aid in research and drafting, its use does not diminish an attorney's nondelegable duties of diligence, candor, and reasonable inquiry under Rule 11. An attorney who chooses to use such tools must ensure that every citation and quoted passage has been independently confirmed using reliable legal sources, and that any limitations of AI tools are fully understood and accounted for. Here, the Court finds that several specific aspects of counsel's conduct did not satisfy the standard required by Rule 11. She relied on generative AI to produce case citations and descriptions but did not confirm that those authorities existed or accurately stated the law before filing. After Defendants identified significant errors in the original filing, she did not promptly withdraw or correct it, and it remains on the docket. In her Notice of Errata, she repeated and extended some of the same problems instead of fully remedying them. She has not

shown that she reimbursed her client for time spent on the faulty filings. She did not candidly disclose her use of AI in her initial filings and did so only after the Court issued a show cause order, further frustrating the Court's ability to understand the source of the errors and implicating her duty of candor.

At the same time, the Court credits several specific mitigating factors that reflect counsel's appropriate response once the seriousness of the issue became clear. She has accepted responsibility for the errors in her filings and expressed genuine remorse, rather than attempting to deny the inaccuracies or shift blame to others. She has no history of prior disciplinary violations, and there is nothing in the record to suggest that her conduct was willful, repeated, or undertaken for strategic advantage. She has already begun to take concrete steps to educate herself about the risks of AI in legal practice, including enrolling in continuing legal education courses focused on generative AI and its proper use in litigation. She represents that she is implementing firm-level policies and procedures aimed at ensuring that any future use of AI is accompanied by meaningful human review and verification of all citations and quoted authorities. These actions weigh in favor of a sanction focused on education, process improvement, and public admonition, rather than a severe monetary or disciplinary penalty.

The Court emphasizes that generative AI is not inherently improper and may, when used responsibly, assist attorneys with drafting and research—but its use does not abdicate an attorney's duties of responsibility and candor to the Court. Accordingly, the Court issues an admonition to Attorney Guagenty for her misuse of AI in this case, and a broader admonition to the Bar regarding the need for caution, verification, and transparency whenever generative AI is used in litigation.

## CONCLUSION

The Court finds the following sanctions are appropriate to deter future improper submissions. Plaintiff's counsel is ordered to:

- Attend a continuing legal education course on the topic of generative AI in the legal field and submit proof to the Court of her attendance. She may submit proof of the course for which she registered to attend on April 29, 2026;

- Create clear procedures at her law firm to prevent such errors from happening again, and to explain those procedures to the Court in her Certification as ordered below;

- Provide a copy of this Order to Plaintiff; and

- File certification on the docket in this case attesting that she has complied with the provisions of this Order within 45 days of this Order.

Additionally, Plaintiff is **ORDERED** to file an amended response in opposition to Defendants' motion to dismiss for failure to state a claim. The Court **STRIKES** Plaintiff's response in opposition to the motion to dismiss, ECF No. 25, from the docket. Defendants' objection to Plaintiff's Notice of Errata, ECF No. 30, is **DISMISSED AS MOOT**.

**SO ORDERED.**

Dated this 5th day of May, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

6