IN THE UNITED STATES COURT
FOR THE DISTRICT OF MAINE

JESSICA FULLER, individually and on behalf
of all similarly situated persons,

     Plaintiffs,

     vs.

HYDE SCHOOL; LAURA GAULD;
MALCOLM GAULD; GEORGIA GAULD
MACMILLAN; DONALD MACMILLAN;
LAURIE GAULD HURD

     Defendants.

Civil Action No.: 2:25-cv-00354

Hon. Stacey D. Neumann

**PLAINTIFF'S AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT**

Plaintiff Jessica Fuller ("Plaintiff"), individually and on behalf of all others similarly

situated ("Putative Class Members"), by and through her attorneys, hereby files Plaintiff's

Amended Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Individual and

Class Action Complaint ("Amended Opp. to Motion to Dismiss").

I.     **INTRODUCTION**

Plaintiff brings this action on behalf of herself and other survivors of systemic forced labor

at Hyde School ("Hyde"), a residential facility in Bath, Maine which for over sixty years has

operated as a commercial enterprise generating millions in annual revenue while extracting unpaid

forced labor from minors under the false guise of "character development." In her First Amended

Individual and Class Action Complaint ("FAICC"), Plaintiff asserts violations of 18 U.S.C. §§

1584, 1589, 1590, 1594, 2255, and Maine's human trafficking statute, 5 M.R.S. § 4701 against

Hyde as well as Laura Gauld, Malcolm Gauld, Georgia Gauld MacMillan, Donald MacMillan, and

Laurie Gauld Hurd ("Individual Defendants") (collectively hereafter as "Defendants"). In their

1

Motion to Dismiss First Amended Individual and Class Action Complaint ("Defendants' Motion"), Defendants seek dismissal of all claims, requesting that the Court reject Plaintiff's well-pleaded factual allegations and draw inferences favoring Defendants – both of which Fed. R. Civ. P. 12(b)(6) clearly prohibits. In the FAICC, Plaintiff alleges a calculated system of unpaid labor exploitation of minor students at Hyde who were subjected to physical punishment and restraint, food and water deprivation, and psychological abuse and coercion to compel their free manual labor generating significant economic benefit to Defendants. This free labor was carried out under threat of punishment and included, among other things, clearing wilderness properties for revenue-generating programs, maintaining and improving income-producing facilities, and performing construction work and other manual labor.

The threshold question for the Court in ruling on Defendants' Motion is whether the alleged facts, if true, plausibly show that Defendants obtained unpaid labor through means prohibited by federal and state trafficking statutes.[1] Taking the allegations as true and drawing all reasonable inferences in Plaintiff's favor, the answer at this pleading stage is clearly yes. Accordingly, for the reasons set forth herein, Defendants' Motion as to all remaining causes of action which now include Counts 1-3 and 5-10 should be denied.[2]

---

[1] To narrow the parties' disputes, Plaintiff voluntarily withdraws the following counts from the FAICC: Forced Labor Violations of 5 M.R.S. § 4701 against all Defendants (Count 4); Negligent Infliction of Emotional Distress against Hyde and the Individual Defendants (Counts 11 and 12); Intentional Infliction of Emotional Distress against the Individual Defendants (Count 13); Negligent Hiring, Retention, and Supervision against all Defendants (Count 14); Premises Liability against all Defendants (Count 15); and Injunctive Relief and Asset Preservation against all Defendants (Count 16). Therefore, Defendants' arguments regarding certain claims being barred by statutes of limitations or due to injunctive relief procedures are moot.

[2] Presuming the Court denies the Defendants' Motion to Dismiss, the Plaintiff will file a Second Amended Individual and Class Action Complaint to remove the withdrawn counts and, if necessary, to address any technical deficiencies or any other issues the Court may identify.

II.     **STANDARD OF REVIEW**

To overcome a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the FAICC, as it does here, must only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility is not probability; it is simply "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In ruling on Defendants' Motion, the Court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010). In the FAICC, Plaintiff alleges detailed facts regarding Defendants' forced labor practices, the coercive techniques used to compel unpaid labor, the institutional program structure that facilitates it, and the financial benefits obtained by Defendants because of these practices. Accepting the factual allegations as true as required by Rule 12(b)(6). Plaintiff has plausibly stated all remaining causes of action. Therefore, Defendants' Motion should be denied in its entirety.

III.    **DEFENDANTS HAVE FAILED TO MEET THE STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6) AND THE MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY**

A.      **Plaintiff Has Plausibly Alleged Claims Under the TVPRA**

In the FAICC, Plaintiff has plausibly alleged federal forced labor claims under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589 *et seq* ("TVPRA"). The TVPRA provides an expansive cause of action to forced labor victims like Plaintiff and the Putative Class Members against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" a violation of any section of the TVPRA. 18 U.S.C. § 1595(a).

Beneficiary liability under the TVPRA has four elements: (1) the defendants participated in a venture; (2) the defendants knowingly benefited from their participation in the venture; (3) the venture violated the TVPRA; and (4) the defendants knew or should have known that the venture violated the TVPRA. *Doe v. Hilton Domestic Operating Co.*, 810 F. Supp. 3d 194, 201 (D. Mass. 2025) (citing *G.C. v. Salesforce.com, In*c., 76 F.4th 544, 553 (7th Cir. 2023); *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021)). As discussed below, each element for beneficiary liability under the TVPRA is adequately plead against all Defendants in the FAICC.

### 1.  Defendants Participated in a Venture

The first element for beneficiary liability under the TVPRA is whether Defendants participated in a venture. Under the TVPRA, a venture is simply a "group of two or more individuals associated in fact…" *Ricchio v. McLean, 853 F.3d 553, 556 (1st Cir. 2017)(internal citations omitted).* The venture underlying a civil TVPRA claim may be any commercial venture, including those "whose primary focus is not on [labor] trafficking." *Doe v. Hilton Domestic Operating Co.*, 810 F. Supp. 3d 194, 202 (D. Mass. 2025)(quoting *C.G. v. Salesforce.Com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023)(finding a venture need not have the purpose or intent of criminal conduct). The FAICC contains numerous factual allegations demonstrating that Defendants operated as a venture under the TVPRA. FAICC ¶¶ 1-6 (identifying Defendants and their roles at Hyde as a coordinated enterprise); ¶ 25 (noting the Gauld family operated Hyde for nearly sixty years); ¶¶ 26-28 (detailing Individual Defendants' executive positions and compensation derived from Hyde's substantial revenues). Therefore, the first element for beneficiary liability under the TVPRA is satisfied.

### 2.    Defendants Knowingly Benefited From the Venture

The second element for beneficiary liability under the TVPRA is whether Defendants benefitted from the venture. The TVPRA's "anything of value" language contained in this element is extremely broad. *Ricchio*, 853 F.3d at 556. Indeed, there is no "particular threshold of value" that the benefit must reach. *Ricchio v. Bijal, Inc.*, 386 F. Supp. 3d 126, 131 (D. Mass 2019)(denying summary judgment where hotel employee defendants received a salary from the hotel and therefore had a "financial stake" in its success).

The FAICC contains numerous factual allegations demonstrating that Defendants benefitted from the venture. Defendants marketed unpaid labor as therapeutic and used it to recruit new students whose families' paid tens of thousands of dollars to Hyde in annual tuition because of Hyde's characterization of labor as innovative and essential for student growth. FAICC at ¶¶ 30-38, 40-41. Hyde used Plaintiff and the Putative Class Members' unpaid labor to maintain its campus, improve its properties, and reduce operating costs by not having to use paid staff for this work. FAICC ¶¶ 86, 148. Hyde also used unpaid student labor to maintain and develop its wilderness property in Eustis, Maine and charged families separate tuition fees for access to it. *Id.* at ¶¶ 69-72, 76-78. And the Individual Defendants drew substantial compensation from Hyde's revenues. FAICC ¶¶ 25-29. These factual allegations establish that Defendants directly and knowingly benefitted from the venture satisfying the broad "anything of value" threshold necessary under the TVPRA.

### 3.    The Defendants' Venture Violated the TVPRA

The third element for beneficiary liability under the TVPRA is whether Defendants venture violated the TVPRA. As discussed further below, the FAICC establishes that Defendants' venture

5

violated sections 1584, 1589, and 1590 of the TVPRA, and each violation, as pled, creates a separate beneficiary liability cause of action for Plaintiff and the Putative Class Members.

> **a.      Plaintiff Has Sufficiently Alleged that Defendants Obtained Labor by Means of Physical Coercion Pursuant to § 1584**

Under 18 U.S.C. § 1584, it is a violation to hold another person to involuntary servitude or to sell any person into any condition of involuntary servitude. 18 U.S.C. § 1584 (a). It is also a violation to attempt to violate § 1584. *See* 18 U.S.C. § 1594(a). Liability under § 1584 attaches when labor is compelled through use or threatened use of physical coercion. *United States v. Kozminski*, 487 U.S. 931, 948 (1988). "The crucial factor is whether a person intends to and does coerce an individual into his services by subjugating the will of the other person." *United States v. Warren*, 772 F.2d 827, 834 fn. 9 (11th Cir. 1985) (quoting, *United States v. Mussry*, 726 F.2d 1448, 1453 (9th Cir. 1984). A victim's "special vulnerabilities" must be considered when determining whether they reasonably believed they had no alternative but to remain in involuntary service for a time. *United States v. Alzanki*, 54 F.3d 994, 1000 (1st Cir. 1995) (citing *Kozminski*, 487 U.S. at 952-53). That Plaintiff and the Putative Class Members could theoretically just leave school as Defendants suggest is irrelevant, as physical restraints are not required to state a claim. *Alzanki*, 54 F.3d at 1000[3] (internal citations omitted); *see also United States v. King*, 840 F.2d 1276, 1281-83 (6th Cir. 1988) (rejecting argument that a child's ability to escape through a parent's consent meant the child's labor was voluntary and finding that parental consent cannot shield third parties from TVPRA liability).

---

[3] Defendants' reliance on *Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017) is misplaced because the victim was an adult who was a paid employee and who voluntarily returned to work for the alleged traffickers at least once. Additionally, the case which was decided at summary judgment did not involve minors confined to a residential center who performed wholly unpaid labor for the center's benefit.

The FAICC plausibly alleges that Defendants obtained the unpaid labor of Plaintiff and Putative Class Members through the use and threatened use of physical coercion that placed them in unrelenting fear. FAICC ¶¶ 49, 52, 54-55, 57, 64-66, 101, 103, 118-119, 144(b), 144(e), 166(a)-(j), 202, 204, 208(a)-(d), 213(a)-(d), 214. Plaintiff and the Putative Class Members were all vulnerable minors while at Hyde. *Id*. ¶ 227. Students believed they would be punished, and were punished, with physical abuse, food and water deprivation, sleep deprivation, and being forced to dangerously sleep outdoors in the elements if they refused to comply or even complained about Hyde's labor demands. *Id*. ¶¶ 118-119, 144(e), 202, 204-212, 213(a)-(d). These physical disciplinary mechanisms coerced free labor from Plaintiff and the Putative Class Members. *Id.* ¶ 204. Ultimately, Plaintiff and the Putative Class Members believed their "escape," or graduation required compliance with Hyde's forced labor requirements. *Id*. ¶ 214.

Accepting the allegations as true, and applying Defendants' own authority, the facts alleged show that Plaintiff and the Putative Class Members' only choice was "between performing the labor on the one hand and physical…sanctions on the other." *Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 999 (3d Cir. 1993)(citing *Kozminski*, 487 U.S. at 943.) Indeed, *Steirer* itself cites to examples of involuntary servitude in institutional settings analogous to this case including *Jobson v. Henne*, 355 F.2d 129, 131–32 (2d Cir. 1966) (patients in a mental institution who were required to perform labor stated a claim under the Thirteenth Amendment) and *Santiago v. City of Philadelphia*, 435 F. Supp. 136, 156–57 (E.D. Pa. 1977) (refusing to dismiss Thirteenth Amendment claim brought by juveniles detained and forced to work at a youth service center). As alleged in the FAICC, at all times relevant, Plaintiff and the Putative Class Members, like patients in a mental institution or detained youth, were under Defendants' control and custody while they enforced their unpaid labor demands with physical coercion upon students. FAICC at ¶¶ 119, 202,

227, and 228(d)(m). These factual allegations adequately establish that Plaintiff and the Putative Class Members were subject to involuntary servitude under § 1584 of the TVPRA. Accordingly, Defendants' Motion as to Counts 1 and 8 should be denied.

> **b.    Plaintiff Plausibly Alleges Claims Against Defendants for Obtaining and Benefitting from Forced Labor Under § 1589**

Under § 1589 of the TVPRA, it is a crime to knowingly provide or obtain forced labor, or to benefit from it, through: (1) force or threats; (2) serious harm or threats thereof; (3) abuse of legal process; or (4) any scheme causing a person to believe noncompliance would result in serious harm or restraint. 18 U.S.C. § 1589(a)(1-4). The term "serious harm" is defined in the TVPRA as "any harm, whether physical or nonphysical, including psychological, financial, reputational harm..." 18 U.S.C. § 1589(c)(2). The phrase "serious harm" extends "to non-physical coercion" in the forced labor context. *United States v. Papantoniadis,* 165 F.4th 65, 78 (1st Cir. 2026). Considering "all the surrounding circumstances," the harm need only be serious enough, as it was here, to compel a reasonable person of the same background in the same circumstances to continue performing the labor to avoid the harm. 18 U.S.C. § 1589(c)(2). Critically, as is also the case here, "known objective conditions that make the victim especially vulnerable to pressure (such as youth…) bear on whether the [student's] labor was obtained by forbidden means." *United States v. Bradley*, 390 F.3d 145, 153 (1st Cir. 2004), *vacated on other grounds*, 545 U.S. 1101 (2005).

In the FAICC, Plaintiff alleges that Defendants obtained the forced labor of Plaintiff and Putative Class Members through psychological or emotional abuse and serious harm, using internal surveillance and disciplinary systems ("Brother's Keeper", "2-4" and "Work Crew"); verbal degradation; threats of strenuous exercise; withholding of food and water; and threats of violence, isolation, restraint, and loss of privileges. FAICC at 2, ¶¶ 33-34, 58-61, 64-66, 162, 164-166(a)-(j). Plaintiff further alleges that Defendants benefitted financially from this forced unpaid

labor scheme. Hyde School, founded in 1966 by Joseph Gauld as a "character development" school, generates substantial revenue and holds significant assets, with many leadership positions being held by Gauld family members and their spouses. *Id.* ¶¶ 16-17, 28-29. This program of forced labor reduced Hyde's operating costs by replacing paid labor for tasks such as shoveling snow, digging, building walls, landscaping, and maintaining Hyde-owned properties, including the Eustis property marketed for summer programs, with unpaid student labor. *Id*. ¶¶ 62, 67-69. These factual allegations satisfy the plausibility standard under *Iqbal* and within the First Circuit and demonstrate that Defendants obtained and benefitted from forced unpaid labor of its student population. Accordingly, Defendants' Motion to dismiss Counts 2 and 8 should be denied.

### i.    Defendants Obtained Commercial Labor Through Serious Harm

The TVPRA applies to whoever falls within the reach of its plain text. *Burrell v. Staff*, 60 F.4th 25, 39 (3d Cir. 2023)(*internal citation omitted*)(reversing dismissal of TVPRA claims where county jail inmates' labor was obtained through withholding food and threats of continued incarceration). This is because the "plain and unambiguous" language of the TVPRA "evinces no intent on the part of Congress to restrict the application of the statute to particular actors or particular victims." *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1276-77 (11th Cir. 2020). Rather, the TVPRA limits liability "only by reference to the actions taken by the would-be violator: it applies to anyone who knowingly obtains the labor or services of a person" in violation of the statute. *Id.* Defendants' conflation of forced hard labor for a profitable commercial enterprise with household chores in a familial setting does not remove Defendants from the plain application of the TVPRA.

Defendants minimize systematic forced unpaid labor as mere "chores around campus that any teenager could be expected to do." Def. Mot. at 2. This speculative opinion is factually

9

unsupported and ignores the commercial and coercive nature of the free labor received by Defendants over many decades. Plaintiff does not simply complain that she had to perform ordinary household chores. Rather, Plaintiff alleges a formalized and systemic free forced labor program which included full-time unpaid labor from minor students who were simultaneously suspended from academics under "2-4" status (FAICC at ¶ 58); campus construction including building walls (*id.* ¶ 62); hazardous manual labor like clearing a basement with visible asbestos (*id.*); wilderness labor camps with inadequate food, shelter, and clothing (*id.* ¶¶ 67-68, 74); work on third-party properties (*id*. ¶¶ 78-80); improvements on summer properties (*id.* 69-72, 76-77); maintenance of staff homes (*id*. ¶ 62); and extended and rigorous manual labor including digging, moving rocks, clearing brush, felling trees, and shoveling snow (*id.*) – each of which is beyond the gamut of typical household chores especially for minors. To be clear, the FAICC shows that Defendants' conduct and institutionalized programs involve the systematic extraction of unpaid construction, landscaping, and maintenance labor from captive minors under threat of serious harm. *Id.* ¶¶ 35, 62(a)–(l), 120(a)–(f), 144(b), 202, and 204.

Defendants' heavy reliance on *United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014), fails for the same reasons. In *Toviave*, the defendant made his young relatives perform household chores. 761 F.3d at 624-624. The Sixth Circuit reversed the criminal conviction to avoid criminalizing household chores or federalizing state child abuse laws. *Toviave*, 761 F.3d at 629. That concern has no application here. Hyde is not a parent, or a relative. Hyde is a multi-million-dollar commercial enterprise that charged families approximately $68,300 per year in tuition then subjected minors to forced labor that reduced operating costs and improved revenue-generating properties. FAICC ¶¶ 28-29, 62(a)-(l), 86, 148. The Sixth Circuit recognized that parents *can* commit forced labor and that the statute "contains no exception for parents or other close relatives."

*Toviave*, 761 F.3d at 626. If a parent in a private household can violate § 1589, a commercial enterprise extracting unpaid labor from hundreds of confined minors certainly can.

The facts presented in this case are materially indistinguishable from *Bates v. Sequel Youth and Family Services, LLC*, 2025 U.S. Dist. LEXIS 202430 (N.D. Ala. Oct. 14, 2025), where the court denied a motion to dismiss TVPRA claims against a commercial residential youth facility and its founder. In *Bates*, the facility required students to clean and maintain the entire campus, perform landscaping, and carry out manual labor such as building structures and carrying boulders, all of which reduced the facility's operating costs. *Id.* at *3-7. Students who refused were subjected to punishments including forced exercise, food restrictions, sleep deprivation, and isolation. *Id.* The *Bates* court found that the residents had plausibly alleged they "were so fearful of punishment and threats of punishment that they performed forced labor when instructed to do so." *Id.* at *18. Just like the students in *Bates*, Plaintiff and the Putative Class Members were confined in a commercial residential facility, forced to perform unpaid labor that reduced Defendants' operating costs, and were subjected to escalating physical punishment, food deprivation, and isolation when they refused or failed to comply. FAICC ¶¶ 62(a)-(l), 118-119, 144(b), 202, 204, 208(a)-(d).

Defendants' empty characterizations of the labor as mere chores "that any teenager could be expected to do as part of caring for one's home" (Def. Mot. at 1) are misplaced and a distraction from the proper focus under § 1589, which is whether the serious harms Defendants created were enough to compel a reasonable Hyde student to continue performing free labor to avoid the harm. 18 U.S.C. § 1589(c)(2). The FAICC plausibly alleges that it was. Moreover, Plaintiff's experience was not unique. Defendants engaged in a decades long institutional practice of using punishment to compel labor that Defendants proudly repackaged and sold as uniquely therapeutic. *See* FAICC ¶¶ 25, 30, 35, 40. Hyde's students over those decades faced similar threats of serious harm, and

those threats were sufficient to compel their labor. *See, e.g.*, *Id.* ¶¶ 144(a), 201-202, 214. This is precisely the type of "scheme, plan, or pattern" prohibited by § 1589(a)(4).

Of course, one of Defendants' goals was to break students down into providing arduous, free labor without question. *Id.* ¶ 42, 166(e). Indeed, Hyde's commercial success depended on student compliance with labor demands because that compliance was the very "character development" it marketed to families as superior to other programs. *Id.* ¶¶ 30-38, 40-41. Had the threats to Plaintiff and other students been ineffective, the self-created character development label would have been an equally ineffective selling point for Hyde. *Id.* ¶¶ 20, 40.

Additionally, Plaintiff and Putative Class Members were all minors while at Hyde. FAICC ¶ 227. Like the *Bates* facility and its director, Defendants subjected their students to relentless surveillance (FAICC ¶¶ 33-34, 43, 50, 107), removed access to all necessities (*Id.* ¶¶ 166(h), 208(a)-(d)), and then conditioned their access to food, water, hygiene, social contact, and their ability to leave Hyde on their acquiescence to its forced free labor demands (*Id.* ¶¶ 213(a)-(d), 214). Considering "all the surrounding circumstances", the FAICC plausibly alleges that Hyde's conduct compelled the forced unpaid labor of Plaintiff and Putative Class Members in violation of 18 U.S.C. § 1589. For these reasons as well, Defendants' Motion to dismiss Counts 2 and 8 should be denied.

### ii.      Defendants Received Significant Economic Benefits

Defendants' substantial financial benefits place this case squarely under the TVPRA. Plaintiff and the Putative Class Members have claims against "[w]hoever knowingly benefits, financially or by receiving anything of value…" 18 U.S.C. § 1589 (b). Again, "anything of value" as found in § 1595(a), is "extremely broad." *Ricchio*, 853 F.3d at 556.

12

The Gauld family founded Hyde and has operated the school for over sixty years. FAICC ¶¶ 15-16, 25-26. Hyde generates over $13 million annually, holds over $23 million in valuable assets, and charges tuition exceeding $68,000 per year – all while not paying students for their forced labor. *Id.* ¶¶ 28-29. Additionally, Gauld family members including spouses draw significant salaries from Hyde. Defendant Malcolm Gauld was paid approximately $1.5 million in 2020 alone and Defendant Laura Gauld earned a salary of over $300,000.00 in 2021. *Id.* ¶¶ 26-27.

The free labor supplied by minor students at Hyde further enhanced the school's profits by:

- Reducing operating costs: free labor for groundskeeping, maintenance, and construction. *Id.* ¶ 86.
- Improving revenue-generating property: forced work on Hyde's Eustis property marketed for summer programs. *Id.* ¶¶ 67-69.
- Fulfilling third-party contracts: labor on Seguin Island satisfied Hyde's obligations while generating benefits. *Id.* ¶ 79.

The Defendants' financial interests and benefits here far surpass the two hotel employees who were found to have a "financial stake" in the success of a hotel just through the "de minimis" value of renting rooms. *Bijal, Inc.*, 386 F. Supp. 3d at 131-132.

Congress intended the TVPRA to apply when for-profit entities coerce free labor to reduce costs and increase revenue, regardless of educational claims. In *Bates*, the court noted allegations that the facility intentionally understaffed because it relied on free labor of its students to reduce costs. 2025 U.S. Dist. LEXIS 202430, at *5. Here, the economic benefit to Defendants is even clearer. Hyde received the benefit of reduced staffing costs, free student maintenance of revenue-generating properties, fulfillment of contracts with third party properties like Sequin Island, and free work at homes owned by Hyde's employees. FAICC ¶¶ 62(f), 71-73, 79, 80, 86, 148. These allegations satisfy the low bar of receiving "anything of value" under §§ 1589 and 1595. In sum, when a commercial enterprise profits from coerced free labor from minors, the TVPRA applies, notwithstanding any purported educational purpose. Such is the case here.

### iii.    The "By Means Of" Causation Is Adequately Pled

Defendants argue that Plaintiff fails to show the harms were the "means" of obtaining free labor. Def. Mot. at 12-13. This is a striking misread of both the FAICC and the TVPRA. In assessing TVPRA claims, attention must be given "to the whole body of allegations…" *Ricchio*, 853 F.3d at 557; *see also* 18 U.S.C. § 1589(c)(2)(harm viewed "under all surrounding circumstances"). The inquiry includes accounting for objective vulnerabilities, such as a victim's age. *Bradley*, 390 F.3d at 153. Here, Plaintiff alleges a coercive system where minors were subjected to (a) attack therapy that broke down their resistance, (b) surveillance which prevented collective action, (c) isolation that eliminated outside knowledge and support, and (d) food deprivation, physical punishment, and threats of escalating labor which compelled their immediate and ongoing compliance with Hyde's forced unpaid labor demands. FAICC ¶¶ 42, 50, 107, 166(e), 202, 204, 208(a)-(d), 213(a)-(d).

Causation is also broad under the TVPRA, which bars "getting or giving labor by any one of, or by any combination of" prohibited means, and includes "more-expansive definitions of coercion to reflect the increasingly subtle ways by which labor may be forced…" *Burrell*, 60 F.4th at 37 (*internal citations* and *quotations omitted*). This indicates victims "can face more than a binary choice and remain protected by the statute," as is the case here. *Id.* The Ninth Circuit has further clarified that § 1589's "by means of" language requires only a proximate causal link between one or more of the unlawful means enumerated in § 1589(a) and the labor actually obtained. *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1155 (9th Cir. 2022). In this case, Plaintiff asserts numerous factual allegations which adequately establish causation including:

- Minors were forced to perform labor under threat of physical and emotional harm, deprivation of food and housing, and additional forced labor. FAICC ¶ 119.

- Minors' access to basic necessities was conditioned on compliance with forced labor demands. *Id*. ¶ 213.
- Minors' resistance to forced labor requirements triggered food/sleep deprivation, isolation, public shaming, and intensified physical exertion. *Id*. ¶ 144(e).

In *Bates,* the court found similar factual allegations sufficient to satisfy causation where students faced extended placements, isolation, and seclusion, plausibly compelling labor under threat of punishment. 2025 U.S. Dist. LEXIS 202430 at *5-6. Similar facts and the same reasoning applies here.

          **c.**       **Because Plaintiff Plausibly Alleges Her Forced Labor Claims Pursuant to § 1589, Plaintiff's Claims Under §§ 1590 (Trafficking), 1594 (Attempt and Conspiracy), and 2255 (Remedies for Minors) Also Survive**

As set forth above, Plaintiff has sufficiently pleaded her forced unpaid labor claims under § 1589. Accordingly, her trafficking claim (Count 3), and her claims for attempt (Count 6) and conspiracy (Count 7) to commit forced labor violations based on the same conduct, should also survive.

18 U.S.C. § 1590 makes it a crime to recruit, harbor, transport, or obtain by any means, any person for "labor or services in violation of this chapter." Violations of this chapter include violations of § 1589, forced labor through coercion, as alleged by Plaintiff. Regarding her claims for trafficking pursuant to § 1590, Plaintiff alleges that Defendants obtained labor by means of deception, coercion, and psychological control including through misleading marketing materials; transporting students to forced labor sites; coercively maintaining exclusive control over Plaintiff and Class Members' housing, transportation, food and water; and harboring Plaintiff and Putative Class Members in order to benefit from their forced unpaid labor. FAICC ¶¶ 184-190.

The *Bates* court upheld identical claims for forced labor and trafficking. The plaintiffs in *Bates* asserted claims under both § 1589 (forced labor) and § 1590 (trafficking). *Bates*, 2025 U.S. Dist. LEXIS 202430 at *2. The court noted that § 1590 "makes it a crime to traffic any person for

'labor or services in violation of this chapter,' including forced labor." *Id.* at *11. Because the plaintiffs plausibly alleged forced labor violations, the *Bates* court held that their trafficking claims also survived. *Id.* at *17-18. The same logic applies here.

Counts 5 and 9 of Plaintiff's FAICC assert liability against Hyde and the Individual Defendants pursuant to 18 U.S.C. § 2255, which provides civil remedies for minors who were victims of §§ 1589 and 1590, among others. Counts 5 and 9 should also survive because Plaintiff has sufficiently alleged forced labor violations under § 1589 and trafficking under § 1590, and Plaintiff and the Putative Class Members were minors at the time of their forced unpaid labor. FAICC at ¶ 10, 128.

In sum, Plaintiff's claims under §§ 1590, 1594, and 2255 are derivative of her § 1589 claims. Because those underlying claims are plausible under *Twombly/Iqbal* and consistent with *Bates*, Counts 3, 5, 6, 7, and 9 survive. Accordingly, Defendants' Motion to dismiss Counts 3, 5, 6, 7, and 9 should be denied.

### d. Plaintiff Has Alleged Sufficient Facts to Impose Liability on the Individual Defendants

Defendants argue that Counts 2 and 8 should be dismissed because Plaintiff does not allege that the Individual Defendants personally inflicted the harm or knowingly participated in a forced labor venture. Def. Mot. at 14. This position misstates the law and ignores beneficiary liability which is applicable under both §§ 1595 and 1589.

The standard for beneficiary liability under § 1595 is discussed above. Amended Opp. to Motion to Dismiss, *supra* at 3-6. The concept of beneficiary liability is expansive and provides Plaintiff and the Putative Class Members with a cause of action under § 1595 against *anyone* who knowingly benefits from a venture that violates a predicate section of the TVPRA, such as § 1589. The only knowing scienter requirement is attached to the receipt of the benefit. *See* 18 U.S.C. §

16

1595(a); *Hilton Domestic Operating Co.*, 810 F. Supp. 3d at 201. Similarly, § 1589 provides a cause of action against both "whoever knowingly provides or obtains the labor" (§ 1589(a)), *and* against "whoever knowingly benefits" from the venture (§ 1589(b)). Just like § 1595, the only scienter requirement for § 1589(b) is that the individual defendant knowingly benefits from the venture as alleged here. 18 U.S.C. § 1589(b).

Neither statute, as Defendants appear to suggest, requires that an Individual Defendant personally coerces the victim and any argument that this is the standard is without merit. Liability covers those who knowingly benefit from a venture engaged in forced labor. *Ricchio*, 853 F.3d at 556-57(1st Cir. 2017). Indeed, it is enough that the venture itself violated the TVPRA and that the defendant knowingly received a benefit. Here, Plaintiff has alleged various ways in which the Hyde venture violated the TVPRA and how Defendants benefitted from it. Amended Opp. to Motion to Dismiss, *supra* at 5-14. Even a "de-minimis" benefit, such as a salary drawn from the venture is enough to establish a plausible "financial stake." *Bijal, Inc.*, 386 F. Supp. 3d at 131-132.; FAICC ¶¶ 25-29, 86, 148.

In *Bates*, the court denied dismissal of claims against John Ripley ("Ripley"), who was the co-founder, Chairman, majority owner, and an executive of the venture at issue and found that Ripley benefitted from violations of the TVPRA by receiving distributions, dividends, and a $1.25 million founder's fee. 2025 U.S. Dist. LEXIS 202430 at *2-6, *11, *15-21. The court noted that Ripley did not personally commit forced labor; facility staff did. Yet, the court found liability because Ripley: (1) participated in the venture via leadership roles and founding responsibilities, including signing reports and listing his home as the principal office; (2) knowingly benefitted financially from the venture because he received distributions and fees and was aware of these financial benefits; (3) had constructive knowledge of TVPRA violations through oversight, audits,

and incident reviews; and (4) made statements showing cost-benefit awareness (*see e.g.*, "you can… make money in this business if you control staffing.") *Id.* at *3-5, *11, and *14. The *Bates* court held that beneficiary liability under § 1595 requires plausible allegations that: (1) the defendant knowingly benefitted, (2) the defendant participated in a venture, (3) the venture violated the TVPRA as to plaintiffs, and (4) the defendant knew or should have known of the violations. *Id.* at *15 (*citing Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021)).

The TVPRA requires only that the Defendants "knew or should have known" of the venture's TVPRA violations. 18 U.S.C. § 1595(a). The phrase "knew or should have known echoes common language used in describing an objective standard of negligence." *Bijal, Inc.*, 424 F. Supp. 3d at 193-94 (*internal citations omitted*). For example, this is not a hotel case where a distant franchisor is seeking to escape liability by arguing they had no knowledge of trafficking that occurred in one of its franchisor's hotel rooms. Here, the individual defendants did not merely license their name to a distant operator. They designed the system, ran the school, supervised the staff, marketed it all to desperate families, and drew significant financial payments from the resulting revenues of their abusive misconduct and exploitation of Plaintiff and the Putative Class Members. That is enough for plausible beneficiary liability under § 1595.

To be sure, Plaintiff alleges facts showing that each Individual Defendant *knowingly* participated in and *benefitted* from Hyde's forced labor system, such that the allegations easily meet the lower negligence standard:

- Laura Gauld (President & Principal Officer since 2004): "personally implemented and enforced policies requiring student forced labor," directly supervised staff carrying out forced labor, personally observed and approved the "2-4" system, understaffed Hyde to necessitate labor, failed to correct reported abuses, and received over $310,000 in 2021. FAICC ¶¶ 27, 240, 250.
- Malcolm Gauld (Headmaster/President/Executive Director 1987-present): designed and implemented forced labor policies, publicly promoted the system as "therapeutic,"

18

directed student labor, created the "Brother's Keeper" surveillance system, failed to safeguard students, and received $1,509,153.00 in 2020. FAICC ¶¶ 26, 241, 251.
- Georgia Gauld MacMillan (Former Head of Campus; Executive Director of Family Education): implemented and supervised forced labor, participated in disciplinary decisions, received financial benefits, and concealed labor practices from families. FAICC ¶ 242.
- Donald MacMillan (Former Head of School; Current Teacher): directed student labor, implemented policies supporting forced labor, compensated from labor operations, supervised unpaid labor, failed to report violations. FAICC ¶ 243.
- Laurie Gauld Hurd (Director of Community Engagement): marketed Hyde while concealing forced labor, received financial benefit, participated in recruitment for labor conditions, created misleading marketing, and actively concealed practices from the community. FAICC ¶ 244.

Plaintiff further alleges that for nearly sixty years, the Gauld family operated Hyde as a coordinated enterprise, systematically recruiting, manipulating, and exploiting students while sharing in the significant financial benefits. FAICC ¶¶ 25, 144(g).

Under § 1589(b) these factual allegations are sufficient to establish that each Individual Defendant (a) participated in Hyde through leadership, implementation, supervision, marketing, and/or recruitment, (b) knowingly benefitted financially through substantial salaries, compensation, and other benefits of the forced labor scheme, and (c) had actual or constructive knowledge of forced labor via leadership positions, direct involvement, enterprise-wide promotion of labor, and oversight of finances. Although discovery is necessary and should be permitted to fully explore the precise relationship between the Individual Defendants and Hyde and their resulting financial benefits, at this stage, the FAICC plausibly alleges each Individual Defendants' involvement in and benefit from the venture.

### i.    The Constructive Knowledge Standard in *Bates* Supports Plaintiff's Allegations

The *Bates* court held that constructive knowledge can be shown through the following: leadership roles providing oversight; weekly audits and incident review procedures; knowledge of incidents (injuries, deaths, abuse charges) occurring at facilities; and statements demonstrating

19

awareness of cost-benefit relationship between staffing and profitability. 2025 U.S. Dist. LEXIS 202430 at *20-21. The *Bates* court specifically found that "the quote from Defendant Ripley, combined with Plaintiffs' allegations regarding controlling staffing and 'rigorous oversight' from corporate leadership … is enough to plausibly allege that Defendant Ripley had at least constructive knowledge that minor students were being forced to perform labor." *Id.* at *21. Importantly, the *Bates* court clarified that "an overt or direct act" putting the defendant on notice of TVPRA violations is not required. *Id.* at *20. Courts have found constructive knowledge properly pleaded based on "red flags" supporting open signs of violations. *See, e.g., R.K. v. Choice Hotels Int'l, Inc.*, 2025 U.S. Dist. LEXIS 202908, at 18-19 (E.D. Pa. 2025)(collecting cases).

Here, Plaintiff alleges comparable or even stronger facts establishing Defendants' constructive knowledge including:

- Hyde operated a coordinated enterprise "with each Defendant playing a role in the systematic recruitment, manipulation, and exploitation of students while sharing in the financial benefits." FAICC ¶ 25.
- Defendant Malcolm Gauld publicly stated that physical labor had "therapeutic, restorative effect," demonstrating not just awareness but active promotion of labor as a core program component. *Id.* ¶ 38.
- Defendant Malcolm Gauld allegedly posted photos on social media in 2017 showing students raking leaves and "boasted about said forced labor." *Id.* ¶ 63.
- Defendants "exercised total control over student's daily lives" and implemented the "Brother's Keeper" surveillance system requiring students to report infractions—creating visibility into all student activities including labor. *Id.* ¶¶ 33, 144(b).
- The forced labor system was publicly documented in school materials and promotional content, including founder Joseph Gauld's published books and articles "over several decades" promoting the "forced labor practices." *Id.* ¶¶ 17, 19-20, 35, 37-41.
- Hyde allegedly "promoted its punitive disciplinary model as essential for student growth and development" meaning individual defendants with leadership and marketing roles necessarily knew about and endorsed it. *Id.* ¶ 39, 41.

Applying the court's rationale in *Bates*, the above factual allegations more than satisfy the constructive knowledge requirement. Here, each Individual Defendant (a) held a leadership position providing visibility into Hyde's operations, (b) received financial compensation from

20

Hyde's revenue (which was enhanced by free student labor while reducing costs by an estimated hundreds of thousands of dollars annually), and (c) participated in an enterprise where forced labor was an open, documented, and promoted practice which students were subjected to coercive techniques. FAICC ¶¶ 2-6, 25-29, 35, 38-41, 63, 86, 144(e), 144(g), 148, 202, 204, 240-244.

If Ripley's oversight role, financial benefit, and statement about controlling staffing satisfied constructive knowledge in *Bates*, then certainly the Defendants' direct implementation, public promotion, personal supervision, and substantial compensation from Plaintiff's and the Putative Class Member's forced, unpaid labor and other abusive exploitation satisfies the same constructive knowledge standard.

### ii. Any Technical Deficiency as to Individual Defendants' Tenure Warrants Leave to Amend, Not Dismissal

Defendants do correctly note the FAICC does not specify whether Individual Defendants Georgia Gauld, Donald MacMillan, and Laurie Gauld held their positions during Plaintiff's attendance at Hyde from July 2014 to February 2015. Even if this is a pleading deficiency, it does not justify dismissal of any claim, especially where the specific information is properly subject to discovery but currently hidden in Defendants' possession. Rule 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." Here, amendment of the pleadings, to the extent necessary, would allow Plaintiff to clarify each Individual Defendants' role and time at Hyde and to possibly add additional named plaintiffs who were at Hyde during different times. Additionally, Plaintiff-specific knowledge is likely not required, such that the FAICC need only allege that each defendant had constructive knowledge that a venture generally has violated the TVPRA. *See Hilton Domestic Operating Co.*, 810 F. Supp. 3d at 204 (quoting, *Salesforce.Com, Inc.*, 76 F.4th at 558)(emphasis in original)(noting circuit split). To be certain, the FAICC does allege that each Individual Defendant had constructive knowledge of Hyde's forced, unpaid labor practices through

their employment, involvement with, and benefit from the program. FAICC ¶¶ 25, 144(g), 240-45. Defendants' specific concerns about the timeline are also premature at this stage. Indeed, "striking a class claim before a motion for certification (and before the benefit of pre-certification discovery) is rare." *Bates* 2024 U.S. Dist. LEXIS 118421, at *29 (citing *Moore v. Walter Coke, Inc.*, 294 F.R.D. 620, 627 (N.D. Ala. 2013)). Class definitions are "working definitions" subject to refinement through pre-certification discovery. *Bates*, 2024 U.S. Dist. LEXIS 118421, at *29.

In *Bates*, the court rejected dismissal of class claims even where the named plaintiff did not personally experience conduct spanning the full class period. 2024 U.S. Dist. LEXIS 118421, at *29-31 (internal citation omitted) ("as long as the class allegations make it plausible that discovery will lead to facts that would justify certifying a class action, the court will not dismiss the class claims.") Allegations showing ongoing practices before, during, and after the plaintiff's attendance have sufficed to survive dismissal and should here. *Id.* Beneficiary liability is assessed over the venture's life, not narrowly on the named plaintiff's enrollment period only. *Id.*

Here, Plaintiff alleges Hyde's forced, coercive, unpaid labor system:

- Was founded and promoted by Joseph Gauld and Hyde over decades through publications. FAICC ¶¶ 17, 19–20, 35, 37-38, 40;
- Was publicly documented and promoted as "character development". *Id.* ¶¶ 30–39, 41-42;
- Involved formalized, institutionalized disciplinary programs ("5:30," "2-4," "Work Crew"). *Id.* ¶¶ 53–66, 201-202, 2013;
- Openly promoted by Defendants as "therapeutic" and "restorative". *Id.* ¶¶ 38, 41, 63;
- Enforced labor compliance through physical coercion including food and water deprivation, forced exercise to the point of collapse, physical restraints, isolation, and sleep deprivation. *Id.* ¶¶ 49, 54-55, 60, 101, 103, 118-119, 144(e), 202, 204, 208(a)-(d);
- Maintained control through systematic surveillance, censored communications, and elimination of outside support systems, preventing students from reporting conditions or seeking help. *Id.* ¶¶ 33-34, 43, 50, 107, 218;
- Utilized systematic emotional coercion including "attack therapy" sessions, public humiliation, verbal degradation, and peer-enforced surveillance designed to break down students' resistance and ensure compliance with forced labor demands. *Id.* ¶¶ 42, 114-115, 162, 164-166(a)-(j); and
- Generated economic benefits knowingly shared by Defendants. *Id.* ¶¶ 25-29, 62, 67–73, 78–80, 86, 97–98, 148.

22

These allegations plausibly show a longstanding institutional practice of forced unpaid student labor spanning from at least 2006 to 2025. Any gaps regarding specific Defendants' roles during Plaintiff's period of attendance at Hyde can be remedied through amendment of the pleading and discovery.

### iii. Plaintiff's Allegations Satisfy Fed. R. Civ. P. 8's Notice Requirements

Defendants complain that Plaintiff's allegations reference "Defendants" generally without specifying what each Individual Defendant did. Defendants' Motion at 14. This argument fails under Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In the FAICC, Plaintiff has alleged:

- Each individual defendant's role and position at Hyde (founder, president, headmaster, executive director, head of school, head of campus, director of community engagement). FAICC ¶¶ 2-6, 26-27, 239-44.
- Specific actions by each individual defendant (implemented policies, supervised staff, directed students to labor, created surveillance systems, marketed while concealing practices, received compensation). *Id.*
- The coordinated nature of the enterprise in which "each Defendant play[ed] a role in the systematic recruitment, manipulation, and exploitation of students while sharing in the financial benefits." *Id.* ¶ 25.
- That each defendant "had knowledge of and actively participated in Hyde's coordinated and unified enterprise which utilized unpaid child labor." *Id.* ¶ 144(g), 245.

These allegations are sufficient to put each Individual Defendant on notice of the claims against them. Plaintiff also brings only certain counts against Individual Defendants, and within those counts specifies their roles, actions, benefits, and knowledge. FAICC ¶¶ 144, 162-66, 239-44. At this pre-discovery phase, Plaintiff need not plead all evidence or provide the level of detail appropriate for summary judgment. *See Twombly*, 550 U.S. at 555-56.

### B. Plaintiff Has Standing to Assert the Class Claims

To satisfy the standing requirements, a plaintiff must plead three elements: injury in fact, traceability, and redressability. *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014) (citing

23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Persons who wish to represent a class must allege that they personally have been injured. *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 35 (1st Cir. 2020)(internal citations omitted). The traceability element "examines the causal connection between the assertedly unlawful conduct and the alleged injury." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984). At this stage of the litigation, a plaintiff's burden on the element of traceability is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997).

Defendants contend that Plaintiff lacks standing to assert class claims because she fails to state a forced labor or trafficking claim on her own behalf. As set forth in detail above, Plaintiff has thoroughly and sufficiently alleged injuries of coerced, forced, unpaid labor, and trafficking for her labor by Defendants. Plaintiff alleges:

- Injury in fact: She was subjected to forced labor through a coercive disciplinary system involving food deprivation, isolation, physical restraint, and threats of serious harm. FAICC ¶¶ 99-127. She performed unpaid labor including pulling weeds, gardening, cutting grass, cleaning facilities, and other manual tasks. *Id.* ¶¶ 118, 120.
- Traceability: Her injuries are directly traceable to Defendants' conduct. She was forced to perform labor "under threat of physical and emotional harm, deprivation of food and housing, and further forced labor without pay." *Id.* ¶ 119. Defendants implemented and enforced the policies requiring this labor, supervised staff carrying out the forced labor assignments, and financially benefited from the free labor. *Id.* ¶¶ 86, 97-98, 240-44.
- Redressability: Her injuries can be redressed through monetary damages, injunctive relief, and other remedies available under the TVPRA and § 2255.

In accepting all of Plaintiff's allegations as true, Plaintiff has plausibly alleged viable forced, unpaid labor and trafficking claims on her own behalf. Therefore, she has standing to assert each of the corresponding class claims.

Moreover, even if the Court were to find any limitation on Plaintiff's individual claims against certain defendants based on timing, this would not defeat her standing to pursue class claims. Indeed, "[r]equiring that the claims of the class representative be in all respects identical to those of each class member in order to establish standing would confuse the requirements of

Article III and Rule 23." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018). Plaintiff has standing as to claims against defendants who were unquestionably present during her attendance (Laura Gauld and Malcolm Gauld). She can also assert class claims on behalf of Putative Class Members affected by other Individual Defendants during their respective tenures.

## IV.    CONCLUSION

Defendants move to dismiss the FAICC largely on the premise that Hyde's systematic exploitation of minor students through unpaid forced labor amounted only to "household chores," and that the physical punishment, food deprivation, isolation, and psychological abuse used to compel that labor constituted "educational programming" beyond the reach of federal and state forced labor and trafficking statutes. At this stage, Plaintiff need only plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support her claims. *Twombly*, 550 U.S. at 556. Accepting Plaintiff's well-pleaded allegations as true, the FAICC clearly meets this standard. Therefore, for the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety. In the alternative, Plaintiff respectfully requests that the Court grant Plaintiff leave to amend the FAICC within 14 days and to permit limited discovery on the roles and timelines for each Individual Defendants at Hyde; the nature, type and extent of the benefits received by each Individual Defendant from the venture; and each Individual Defendants' knowledge, role, and participation in Hyde's forced labor program and the coercive conditions to obtain it before reconsidering any motion to dismiss.

Dated: May 20, 2026                          Respectfully Submitted,

                                             /s/  Kelly A. Guagenty
                                             Kelly A. Guagenty, Esq.
                                             (BBO #658872 Admitted *pro hac vice)*
                                             Kimberly Dougherty, Esq. (admitted PHV)
                                             Karen Menzies, Esq. (admitted PHV)
                                             JUSTICE LAW COLLABORATIVE, LLC

25

210 Washington St.
North Easton, MA 02356
Phone: (508) 230-2700
Email: kelly@justicelc.com
kim@justicelc.com
karen@justicelc.com

And,

Kevin M. Fitzgerald, Esq. (ME Bar #9373)
FITZGERALD LAW GROUP, LLC
120 Exchange Street, Suite 200
Portland, ME 04101
Phone: (207) 874-7407
Email: kfitzgerald@fitz-lawgroup.com

*Attorneys for Plaintiff and the Putative Class*

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Kelly A. Guagenty
Kelly A. Guagenty, Esq.