**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| JESSICA FULLER, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>HYDE SCHOOL; LAURA GAULD; MALCOLM GAULD; GEORGIA GAULD MACMILLAN; DONALD MACMILLAN; LAURIE GAULD HURD,<br><br>Defendants. | Civil Action No. 2:25-cv-00354-SDN<br><br>Hon. Stacey D. Neumann |

**DEFENDANTS' AMENDED REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT**

Defendant the Hyde School and individual defendants Laura Gauld, Malcolm Gauld, Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd respectfully submit this amended reply brief in support of their motion to dismiss the First Amended Individual and Class Action Complaint ("FAICC") in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

In response to Defendants' motion to dismiss, Plaintiff Fuller voluntarily withdrew all her standalone individual tort claims and her claim for injunctive relief (Counts 11-16) and her Maine state law forced labor claim under 5 M.R.S. § 4701 (Count 4). *See* Plaintiff's Amended Opposition Brief ("Opp.") at 2 n.1. The remaining claims are those she purports to bring on behalf of herself and a putative class of former and current Hyde School students under various federal trafficking and forced labor statutes (Counts 1-3, 5-10). Dismissal of the remaining claims is warranted for the reasons stated in Defendants' opening brief and below.

### A. The TVPRA does not apply to the Plaintiff's alleged labor.

Plaintiff alleges that she was required to pull weeds, garden, cut the grass, and clean campus facilities – the kinds of activities that the Court in *United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014) held that those acting *in loco parentis* could require of children without implicating the TVPRA. FAICC ¶ 120. Plaintiff cites no case law supporting her contention that *Toviave* does not apply because Hyde is an educational institution, rather than a private home. *See* Opp. at 10. Courts have applied *Toviave*'s reasoning in non-family contexts. *See, e.g.*, *Ruderman v. Kenosha Cnty*., 752 F. Supp. 3d 1084, 1091 (E.D. Wis. 2024) (appeal pending).

Hyde is a non-profit, 501(c)(3) school. FAICC ¶ 1. It is accredited by the New England Association of Schools and Colleges.[1] Hyde is not (and is not alleged to be) a for-profit, commercial enterprise, as Plaintiff repeatedly claims in her opposition brief. The Amended Complaint places the work Plaintiff Fuller performed squarely within the scope of cases rejecting involuntary servitude and unpaid labor claims based on work performed as part of a school curriculum. *See, e.g*., *Steirer v. Bethlehem Area Sch. Dist.*, 789 F. Supp. 1337 (E.D. Pa. 1992), *aff'd sub nom. Steirer by Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989 (3d Cir. 1993); *Bobilin v. Bd. of Ed., State of Hawaii*, 403 F. Supp. 1095 (D. Haw. 1975); and cases cited in Defendants' Brief at 11. The Amended Complaint alleges that the school openly marketed to prospective families its educational philosophy—including the work component as part of its disciplinary system – as a central aspect of the Hyde School character development model. *E.g*., FAICC ¶¶ 30-41, 87-88.

---

[1] *See* https://www.neasc.org/school-directory/school-details?id=30641; . "All NEASC Accreditation protocols are grounded in research-based standards and principles [and] include foundational elements such as safety, governance, financial practices, etc. as well as a deep focus on high-quality teaching and learning- the holistic elements of a thriving healthy learning community." https://www.neasc.org/accreditation/standards.

The fact that the school may have derived an economic benefit from student's campus work is not dispositive. The *Toviave* court acknowledged that "the duties assigned by Toviave are 'labor' in the economic sense of the word" because "one could, and people often do, pay employees to perform these types of domestic tasks." 761 F.3d at 626. The Court nonetheless held that those tasks were not forced labor under the federal statutes because a parent, and one standing *in loco parentis*, has a separate right to require those types of chores. *Id*. at 625-26. Courts have similarly dismissed unpaid labor claims against schools under the FLSA and the Thirteenth Amendment upon finding that the economic benefit that a school derived from student labor was secondary to its educational purpose. *E.g., Bobilin*, 403 F. Supp. at 1104 ("Assuming . . . that the cafeteria duty allows the State to reap a financial benefit, that is, the obviation of any necessity to hire, at great expense, professional employees to perform the school-related housekeeping duties in the stead of the students, it is clear that . . . public, and not private, interest and benefit are being served."); *see also* cases cited at Defendants' Br. at 11. Plaintiff's allegations fall outside the scope of the criminal human trafficking and forced labor laws asserted here.[2]

*Jobsen v. Henne*, which Plaintiff cites at page 7, is in accord, to the extent it may apply here. The *Jobsen* court concluded, with respect to a Thirteenth Amendment claim brought by a person civilly committed to a mental institution: "If a court can conclude that the chores [an inmate is required to perform] are reasonably related to a therapeutic program or to the inmate's

[2] *See, e.g., Ruderman v. Kenosha Cnty*., 752 F. Supp. 3d 1084, 1091 (E.D. Wis. 2024) (appeal pending) ("Just as a parent can require children to clean their rooms and help with household chores, jail administrators can hold inmates to participation in the same communal duties. Neither the parent nor the jail administrator is 'obtain[ing] the labor or services' of the child or detainee by illegal means within the language and intent of Section 1589. This does not mean that the parent or jail personnel can be abusive; the parent's role is limited by state child abuse laws and the jailer's conduct is limited by the Constitution and Section 1983. But this is simply not human trafficking, modern slavery, or Forced Labor.").

personal needs, the fact that the performance of the chores also assists in defraying the operating costs of the institution should not constitute involuntary servitude, even if inmates are required to engage in this activity." 355 F.2d 129, 132 n.3 (2d Cir. 1966). Here, Plaintiff quotes Defendants as expressing only a belief in the therapeutic and educational benefits of the work students were asked to perform when students committed infractions of school rules. *See, e.g.*, FAICC ¶¶ 35-41.

### B. Plaintiff does not allege that any labor was compelled within the meaning of the TVPRA.

Fuller alleges that the labor she and other students performed was part of school's allegedly punitive disciplinary system. Per the FAICC, students committing "transgressions" would find themselves "cleaning windows, picking up litter, or raking leaves during times when . . . peers might be kicking back and enjoying themselves." FAICC ¶ 35; *see also* FAICC ¶¶ 53-67 (describing work assignments as part of a graduated disciplinary system). The Amended Complaint implies that Work Crew and other forms of discipline could be avoided by following school rules. Plaintiff purportedly quotes a member of Hyde's Board of Governors stating that students "would not have been subject to any discipline/accountability" if they did not violate school rules, and that the discipline was "approved by their parents." FAICC ¶ 95. Plaintiff does not dispute this. Nor does Plaintiff allege that every student at the school was forced into Work Crew. *Bates*, on which Plaintiff relies throughout her brief (*e.g*. Opp. at 11), is distinguishable because in that case, all students were required to perform onerous labor as a part of an across-the-board "community service" policy.[3] *Bates v. Sequel Youth & Family Services, LLC*, Case No.: 2:23-CV-01063-RDP, 2024 WL 3316989, at *1 (N.D. Ala. July 5, 2024).

[3] Needless to say, this Alabama case is not binding on this Court. *Bates* also included significantly different allegations, including allegations that staff were charged with child abuse and children were killed while in the

Plaintiff's allegations, therefore, demonstrate a lack of compulsion necessary for an involuntary servitude or forced labor claim. An involuntary servitude claim under section 1584 requires "compulsion of services by the use or threatened use of physical or legal coercion," *United States v. Kozminski*, 487 U.S. 931, 947 (1988), while a forced labor claim under section 1589 requires a threat of harm so serious that it would "compel someone in her circumstances to continue working to avoid that harm," *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011). Under the system alleged in the Amended Complaint, Plaintiff had a choice to submit to school rules or be subjected to the disciplinary system that included a work component. Likewise, in *Burrell v. Staff*, which Plaintiff cites at page 9 of her opposition, the court's decision turned in part on whether child support debtors sufficiently alleged that they could not pay their contempt judgments so as to avoid the mandatory work program that they claimed constituted involuntary servitude. 60 F.4th 25, 34-35 (in majority), 53-54 (in concurrence) (3d Cir. 2023); *cf. Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1031-32 (7th Cir. 2024) (voluntary participants in residential rehabilitation work program were not compelled to continue providing labor by the threatened loss of food, clothing, and shelter allowances because they were free to leave the program).

Fuller does not allege that following school rules and avoiding the disciplinary system was impossible, nor that doing so was so heinous and untenable that it left her no real choice but to break the rules and submit to Work Crew. Here, the threat of being placed on Work Crew was the alleged motivator for complying with school requirements (so as to avoid Work Crew), not the other way around. *E.g.*, FAICC ¶¶ 35, 46, 110, 114-15. Plaintiff does not plausibly allege –

---

defendants' care. *Bates v. Seuqel Youth & Family Services, LLC*, Case No.: 2:23-CV-01063-RDP, 2025 WL 2917756, at *2 (N.D. Ala. Oct. 14, 2025). Plaintiff makes no such allegations here.

as she must, to state a claim – that Defendants intended for her to believe that she had no other choice than to perform labor.

### C. Plaintiff Fuller does not state a claim against three of the five individual defendants.

Plaintiff claims that the individual defendants benefited from a forced labor and trafficking venture within the meaning of the TVPRA through their salaries and compensation earned through their employment at Hyde. Opp. at 18-19. Plaintiff, however, concedes that the amended complaint does not allege, even on information and belief, that individual defendants Georgia, Donald, or Laurie served any role at the school from July 2014 through February 2015, when Plaintiff Fuller attended. Opp. at 21. Plaintiff concedes that she does not know whether those individuals can be held liable for Fuller's claims, and suggests that discovery will permit her to flesh out her allegations against these defendants.[4] Opp. at 21, 23. "The assertion of a need for discovery does not trump the plausibility requirement: a plaintiff must state a plausible claim before she can invoke a right to discovery. In other words, a plaintiff can open the door to discovery only if she first alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of actionable misconduct." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 556 (2007)). Plaintiff has not done that here. At most, Plaintiff alleges that Georgia, Donald, and Laurie participated in, caused, or otherwise benefited from the abuse of *other students* at some undefined time,[5] which does not, alone, make

[4] Plaintiff's lack of knowledge is further revealed by her request to be permitted "limited discovery on the roles and timelines for each Individual Defendants at Hyde; the nature, type and extent of the benefits received by each Individual Defendant from the venture; and each Individual Defendants' knowledge, role, and participation in Hyde's forced labor program and the coercive conditions to obtain it[.]" Opp. at 25.

[5] The FAICC also alleges that Georgia "was the prior head of campus for Hyde's locations in both Maine and Connecticut. FAICC ¶ 4. The Connecticut school was a separate legal entity that dissolved in 2018. *See, e.g.*, *Jane Doe v. Hyde School at South Woodstock, et al.*, Docket No. WWM-CV25-5018760-S, 2026 WL 1555937, at *4 (Conn. Super. Ct. May 29, 2026). Plaintiff does not even allege that Georgia's liability stems from her actions at the same school that Plaintiff attended.

it plausible that they caused *Plaintiff's* harm or benefited from *Plaintiff*'s labor. Her claims against those defendants are purely speculative. Plaintiff lacks a supported basis for her claims against Georgia, Donald, and Laurie. [6]

Plaintiff contends: "Plaintiff has standing as to claims against defendants who were unquestionably present during her attendance (Laura and Malcolm Gauld). She can also assert class claims on behalf of Putative Class Members affected by other Individual Defendants during their respective tenures." Opp. at 24. This is wrong as a matter of law: "[a]s a general rule in the First Circuit, named plaintiffs in a class action do not have standing to assert claims against defendants who are not directly implicated in the alleged harms suffered by those named plaintiffs." *Winne v. Nat'l Collegiate Student Loan Tr. 2005-1*, 1:16-cv-00229-JDL, 2017 WL 3573813, at *4 (D. Me. Aug. 17, 2017) (citing *Barry v. St. Paul Fire & Marine Ins. Co.*, 555 F.2d 3, 13 (1st Cir. 1977)). Plaintiff Fuller's individual claims against defendants Georgia, Donald, and Laurie should be dismissed, along with the respective class claims.

The *Bates* decision is distinguishable. In that case, defendants sought dismissal of class claims to the extent they arose from forced labor violations occurring before or after the Plaintiff's time at the defendant facility. *Bates*, 2024 WL 3316989, at *10. The Court held that limitation of the class definition was premature at the pre-certification stage and found the class claims adequately pleaded. *Id*. The issue there was whether, having stated her own claims against the facility, the plaintiff also adequately alleged class claims against the same facility on behalf of other class members in attendance before or after her time there. Here, Plaintiff has not adequately alleged individual claims against at least three of the defendants, Georgia, Donald,

[6] *See also* Opp. at 21 (proposing to "possibly add additional named plaintiffs who were at Hyde during different times" to shore up her claims against these individual defendants).

and Laurie; therefore, she lacks standing to bring the class claims against those defendants, regardless of when the class members' claims arose.

**D. Plaintiff confuses constitutional standing with class certification under Rule 23.**

Plaintiff repeatedly conflates allegations regarding her own experience at Hyde with the experiences of other unidentified students. She does not allege that *she* was forced to work on the Eustis property, or on Seguin Island, or on staff homes or other third-party properties. She does not allege that *she* was forced to sleep outside, clear asbestos, or build walls. Opp. at 10. In determining whether Plaintiff stated a claim, this Court must distinguish between the allegations about other students and Plaintiff's own allegations of harm; alleged harm to other students has no bearing on whether Plaintiff stated a claim for relief. As demonstrated in Defendants' opening brief, Plaintiff's allegations alone fail to state a claim. Those are the only claims before the Court at this time.

Where Plaintiff fails to establish an individual claim (including a claim against a particular defendant), she lacks standing to assert the corresponding class claim. This is a matter of constitutional standing, not whether a class can or should be certified under Rule 23, or whether Plaintiff is an appropriate class representative. Those latter questions will be addressed if or when this case moves forward to the class certification stage. But that cannot happen unless Plaintiff has satisfied Article III's "case or controversies" requirement with respect to each defendant and each claim. *E.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Yan v. ReWalk Robotics Ltd*., 973 F.3d 22, 35 (1st Cir. 2020) ("Persons who wish to represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which

they purport to represent.'") (citations omitted). The Article III "cases or controversies" requirement is satisfied as to unnamed, putative class members "so long as a class representative has standing[.]" *Neale v. Volvo Cars of N. America, LLC*, 794 F.3d 353, 362 (3d Cir. 2015). "Before even getting to the point of class certification, however, class representatives need to present a justiciable claim." *Id*. at 366.

**E. Plaintiff should not be granted leave to amend.**

While leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), courts need not "mindlessly grant every request for leave to amend." *Aponte-Torres v. Univ. Of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006). "A district court may deny leave to amend when the request is characterized by undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part." *Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013) (citation and internal quotation marks omitted).

Defendants filed their motion to dismiss in October 2025 – seven months ago – identifying numerous deficiencies in the FAICC. Despite conceding to factual deficiencies, in these past seven months Plaintiff has not once explained to this Court how she would revise her allegations in a Second Amended Complaint to overcome them. Nor has she formally sought leave to amend her complaint.[7] This Court is aware that Plaintiff has spent the last seven months, instead, filing multiple submissions containing numerous misstatements of law, causing Defendants to waste time and money in reply. Even when granted an opportunity to replead her opposition, Plaintiff "made no attempt to supplement [her] bare request for leave to amend, nor did [she] preview what additional facts or legal claims might be included in a second amended

[7] No rule prevented Plaintiff from seeking leave to amend her complaint while Defendants' motion to dismiss was pending. *See, e.g., Fortuna v. Winslow Sch. Comm.*, No. 1:21-cv-00248-JAW, 2022 WL 844046, at *3-4 (D. Me. Mar. 22, 2022).

complaint (should one be allowed)." *Aponte Torres*, 445 F.3d at 58. "The absence of supporting information may, in and of itself, be a sufficient reason for the denial of leave to amend." *Id*. Plaintiff's vague assertion that she can provide additional information in an amendment, or that any deficiency can be cured by the addition of a new named plaintiff, does not show that she can cure the deficiencies in her pleading. *E.g.*, Opp. at 21. To the contrary, she admits that she does not have the facts to shore up her claims and asks for permission to conduct discovery. *See* Opp. at 25. Should this Court dismiss all or any portion of the FAICC, Plaintiff should not be granted leave to amend.

**CONCLUSION**

For the reasons stated above, and in Defendants' opening memorandum in support of their motion, Defendants respectfully request that this Honorable Court dismiss the First Amended Individual and Class Complaint [Dkt. 6] with prejudice.

Dated: June 3, 2026

*/s/ Sarah K. Grossnickle*
Martha C. Gaythwaite
Sarah K. Grossnickle
VERRILL DANA, LLP
One Portland Square
Portland, ME 04101-4054
(207) 774-4000
mgaythwaite@verrill-law.com
sgrossnickle@verrill-law.com

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Sarah K. Grossnickle*



29001696_1