# EXHIBIT A

178 F.4th 333
United States Court of Appeals, Seventh Circuit.

Aleksey RUDERMAN, Arturo Saldivar, and Chris Pocknell, Plaintiffs-Appellants,
v.
KENOSHA COUNTY, WISCONSIN, et al., Defendants-Appellees.

No. 24-2939
|
Argued September 25, 2025
|
Decided June 5, 2026

**Synopsis**
**Background:** Civil immigration detainees who were being held in county jail brought action against county alleging that county's alleged conduct of requiring detainees to perform unpaid custodial work, such as sweeping floors and cleaning phones, tables, or showers, violated federal criminal statute, enacted as part of the Trafficking Victims Protection Act (TVPA), prohibiting the obtaining of labor by certain means, including by force and threats of physical restraint. The United States District Court for the Eastern District of Wisconsin, Brett H. Ludwig, J., 752 F.Supp.3d 1084, granted county's motion to dismiss for failure to state claim. Detainees appealed.

**Holdings:** The Court of Appeals, Easterbrook, Circuit Judge, held that:

[1] the word "whoever," as used in forced-labor statute when it states that "whoever" engages in conduct prohibited under statute will be liable, includes bodies corporate such as counties in Wisconsin;

[2] county's alleged threat of detainees with solitary confinement, in order to coerce them to perform unpaid work, was a threat of "physical restraint" as term was used in forced-labor statute; and

[3] county's alleged conduct of requiring detainees to perform unpaid work was not authorized by any law or legal process, as could support determination that the alleged conduct violated forced-labor statute, which prohibited the compelling of work through abuse of the law or legal process.

Vacated and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim.

West Headnotes (8)

**[1]** **Aliens, Immigration, and Citizenship** Detention in general
Aliens held pending hearings or removal are civil detainees.

**[2]** **Municipal, County, and Local Government** Sovereign or governmental immunity

Counties lack the sovereign immunity accorded to their parent states.

[3] **Federal Courts** Governmental bodies and officers

For the purpose of federal court jurisdiction under diversity statute, a county is treated as a “citizen” of its state, just like any natural person. 28 U.S.C.A. § 1332.

[4] **Civil Rights** Liability of Municipalities and Other Governmental Bodies

Wisconsin counties are “persons” under § 1983. 42 U.S.C.A. § 1983.

[5] **Human Trafficking and Slavery** Forced labor, labor servitude, and labor trafficking

**Human Trafficking and Slavery** Parties to Offenses; Persons Liable

The word “whoever,” as used in federal statute, enacted as part of the Trafficking Victims Protection Act (TVPA), prohibiting the obtaining of labor by certain means, including by threats of physical restraint, and providing for “whoever” does so to be criminally liable, includes bodies corporate such as counties in Wisconsin. 18 U.S.C.A. § 1589.

[6] **Human Trafficking and Slavery** Forced labor, labor servitude, and labor trafficking

County's alleged threatening of civil immigration detainees, who were being held in county jail pursuant to county's contract with federal agencies, with solitary confinement was a threat of “physical restraint” as that term was used in forced-labor statute enacted as part of Trafficking Victims Protection Act (TVPA), which prohibited obtaining labor by certain means, including threats of “physical restraint,” as could support finding that county's alleged conduct of threatening solitary confinement in order to coerce detainees to perform unpaid work would, if proven, constitute a violation of forced-labor statute. 18 U.S.C.A. § 1589.

[7] **Human Trafficking and Slavery** Forced labor, labor servitude, and labor trafficking

Under forced-labor statute enacted as part of Trafficking Victims Protection Act (TVPA), which prohibits compelling of work by “abuse” of the law or legal process, when law or legal process authorize work, as statutes or regulations may do for convicted prisoners, there is no “abuse” in requiring work. 18 U.S.C.A. §§ 1589(a)(3), 1589(c)(1).

[8] **Human Trafficking and Slavery** Forced labor, labor servitude, and labor trafficking

County's alleged conduct of requiring civil immigration detainees being held in county jail, pursuant to county's contract with federal agencies, to perform unpaid custodial work was not authorized by any law or legal process, as could support determination that the alleged conduct would, if proven, violate forced-labor statute enacted as part of Trafficking Victims Protection Act (TVPA), which prohibited the compelling of work through abuse of the law or legal process; county did not contend that the alleged conduct was authorized by any statute or regulation, and the contracts under which federal agencies sent detainees to county jail stated that jail was authorized to offer paid work to detainees, not that it was authorized to compel unpaid work from detainees. 18 U.S.C.A. §§ 1589(a)(3), 1589(c)(1).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Appeal from the United States District Court for the Eastern District of Wisconsin. No. 23-cv-1336-bhl — **Brett H. Ludwig**, *Judge.*

**Attorneys and Law Firms**

Margaret Truesdale, Kate Schwartz, Attorneys, Hughes Socol Piers Resnick & Dym, Ltd., Chicago, IL, for Plaintiffs-Appellants.

Remzy D. Bitar, Samantha R. Schmid, Attorneys, Municipal Law & Litigation Group, S.C., Waukesha, WI, for Defendants-Appellees.

Before Brennan, Chief Judge, and Easterbrook and Sykes, Circuit Judges.

**Opinion**

Easterbrook, Circuit Judge.

***335** Since 2000 the Kenosha County Jail has contracted with federal agencies to house aliens who are detained pending hearings or removal. According to the complaint, whose allegations we must accept at this stage, the Jail requires these civil detainees to perform unpaid custodial work, such as sweeping floors and cleaning phones, tables, or showers. Aliens who refuse may be disciplined by loss of commissary privileges, loss of phone privileges, or solitary confinement for as long as ten days.

Three aliens filed this suit under 18 U.S.C. § 1589, a criminal statute that has a civil damages remedy (18 U.S.C. § 1595). The salient parts of § 1589 provide:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> > (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> >
> > (2) by means of serious harm or threats of serious harm to that person or another person;
> >
> > (3) by means of the abuse or threatened abuse of law or legal process; or
> >
> > (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint ...
>
> (c) In this section:
>
> > (1) The term "abuse or threatened abuse of law or legal process" means ***336** the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.
> >
> > (2) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

The district court dismissed the suit on the pleadings, ruling that § 1589 applies only to human trafficking, a term that cannot plausibly be applied to discipline during lawful custody. 752 F. Supp. 3d 1084 (E.D. Wis. 2024).

The district court based its conclusion not on the language of § 1589, or its title ("Forced labor"), but on the title and imputed purpose of a larger enactment of which § 1589 is a part: The Trafficking Victims Protection Act of 2000. Large-scale legislation such as the 2000 statute often contains provisions that do not fit neatly under an umbrella title; a bill that seems fated to pass may attract amendments on multiple topics, and the sponsors of these amendments may have aims that differ from those of the

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

floor managers. To figure out what § 1589 means, we must look at what it says rather than what else was enacted at the same time. Other parts of the 2000 statute deal directly with human trafficking—both forced labor under threats and sex trafficking. Sections 1590 to 1592 are among these provisions. We must deal with § 1589 on its own terms.

At least two courts of appeals have concluded that § 1589 applies to labor required of civil immigration detainees: *Gonzalez v. CoreCivic, Inc.*, 986 F.3d 536 (5th Cir. 2021), and *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269 (11th Cir. 2020). Another has held that § 1589 is not limited to human trafficking. *Burrell v. Staff*, 60 F.4th 25, 39 (3d Cir. 2023). Adopting the district court's approach would put us in conflict with those three circuits.

**[1]** We appreciate the need for modesty in dealing with § 1589, because read for all it could be worth the statute would forbid prisons from requiring even convicted felons to work, a break from traditional practice (and from the language of the Thirteenth Amendment) that would have occasioned comment during the legislative process. Yet no one in Congress suggested that § 1589 would make it a crime for a prison's warden to require felons to labor as part of their punishment. That's why we held in *Taylor v. Salvation Army*, 110 F.4th 1017, 1032 (7th Cir. 2024), that, despite § 1589, convicts may be required to work—not only in prison but also as part of work-release programs. Plaintiffs do not ask us to reconsider *Taylor*, but they stress that none of them has been convicted of a crime. Aliens held pending hearings or removal are civil detainees. (Some of the detainees have been charged with crimes, but as far as the complaint goes none is serving time on a criminal conviction.)

*Gonzalez* and *Barrientos* hold that § 1589 *applies* to civil detention of aliens, but not that it was violated in either case. Both suits were remanded and were either settled (*Barrientos*) or dismissed without prejudice (*Gonzalez*). Kenosha County does not want us to address the merits in this suit either. It contends that § 1589 does not apply to public jails. The detention facilities in *Gonzalez* and *Barrientos* ***337** were private. Kenosha tells us that public facilities, by contrast, are not within the scope of the statute's first word: "Whoever".

**[2]** **[3]** This is hard to accept. Counties lack the sovereign immunity accorded to their parent states. For the purpose of federal jurisdiction under 28 U.S.C. § 1332, a county is treated as a "citizen" of its state, just like any natural person. See *Moor v. Alameda County*, 411 U.S. 693, 718–21, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). For the purpose of 42 U.S.C. § 1983, one of the principal civil-rights statutes, a county (unlike a state) is a "person" subject to suit for damages. Compare *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipalities are "persons"), with *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (states are not "persons"). A comprehensive word such as "whoever" includes all juridical "persons". True, states may be able to invoke sovereign immunity (unless we understand § 1589 to be based on § 2 of the Thirteenth Amendment or § 5 of the Fourteenth Amendment, see *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)), but counties and other municipalities lack that protection. In Wisconsin counties are "bod[ies] corporate, authorized to sue and be sued." Wis. Stat. § 59.01.

**[4]** **[5]** The Dictionary Act, 1 U.S.C. § 1, tells us that "the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals". Kenosha County takes comfort in the fact that this definition does not mention municipalities. But it uses the word "include" and does not rule out any kind of entity. By grouping "person" and "whoever" under a single definition, the Dictionary Act invites the conclusion that an entity classified as a "person" comes within "whoever" as well. We know from *Monell* that counties in Wisconsin are "persons" under § 1983 and from *Moor* that they are treated like natural persons for the purpose of § 1332. We hold that the word "whoever" in § 1589 includes "bod[ies] corporate" such as counties in Wisconsin. (Whether "whoever" includes the national government is a distinct question, given the approach of decisions such as *Department of Agriculture v. Kirtz*, 601 U.S. 42, 144 S.Ct. 457, 217 L.Ed.2d 361 (2024). We do not address it today.)

**[6]** **[7]** **[8]** Putting the prohibitions in § 1589(a) together with the definitions in § 1589(c) leads to the conclusion that a county jail violates § 1589 by threatening civil detainees with solitary confinement to coerce them to work. Section 1589(a)(1) says that threats of "physical restraint" are forbidden—and solitary confinement is one form of physical restraint. Similarly § 1589(a)(3) says that "abuse of the law or legal process" is a forbidden means to compel work. The definition of that phrase in

§ 1589(c)(1) shows that, when law or legal process *authorize* work—as statutes or regulations may do for convicted prisoners—there is no "abuse" in requiring work. But in supplemental briefs filed after oral argument, Kenosha County did not contend that any statute or regulation authorizes its work requirement for civil detainees. The contracts under which federal agencies have sent detainees to the County Jail say, to the contrary, that the Jail is authorized to offer paid work to detainees, not that it is authorized to compel unpaid work from detainees.

Once again, we recognize that this statute must be applied with care lest it condemn many common practices. Take § 1589(a)(2), which prohibits threats of "serious harm" to induce labor. ***338** Section 1589(c)(2) defines this phrase to mean "any harm, ... including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." Suppose an opera company that has signed a famous tenor to sing the role of Radames in *Aida* reminds him that, if he doesn't show up, he not only won't be paid but also won't be hired in the future. That threat of financial harm may induce the tenor to sing—indeed, that's the point. Yet treating the statement "you won't be paid if you don't work" as a federal crime would wreck the law of contract at a stroke.

Many other situations come to mind in which broad application of the language in § 1589 would be jarring and implausible. We need not rehearse them. In *Taylor* we found work-as-punishment-for-crime outside the scope of § 1589. That may be true of our opera singer too—without jeopardizing the understanding that the statute covers an *au pair* who arrives with an agreement to do housework for pay and then is held as an indentured servant without compensation or a passport.

Whatever may be said about convicted felons and market transactions, nothing in either the text or context of § 1589 permits a local jail to compel civil detainees—persons not subject to punishment—to work on pain of solitary confinement or loss of phone contact with the outside world. The complaint alleges threats that cannot be dismissed as too slight to activate the statute. Whether the allegations of the complaint can be proved, and if so what damages are appropriate, are among the questions open on remand. The district judge also should consider the County's argument that the statute is unconstitutionally vague, a subject on which an appellate court should not be first to speak.

Vacated and Remanded

**All Citations**

178 F.4th 333

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.