UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

JESSICA FULLER,                        )
*individually and on behalf*           )
*of similarly situated persons,*       )
                                       )
            Plaintiff,                 )        2:25-cv-00354-SDN
                                       )
v.                                     )
                                       )
HYDE SCHOOL, et al.,                   )
                                       )
            Defendants.                )

## ORDER ON DEFENDANTS' MOTION TO DISMISS

On July 11, 2025, Plaintiff Jessica Fuller brought suit against Hyde School and several institutional defendants, individually and on behalf of a putative class of former students, alleging the School forced her and her classmates to endure forced labor and other punishments in violation of, inter alia, the Trafficking and Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589 *et seq.* ECF No. 1. On July 31, 2025, she filed her First Amended Individual and Class Action Complaint ("FAICC"). ECF No. 6. On October 7, 2025, Defendants moved to dismiss for failure to state a claim. ECF No. 20. After a series of procedural disputes unrelated to the merits, Plaintiff filed her amended opposition on May 20, 2026, ECF No. 41, and Defendants filed their amended reply on June 3, 2026, ECF No. 42. The Court held oral argument on July 10, 2026. ECF No. 52.

### I.    Background[1]

Ms. Fuller sues on behalf of herself and similarly situated individuals, alleging that Hyde School ("Hyde" or "the School") forced labor upon and abused teenagers with

---

[1] In evaluating a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 10–11 (1st Cir. 2011). The Court therefore draws the following

emotional and behavioral issues at its campus in Bath, Maine. The FAICC sets forth the following factual allegations.

### A. The Parties

#### 1. *The School*

Joseph Gauld founded Hyde in 1966 as a "character development" school. FAICC ¶¶ 15, 17. It is a 501(c)(3) nonprofit organization that charges approximately $68,300 in annual tuition. *Id*. ¶¶ 1, 29. The School distinguishes itself from a "therapeutic school," which generally requires a psychological or cognitive diagnosis, and instead bills itself as "committed to character development, open and effective communication, and personal integrity." *Id*. ¶¶ 31–32 (quotation modified). The School allegedly holds over $43 million in assets as of 2020. *Id*. ¶ 28.

Hyde deploys a "surveillance system" entitled "Brother's/Sister's Keeper," that conscripts students into policing one another; if a student fails to report a peer's infraction, the School treats the silent bystander as complicit, placing her "in the same disciplinary boat" as the offender. *Id*. ¶¶ 33–34. Hyde established a "Work Crew" which required students to conduct manual labor, including cleaning, gardening, and shoveling snow, as penalties for "transgressions." *Id*. ¶ 35. It also instituted "attack therapy," which required students to "s[it] in a circle while staff and peers screamed verbal attacks at them." *Id*. ¶ 44. Students who refused were made to do a "lightbulb" pose in the basement in which the School forced them to "stand on one leg with their hands facing out, facing the ceiling with their eyes open, and not blink." *Id*. ¶ 52. Administrators also forced students to engage in a "5:30" for "ethical infractions and poor attitudes," requiring them

---

facts from the FAICC, ECF No. 6, accepting them as true for purposes of this motion. Defendants, however, dispute many of the allegations.

to wake up at 5:30 a.m. and engage in such extreme exercises that students passed out, vomited, or injured themselves. *Id*. ¶¶ 53–54. The School forced some students to "run on broken toes, with shin splints, in freezing conditions, and even with untreated asthma attacks," sometimes outdoors at night in the snow and without adequate winter clothing. *Id*. ¶ 54–55.

When administrators deemed "5:30" insufficient to address a student's "transgressions," they escalated the student into a "2-4" program that suspended them from regular classes, required them to perform work duties around campus, forbade them from speaking to other students, and restricted their food intake. *Id*. ¶¶ 58–60. Some unnamed class members reported taking "Tude Trips" to a Hyde-owned wilderness property in Eustis, Maine, which required them to clean, maintain the property, and build structures without adequate clothes, food, or shelter. *Id*. ¶¶ 67, 68, 73, 74. Others recalled doing hard labor on Seguin Island, off the coast of Maine, under a contract allowing the Island owners to collect free student labor from Hyde. *Id*. ¶¶ 78–81.

### 2. Plaintiff Jessica Fuller

Ms. Fuller attended Hyde School from July 2014 until February 2015. FAICC ¶ 99. She alleges the School withheld her prescribed psychiatric medication, emotionally abused her, physically restrained her, forced her to exercise excessively, and surveilled her, including in the shower. *Id*. ¶¶ 101–08. She reports the School forced her to participate in "attack therapy" and the "2-4" forced labor program, isolating her from other students, prohibiting her from speaking, restricting her access to food and water, and subjecting her to public shaming and humiliation. *Id*. ¶¶ 113–14, 117–18. Her labor included gardening, cleaning campus facilities, and pulling heavy wheelbarrows. *Id*. ¶ 120. She alleges resulting physical and emotional injuries, including depression,

anxiety, hypervigilance, sleep disturbances, back pain, and gastrointestinal issues. *Id*. ¶ 121. She does not allege that she participated in the "5:30" program or traveled to Seguin Island or on a "Tude Trip."

### 3. *The Putative Class*

The FAICC names Ms. Fuller as class representative for students whose alleged forced labor occurred at Hyde on or after July 12, 2015, or who were minors at the time and had not reached the age of 28 as of July 11, 2025. FAICC ¶ 128. The FAICC alleges that the School subjected putative class members to regular surveillance, public humiliation, emotional manipulation, and substantial physical punishments, such as the "5:30" program, the "2-4" program, and the Work Crews. *Id*. ¶ 43. It further alleges a culture of racism and sexism in which staff used derogatory slurs toward female, gay, and Asian students, *id*. ¶ 47, and that staff slammed them into walls, choked, grabbed, and pushed them, *id*. ¶ 49. They claim the School required them to perform physical labor, such as clearing out asbestos-contaminated facilities, shoveling snow, cleaning the campus without protective gear, and landscaping staff members' homes. *Id*. ¶ 62. The School also directed some putative class members to work on Seguin Island and participate in "Tude Trips" for uncompensated physical labor. *Id*. ¶¶ 73, 78.

### 4. *The Institutional Defendants*

Defendant Malcolm Gauld, Joseph Gauld's son, is Hyde's current Executive Director, where he received $1.5 million in compensation in 2020. FAICC ¶¶ 3, 172. From 1998 to 2018, he served as the School's President. *Id*.

Defendant Laura Gauld, Malcolm Gauld's wife, has held executive positions at the School since 2004 and currently serves as President. *Id*. ¶ 27. In 2021, the School paid her

$310,000. *Id*. The FAICC does not specify her role during 2014–15, when Ms. Fuller attended the School.

Defendant Georgia Gauld MacMillan, one of Joseph Gauld's daughters, served as head of campus for Hyde's Maine location on unspecified dates. *Id*. ¶ 4. The FAICC alleges she "was and/or is still" the Executive Director of Family Education. *Id*.

Defendant Donald MacMillan is married to Georgia MacMillan. He is a current staff teacher at Hyde and the former Head of School, although the FAICC does not specify the dates of these positions. *Id*. ¶ 5.

Defendant Laurie Gauld Hurd, another of Joseph Gauld's daughters, serves as the current Director of Community Engagement. *Id*. ¶ 6. The FAICC does not specify when she began serving in this role.

## II.    Procedural Posture

The FAICC asserts nine claims on behalf of Plaintiff and the putative class.[2] Count I alleges direct and beneficiary liability for involuntary servitude under 18 U.S.C. § 1584 against all Defendants; Count II alleges direct and beneficiary liability for forced labor under 18 U.S.C. § 1589 against all Defendants; Count III alleges direct and beneficiary liability for trafficking under 18 U.S.C. § 1590 against all Defendants; Count V seeks damages for civil liability under 18 U.S.C. § 2255 against all Defendants; Count VI alleges attempted forced labor violations under 18 U.S.C. § 1594(a) against all Defendants; Count VII alleges conspiracy to commit forced labor violations against all Defendants; Count VIII alleges individual liability for forced labor violations under 18 U.S.C. §§ 1584, 1589,

---

[2] Plaintiff voluntarily dismisses seven other counts: Count IV (state forced labor claim), Count XI (negligence and negligent infliction of emotional distress), Count XII (individual liability for negligence), Count XIII (individual liability for intentional infliction of emotional distress), Count XIV (negligent hiring, retention, and supervision), Count XV (premises liability), and Count XVI (injunctive relief and asset preservation). *See* ECF No. 41 at 2 n.1.

and 1590 against Defendants Laura Gauld, Malcolm Gauld, Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd; Count IX seeks damages for individual liability under 18 U.S.C. § 2255 against those same Defendants; and Count X alleges individual liability for conspiracy against those same Defendants.

### III.    Analysis

### A.  Legal Standard

To withstand a motion to dismiss, a complaint must contain enough facts which, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation modified). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." *Nicolaci v. Anapol*, 387 F.3d 21, 24 (1st Cir. 2004) (quoting *TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., Inc.*, 215 F.3d 172, 175 (1st Cir. 2000)).

### B.  Involuntary Servitude Under 18 U.S.C. § 1584 (Counts I and VIII)

#### 1.   Direct Liability (Counts I and VIII)

The Trafficking Victims Protection Reorganization Act ("TVPRA"), 18 U.S.C. § 1595(a), provides victims a private right of action against perpetrators and knowing beneficiaries of forced-labor ventures. *See* 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or

6

should have known has engaged in an act in violation of this chapter) . . . .”). Section 1584, the involuntary servitude statute, renders it unlawful to “knowingly and willfully hold[] [someone] to involuntary servitude or sell[] [them] into any condition of involuntary servitude.” 18 U.S.C. § 1584(a).

Plaintiff brings Count I for direct liability against all Defendants for violating § 1584. She also brings Count VIII against Defendants Laura Gauld, Malcolm Gauld, Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd (collectively “the Named Defendants”) for, in part, violating section 1584. She asserts Defendants exercised “total control” over students, including by limiting their communication with family and restricting access to medical or psychological care. FAICC ¶ 144(b). She further alleges many students, including herself, spent more time performing forced labor than attending class, rendering Hyde’s curriculum “secondary to its labor and disciplinary systems.” *Id*. ¶ 144(c). She points to the “Brother’s Keeper” program as evidence of pervasive surveillance of students, where any perceived rule triggered physical punishment and forced labor. *Id*. ¶ 144(d). Plaintiff contends the forced labor system created a “profitable enterprise” for Hyde, under which all Defendants “operated with one common and shared financial interest, which was to share the profits from Hyde.” *Id*. ¶¶ 144(g), 145.

Defendants counter that “involuntary servitude” reaches only “forms of compulsory labor akin to African slavery,” ECF No. 20 at 8 (quoting *United States v. Kozminski*, 487 U.S. 931, 942 (1988)) (quotation modified), and that because Plaintiff never alleges Defendants obtained her labor through physical or legal threats, Count I and the corresponding portion of Count VIII must fall. In *Kozminski,* the Supreme Court

construed a materially identical statutory predecessor to § 1584.[3] 487 U.S. at 944. The Court explained that "the term 'involuntary servitude' necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."[4] *Id.* at 952. Courts assessing whether such coercion could plausibly compel a victim must weigh the victim's "special vulnerabilities." *Id.* The First Circuit later distilled this into an "essential element" of "compulsion" under section 1584. *United States v. Alzanki*, 54 F.3d 994, 1000 (1st Cir. 1995). A plaintiff establishes compulsion when the defendant's actual or threatened physical or legal coercion "intentionally causes the oppressed person reasonably to believe, given her 'special vulnerabilities,' that she has no alternative but to remain in involuntary service." *Id.*

Here, Plaintiff alleges Defendants coerced students into involuntary servitude by threatening—and often imposing—physical abuse for alleged "transgressions," including failure to complete forced labor requirements such as the "5:30" program. *See* FAICC ¶ 144. Defendants rejoin that students like the Plaintiff "chose" to either comply with School rules or be subjected to a disciplinary system "that included a work component," and that the work program therefore was not compulsory. ECF No. 42 at 5. In essence, Defendants argue Plaintiff inverts causation: they maintain the School used labor as

---

[3] *Compare Kozminski*, 487 U.S. at 944 ("knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude any other person for any term"), *with* 18 U.S.C. § 1584 ("knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude[] any other person for any term").

[4] Congress enacted the TVPRA in 2000 to expand the scope of prohibited conduct, and section 1589 "was intended expressly to counter [*Kozminski*]." *United States v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004), *judgment vacated on other grounds*, 545 U.S. 1101 (2005). Congress, however, did not amend section 1584 following *Kozminski*.

punishment for rule violations, rather than using physical threats or punishment to compel labor.

At the outset, the Court rejects Defendants' attempt to reduce the TVPRA's causation inquiry to traditional but-for causation principles. The statute reaches those who knowingly benefit from participation in a venture that engages in forced labor or trafficking when the beneficiary had actual or constructive knowledge of that practice. *See* 18 U.S.C. §§ 1589, 1590. That framework contemplates harm that may be one step removed from the beneficiary's own conduct, but "[t]he fact that the harm to" the Plaintiff "may have resulted indirectly does not in itself preclude standing." *Warth v. Seldin*, 422 U.S. 490, 504 (1975). Plaintiff satisfies the causation element at this stage because she alleged "distinct and palpable injuries that are 'fairly traceable' to" the Defendants' actions. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376 (1982) (quotation modified).

As relevant to the alleged violations, "plaintiffs must prove that an unlawful means of coercion caused them to render labor." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 918 (10th Cir. 2018). Plaintiff may prove a TVPRA claim's causation element through "common circumstantial evidence," *Francis v. APEX USA, Inc.*, 406 F. Supp. 3d 1206, 1214 (W.D. Okla. 2019) (quotation modified)—a mode of proof especially suited to clarifying a fact-laden issue at the pleading stage, *see Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 56 (1st Cir. 2013).

The Court acknowledges Defendants' argument that the FAICC does not specifically allege that Ms. Fuller herself rendered labor under threat—rather, that the School forced her in the "2-4" program for violating unspecified School rules, not vice versa. But the complaint does assert that she, and students generally, faced additional work-related punishments if they failed to adequately participate in "2-4." Read as a

whole, the complaint's facts construed in the light most favorable to Plaintiff plausibly allege that when labor in "2-4" failed to "cure" a student, the School escalated them into "Tude Trips" to Eustis or Seguin Island, where they performed still more labor or suffered further abuse. *See García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) ("[T]he complaint must be read as a whole."). At this early pleading stage, the complaint sufficiently alleges that Hyde induced forced labor by means of threats. Because Plaintiff satisfies the causation element, the Court turns to whether these threats meet section 1584's definition of "threat of physical violence."

Section 1584 reaches labor compelled by the threat of physical violence, but not "labor compelled merely by threat of negative consequences." *Sahebdin v. Khelawan*, No. 21-cv-2956, 2022 WL 4451005, at *7 (E.D.N.Y. Sept. 24, 2022). In other involuntary servitude cases, courts have generally dismissed claims where the defendant threatened the victim with deportation or withheld wages absent any threat of physical violence. *See, e.g., United States v. Shackney*, 333 F.2d 475, 486–87 (2d Cir. 1964); *Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13 CIV. 6935, 2015 WL 4743542, at *4 (S.D.N.Y. Aug. 11, 2015); *Claros v. Marvin's Refrigeration Corp.*, 800 F. Supp. 3d 391, 399 (N.D.N.Y. 2025) ("Plaintiffs did not allege that they were physically restrained, abused, or threatened with physical abuse."). Conversely, claims have survived dismissal when they paired threats of physical violence alongside the defendant's benefit from the victim's work. *See, e.g., Oak-Jin Oh v. Soo Bok Choi*, No. CV 2011-3764, 2016 WL 11430442, at *6 (E.D.N.Y. Feb. 29, 2016).

Compulsion concerns intensify when, as here, the alleged victims are students or minors, because courts weigh a victim's particular vulnerabilities in assessing coercion under the TVPRA. *See United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015) ("The

10

correct standard [under the TVPRA] . . . permits the jury to consider the particular vulnerabilities of a person in the victim's position . . . ."). *Kozminski* itself supplies the apt analogy: a child "may be subject to physical coercion that results in his staying" when told he must walk home alone at night through unfamiliar terrain, "although a competent adult plainly would not be."487 U.S. at 948. Plaintiff's theory tracks this logic. A student theoretically could walk away from the Hyde schoolgrounds—or, if an adult, withdraw from the School—but minors remain constructively trapped by their enrollment in the School and physically trapped by the School's remote location. And although a student's initial assignment to labor may have followed a rule violation, the threat of further physical punishment—including additional labor—for inadequate performance of that labor establishes compulsion. *See, e.g.*, *United States v. Kalu*, 791 F.3d 1194, 1211–12 (10th Cir. 2015) (affirming a TVPRA jury instruction directing the jury to consider whether the victim would have declined additional labor absent the defendant's unlawful means (quotation modified)).

Accordingly, the Court concludes Plaintiff has plausibly pleaded a program of involuntary servitude. The Court **DENIES** Defendants' motion to dismiss Count I and part of Count VIII.

### 2. *Beneficiary Liability (Count I)*

Within Count I, Plaintiff also alleges Defendants are liable for involuntary servitude as beneficiaries within the meaning of 18 U.S.C. §§ 1584 and 1595(a). *See* FAICC ¶ 150. Section 1595(a) establishes beneficiary liability for any violation of the chapter, including the involuntary servitude statute, for a person who "knowingly benefits . . . financially or by receiving anything of value from participation in a venture which that

11

person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

Plaintiff has plausibly alleged the first element, which "merely requires that the defendant knowingly receive a financial benefit," with respect to Defendants Hyde School,[5] Malcolm Gauld, and Laura Gauld. *Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 793 (E.D. Mich. 2021) (quotation modified). The FAICC alleges Malcolm Gauld received over $1.5 million in salary from Hyde and Laura Gauld received over $310,000. FAICC ¶¶ 240, 241. The FAICC also adequately alleges that Hyde School itself benefited from the forced labor by receiving revenue as a nonprofit boarding school and entering into contracts with third parties to provide free labor. *See, e.g.*, *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 565 (7th Cir. 2023) ("[Defendant's] awareness that it was benefiting from those contracts is enough to satisfy the 'knowingly benefits' element.").

With respect to the other three Named Defendants, the FAICC alleges no non-conclusory facts demonstrating they received any financial benefit beyond the bare statement that they "[r]eceived financial compensation from Hyde's forced labor operations." *See* FAICC ¶¶ 242–44. Although the statute requires only that the defendant be "aware that it was benefitting in some way from its participation in the venture," *Salesforce.com*, 76 F.4th at 564, the FAICC contains no allegations as to those Defendants' actual or constructive knowledge or that they received any financial benefit

---

[5] The Court assumes for the purposes of this Order and as the parties conceded at oral argument, that the Hyde School may be sued under the TVPRA as an institution. *See, e.g.*, *Ruderman v. Kenosha Cnty.*, 178 F.4th 333, 337 (7th Cir. 2026) (holding the word "whoever" in the closely related section 1589 includes "bod[ies] corporate," such as a county) (alteration in original); *Woodhouse v. Riverview Christian Acad.*, No. 26-cv-01885, 2026 WL 2127167, at *7 (C.D. Cal. June 4, 2026) (sustaining TVPRA claims against defendant boarding school).

at all. Such threadbare recitals of statutory elements, unsupported by factual content, fail to satisfy Rule 8. *See Iqbal*, 556 U.S. at 687 ("Rule 8 does not empower [a plaintiff] to plead the bare elements of h[er] cause of action, affix the label 'general allegation,' and expect [her] complaint to survive a motion to dismiss.").[6] Thus, the beneficiary liability claims fail against Defendants Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd.

Plaintiff also adequately satisfies the second element as to the remaining Defendants—the School, Laura Gauld, and Malcolm Gauld. "[P]articipation in a venture," 18 U.S.C. § 1589(b), "requires that the [plaintiffs] allege that the [defendants] took part in a common undertaking or enterprise involving risk and potential profit," *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). The School's participation in the forced labor is plausibly alleged as a boarding school that relied on students' labor and attendance for revenue. As executive leadership during the relevant period and as the alleged designers and overseers of the forced labor programs, Malcolm and Laura Gauld's plausible participations in the venture likewise satisfy this element.

The third element is also adequately pleaded. "The phrase 'knew or should have known,' echoes common language used in describing an objective standard of negligence." *Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 193 (D. Mass. 2019). Under this standard, the TVPRA permits recovery even absent proof of intentional misconduct. *See id.* at 194. Construing the allegations in the light most favorable to the Plaintiff, the FAICC alleges the School oversaw the forced labor programs and that Malcolm and Laura Gauld held leadership positions during the relevant time period. Moreover, the alleged shifting

---

[6] The Court does not hold that drawing a salary is the only means by which a defendant may benefit from participation in a venture. Rather, the FAICC fails to allege facts plausibly establishing that the three Named Defendants possessed the requisite knowledge.

13

of students from less severe to more severe punishments supports a reasonable inference that leadership closely controlled students' participation in the programs. At this stage, these allegations permit the inference that these three Defendants had constructive, if not actual, knowledge of the work programs.

In sum, the Court **DENIES** Defendants' motion to dismiss the beneficiary liability claim (Count I) against Defendants Hyde School, Malcolm Gauld, and Laura Gauld and **GRANTS** the motion as to Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd.

### C. Forced Labor Under 18 U.S.C. § 1589

#### 1.  Direct Liability (Counts II and VIII)

Plaintiff and the putative class bring one count of direct liability against all Defendants (Count II) for forced labor trafficking in violation of 18 U.S.C. § 1589(a). They also bring the same claim against the Named Defendants (Count VIII) for individual liability under section 1589(a).

Section 1589(a) and section 1595's civil cause of action create direct liability for forced labor for any person who:

> knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means–
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint . . . .

14

18 U.S.C. § 1589(a); *see* 18 U.S.C. § 1595(a) (providing civil cause of action). Section 1589 defines "serious harm" to mean "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id*. § 1589(c)(2).

Having already resolved the causation question, *see* Subsection III.B.1, the Court turns to Defendants' primary argument for dismissal: that the students' work does not rise to the level of forced labor under the statute. Defendants contend that *United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014), should be read to mean that school personnel acting in loco parentis can require students to perform activities they characterize as household chores without incurring liability under 18 U.S.C. § 1589. But that construction overextends *Toviave*'s holding. The case is materially distinguishable by several key facts, the most important of which is that Defendants here allegedly profited from the students' labor, while *Toviave* involved uncompensated household chores performed within a private home. *See id*. at 624; *see Woodhouse v. Riverview Christian Acad*., No. 26-cv-01885, 2026 WL 2127167, at *4 (C.D. Cal. June 4, 2026) (denying motion to dismiss where defendants "collect[ed] more than one million dollars in revenue each year" from the nonprofit boarding school).

The allegations in the FAICC, construed in the light most favorable to Plaintiff, also rise above the level of ordinary household chores such as the cooking, cleaning, and laundry at issue in *Toviave. See* 761 F.3d at 624. Here, students allegedly had to clean facilities with asbestos, landscape staff members' homes, and clean the campus without protective gear. FAICC ¶ 62. These allegations also exceed conditions typical of a boarding

school: the School restricted students' prescribed medications, limited their food intake, and prevented them from talking to their families. *See Woodhouse*, 2026 WL 2127167, at *5 (finding conditions more severe than a typical boarding school where plaintiff-student "could not contact her family," and where staff "monitored [her] phone calls," "precluded [her] from receiving medical care," and "fostered an environment where students would monitor one another for any perceived infraction"). The Court therefore finds the students' work qualifies as forced labor and turns to the remaining elements of section 1589.

Section 1589(a) requires the imposition of "serious harm." Following *Kozminski*, Congress amended the statute to expand the definition beyond physical violence to include "more subtle psychological methods of coercion—'such as where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence.'" *United States v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004), *judgment vacated on other grounds*, 545 U.S. 1101 (2005) (quoting H.R. Conf. Rep. No. 106–939, at 101 (2000)). Courts accordingly apply a "hybrid" inquiry that considers the particular vulnerabilities of a person in the victim's position while also requiring that the victim's acquiescence be objectively reasonable under the circumstances. *Riviera*, 799 F.3d at 186–87.

The FAICC satisfies this standard. The students were minors, separated from the outside world and actively prohibited from communicating with their families and, in some cases, with each other. *See* FAICC ¶ 165. The School withheld their prescribed medications and subjected them to psychological and emotional abuse, including slurs, leading students to believe they had to comply with the punitive labor requirements to succeed at Hyde and adopt the "Hyde way." *Id*. ¶ 166. Students also faced constant threats

16

of realized and potential violence and the loss of privileges, including restricted food intake. *Id*. Under these alleged circumstances, "it is plausible that any reasonable child in [Plaintiff's] position would have continued to perform labor for Defendants in order to avoid the physical, social, and psychological punishments levied against anyone who resisted." *Ortolani v. Cmty. of Jesus, Inc.*, No. CV 25-12005, 2026 WL 1847045, at *7 (D. Mass. June 26, 2026).

Plausible allegations of "threats of serious harm," however, do not alone suffice to state a claim under section 1589(a); the statute also imposes a scienter requirement. A plaintiff must show the "defendant knew (1) that the enumerated 'circumstance existed' and (2) that the defendant was obtaining the labor in question as a result." *Martínez-Rodríguez v. Giles*, 31 F.4th 1139, 1156 (9th Cir. 2022) (quoting *United States v. Calimlim*, 538 F.3d 706, 711 (7th Cir. 2008)). The FAICC clears this bar with respect to the School but falters as to certain individual Defendants. As to the institution, the FAICC plausibly alleges the School's awareness of the forced labor practices occurring at the School: the School marketed the work programs as a selling point to distinguish it from "therapeutic schools," FAICC ¶ 39; the School contracted with Seguin Island specifically to provide free labor, *id*. ¶¶ 80–81; and the work occurred in plain sight on a frequent, widespread basis, *see id*. ¶ 63 (Facebook post by Malcolm Gauld showing pictures of students performing outdoor labor on campus). The allegations that the School shifted students between programs and punishments depending on their compliance further indicate that the institution maintained tight control and surveillance over the students' work activities. These facts, taken altogether, plausibly support the inference that the Defendant institution was aware of the forced work environment and intended its results—free labor.

17

Count I therefore adequately pleads all elements of forced labor against the School under section 1589.

The FAICC does not, however, adequately plead individual liability against every Named Defendant. As Defendants correctly note, the FAICC "fails to allege sufficient facts to hold . . . the individual defendants personally liable." ECF No. 20 at 14. Defendants Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd are identified as having held various roles at Hyde, but the complaint does not specify their positions during 2014–15, when Ms. Fuller attended the School, or during the enrollment periods of the eligible class members.[7] Because the FAICC fails to allege these Defendants' roles in the purported labor scheme, it likewise fails to allege that they knew of the coercive environment while the labor occurred. To the extent Counts I and VIII assert claims against these three Defendants, those claims fail.

Malcolm Gauld and Laura Gauld stand on different footing. The FAICC asserts Laura Gauld "has held executive positions at Hyde since 2004," encompassing the periods during which Ms. Fuller and the class members attended the School. FAICC ¶ 27. She allegedly "personally implemented" policies concerning forced labor, "[d]irectly supervised staff who carried out" the forced labor assignments, and "[p]ersonally observed" the "2-4" program. *Id*. ¶ 240. Malcolm Gauld likewise served as Hyde's President during 2014–15 and "designed and implemented" the forced labor policies. *Id*.

---

[7] Plaintiff relies on *Bates v. Sequel Youth & Fam. Servs., LLC*, No. 23-CV-01063, 2025 WL 2917756 (N.D. Ala. Oct. 14, 2025), to argue liability may be imputed to these three Defendants even absent personal involvement in committing students to forced labor. *See* ECF No. 41 at 17. *Bates* is inapposite; the defendant held liable there occupied a leadership position at the time the labor occurred, even though he did not personally impose the conduct. *See Bates*, 2025 WL 2917756, at *6. The FAICC here does not allege that these Defendants held leadership positions or were otherwise involved with Hyde during the time periods at issue.

¶ 241. The complaint further points to a concrete example of his knowledge of the labor practices: a Facebook post in which he shared pictures of students doing landscaping on campus. *See id*. ¶ 63. These allegations, combined with both Defendants' roles as executive leaders who designed and oversaw the work policies throughout the relevant period, support the reasonable inference that they possessed the requisite knowledge under section 1589. Plaintiff has therefore plausibly pleaded a claim of forced labor against the School, Malcolm Gauld, and Laura Gauld.

The Court accordingly **DENIES** Defendants' motion to dismiss the direct liability claims for forced labor (Count I) against Defendants Hyde School, Malcolm Gauld, and Laura Gauld and **GRANTS** the motion as to Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd. The Court **DENIES** Defendants' motion to dismiss the portions of Count VIII asserting individual liability against Malcolm Gauld and Laura Gauld and **GRANTS** the motion as to the portions of Count VIII asserting individual liability against Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd.

### 2. *Beneficiary Liability (Count II)*

Within Count II, Plaintiff also alleges Defendants are liable for forced labor violations as beneficiaries within the meaning of 18 U.S.C. § 1589(b). *See* FAICC ¶ 173. Section 1589(b) establishes beneficiary liability for any person who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged

in the providing or obtaining of labor or services by any of such means." 18 U.S.C. § 1589(b).[8]

Plaintiff has plausibly alleged the elements of beneficiary liability against Malcolm Gauld, Laura Gauld, and the School for the same reasons discussed above. *See* Subsection III.B.2. Because Plaintiff has already adequately pleaded the knowledge element required for the direct liability forced labor claim, she necessarily satisfies the lower negligence standard that governs beneficiary liability. *See Ortolani*, 2026 WL 1847045, at *9 ("Given that the complaint plausibly alleges Defendants' scienter for the direct-liability theory, the complaint necessarily meets the lower bar of negligence required for Ortolani's beneficiary-liability theory.").

The Court accordingly **DENIES** Defendants' motion to dismiss the beneficiary liability claims (Count II) against Hyde School, Malcolm Gauld, and Laura Gauld and **GRANTS** the motion as to Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd.

### D. Trafficking Under 18 U.S.C. § 1590 (Counts III and VIII)

#### 1. Direct Liability (Counts III and VIII)

Plaintiff and the class members bring one count (Count III) of direct liability against all Defendants for trafficking under 18 U.S.C. § 1590. They also bring part of Count VIII against individual Named Defendants for trafficking under the same section.

Section 1590 provides: "Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this

---

[8] The beneficiary liability language in section 1589(b) mirrors that of the cause of action for beneficiary liability in section 1595(a). *Compare* 18 U.S.C. § 1589(b) ("Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture . . . ."), *with* 18 U.S.C. § 1595(a) ("[W]hoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture . . . ."). The Court's analysis therefore applies equally to both provisions.

chapter shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1590(a). A violation of this section requires at least one predicate violation of the forced labor statute, sections 1589(a) or (b). *See Norambuena v. W. Iowa Tech Cmty. Coll.*, 773 F. Supp. 3d 628, 726 (N.D. Iowa 2025). Because the Court has already found that Plaintiff adequately pleaded a violation of the forced labor statute as to the School and Malcolm and Laura Gauld, it confines its analysis here to those three Defendants. *See* Subsection III.C.1.

A defendant who violates section 1589 also violates section 1590 if the defendant "recruited the person to perform forced labor." *Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 94 (2d Cir. 2019). To plead a trafficking claim predicated on forced labor, a plaintiff must therefore show that the defendant took some action that could amount to coercing the plaintiff. *See Lewis v. Monks of Most Blessed Virgin Mary of Mount Carmel*, No. 23-cv-202, 2024 WL 3374140, at *6 (D. Wyo. July 11, 2024); *Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*, No. 19-cv-1422, 2021 WL 7186030, at *9 (E.D.N.Y. Apr. 30, 2021) ("Unlike . . . force[d] labor claims, which focus on the illicit means of maintaining subjugation, trafficking claims under Section 1590 focus on how a victim was initially subjugated.").

Plaintiff alleges that Defendants "lured vulnerable minors to Hyde under false pretenses," and that they "obtained labor by means of deception, coercion, and psychological control," including "disseminating misleading marketing materials" to potential students. FAICC ¶¶ 182, 184, 186. Defendants respond by renewing their earlier argument that section 1590 does not apply because the students' work did not qualify as forced labor under the federal statutes. *See* ECF No. 20 at 14–15. The Court has already rejected that argument and determined that the students' work constitutes forced labor,

21

*see* Subsection III.C.1, so it turns now to whether Plaintiff has adequately pleaded a trafficking claim under section 1590.

Plaintiff advances two theories of liability under this section: that Defendants recruited students to perform forced labor through misleading marketing materials and by specifically targeting vulnerable and struggling teens; and that Defendants harbored students at the boarding school to use them for forced labor.[9] *See* FAICC ¶ 186; 18 U.S.C. § 1590(a) ("Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services . . . ."). The Court addresses each theory in turn.

**Recruitment theory**. A plaintiff may plead impermissible recruitment under section 1590 by alleging "false promises of fair working conditions and appropriate compensation." *Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 526 (D. Md. 2016). In *Lipenga*, the defendant lured the victim to America with promises of fair wages, humane working conditions, and the opportunity to learn English, and then paid her a pittance and subjected her to abusive conditions once she arrived. *Id*. at 522–23. Similarly in *Ortolani*, the defendants marketed an abusive labor program as a "voluntary" educational program, concealed the program's actual conditions, invented fake course descriptions, and represented that the children would receive educational services they never received. 2026 WL 1847045, at *10. Even so, the court characterized the recruitment claim there as a "closer call." *Id*.

This case differs in a critical respect: the FAICC does not allege that Defendants promised one type of labor and delivered another. The marketing materials Plaintiff cites in the complaint promise only "character development" and an environment fostering

---

[9] Plaintiff clarified at oral argument that she is not asserting a trafficking claim predicated on a transportation theory of liability.

"personal growth, integrity, and leadership." FAICC at 2. And while that language may have led prospective students to expect an educational focus rather than a labor-intensive one, the complaint itself concedes that Hyde disclosed the existence of "Work Crew" to applicants. *See id.* ¶ 35 (quoting a school marketing material that said "[i]f a school doesn't rely on expulsion, how can it appropriately penalize transgressions? At Hyde, should you find yourself on the receiving end of BK, you will likely be 'campused' and/or spend some time on what we call Work Crew"). At most, the complaint shows that the School touted itself as a boarding school that blended work and education—and that, for rule-breakers, the work came to outstrip the education. That is a far cry from the bait-and-switch schemes in *Lipenga* and *Ortolani*.

Plaintiff's alternate framing, raised at oral argument, fares no better. Plaintiff argued that Hyde promised traditional therapy but delivered "attack therapy" instead. The "false promises" required under section 1590 must correlate to the existence or absence of "fair working conditions," not the therapeutic methods provided. *Lipenga*, 219 F. Supp. 3d at 526; *see also Martínez-Rodríguez*, 31 F.4th at 1154 (finding defendants "placed Plaintiffs in a bait-and-switch situation in which Plaintiffs journeyed from Mexico to Idaho with one set of work expectations, only to be required upon arrival to perform" a different type of menial labor). Plaintiff must plead facts establishing causation between the alleged coercion and the continued labor. *See Dias De Souza v. Am. Used Auto Parts, Inc.*, No. 25-CV-40077, 2026 WL 788267, at *7 (D. Mass. Mar. 20, 2026). Here, the FAICC pairs a misrepresentation about therapy with coercion into labor, but never welds the two together—alleging, at bottom, two different wrongs rather than one recruitment scheme. Absent that causal link, the recruitment theory fails on both fronts: there was no

23

bait-and-switch in the labor promised, and no tie between the therapy misrepresentation and the labor extracted.

**Harboring theory.** The TVPRA does not define "harbor," 18 U.S.C. § 1590(a), but courts applying the term have consistently required that the lodging be provided for the purpose of extracting labor. The First Circuit has found that a defendant "knowingly harbor[s]" a victim by renting her room at a motel room for the "*object* of obtaining her [] labor or services"—in this case, using the victim for prostitution. *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (emphasis added). The Northern District of Illinois likewise found harboring where a defendant "provid[es] lodging to someone *for the purposes of* obtaining her labor or services against her will." *Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017) (emphasis added). Both cases demand a causal link between the lodging and the extraction of labor—a link the FAICC, read generously in favor of the Plaintiff, does supply.

The School undeniably housed its students, and the complaint alleges that Defendants benefited from students' forced labor "the entire time" they resided there. FAICC ¶ 186. That allegation sits uneasily with the harboring theory: the complaint does not affirmatively allege that Defendants housed students *in order to* obtain their labor, and Hyde's students—unlike the victim in *Ricchio*, who was housed at a motel for the specific purpose of extracting sexual labor—were, at least nominally, housed there to attend school, with forced labor imposed later as discipline for those who broke the rules. But *Ricchio* also arose at the pleading stage, and the First Circuit there held that a plaintiff need not allege a fully realized scheme, only a plausible inference that housing served the purpose of extracting labor. *See* 853 F.3d at 556. Construed in Plaintiff's favor, the allegation that the School continuously benefited from forced labor throughout students'

24

residency—rather than through some isolated or incidental arrangement—permits, if narrowly, an inference that housing and labor extraction were connected rather than coincidental. Whether that inference survives a more developed factual record is a question for another day. At the pleading stage, however, the Court cannot say the harboring theory is implausible on its face, and it declines to dismiss Count III and Count VIII on that basis.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Count III and Count VIII to the extent those counts assert trafficking claims predicated on a recruitment theory against the Defendants and **DENIES** the motion as to the claims based on a harboring theory.

### 2. *Beneficiary Liability (Count III)*

Within Count III, Plaintiff and putative class members also allege Defendants are liable for trafficking as beneficiaries within the meaning of 18 U.S.C. §§ 1590 and 1595(a). *See* FAICC ¶ 192. Section 1595(a) establishes beneficiary liability for any chapter violation, including the trafficking statute, against a person who "knowingly benefits . . . financially or by receiving anything of value, from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). Beneficiary liability under section 1595(a) is therefore derivative: it rises or falls with the underlying section 1590 violation on which it is predicated.

The Court has already dismissed the recruitment theory of direct liability under section 1590, and beneficiary liability predicated on that theory fails for the same reason. *See* Subsection III.D.1. But because the harboring theory survives, Plaintiff's beneficiary liability claim survives to the same extent, and against the same Defendants, as the underlying harboring violation. The Court therefore **GRANTS** Defendants' motion to

25

dismiss Count III as to beneficiary liability predicated on recruitment, but **DENIES** it as to beneficiary liability predicated on harboring.

Because the harboring theory survives as to direct liability and, derivatively, as to beneficiary liability, Count III is **DISMISSED IN PART** and otherwise survives.

### E. Claims Under 18 U.S.C. § 2255 (Counts V and IX)

Section 2255 offers a civil remedy for minors who suffer personal injuries stemming from forced labor under 18 U.S.C. §§ 1589 and 1590. *See* 18 U.S.C. § 2255(a); *Le v. New Eng. Swimming*, 795 F. Supp. 3d 193, 198 (D. Mass. 2025) ("The Child Abuse Victims' Rights Act ('CAVRA'), in turn, creates a cause of action for a plaintiff who was the victim of a violation of one of many federal statutes that prohibit child abuse and 'suffer[ed] personal injury as a result of such violation.'" (quoting 18 U.S.C. § 2255(a)). Plaintiff and putative class members bring one count (Count V) against all Defendants under the statute and one count (Count IX) against the individual Named Defendants. Defendants seek dismissal on the same ground raised against the trafficking claims: that Plaintiff has not plausibly pleaded the existence of forced labor. *See* ECF No. 20 at 14–15.

That argument fails for the same reasons already discussed. The Court has found that Plaintiff adequately pleaded forced labor under section 1589 against the School, Malcolm Gauld, and Laura Gauld, and has sustained a trafficking claim against those Defendants on a harboring theory. Because either predicate violation suffices to support a claim under section 2255, Counts V and IX survive as to those Defendants and the Court **DENIES** the motion as to those counts.

### F. Attempted Forced Labor Violations Under 18 U.S.C. §§ 1584, 1589, and 1590 (Count VI)

Plaintiff and putative class members bring one count (Count VI) of attempted involuntary servitude, forced labor, and trafficking against all Defendants. Defendants do not substantively respond to this claim but merely request its dismissal. *See* ECF No. 20 at 8.

Sections 1595(a) and 1594(a) provide a cause of action for attempted violations of the aforementioned statutes. *See* 18 U.S.C. § 1595(a) ("whoever . . . attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter"); 18 U.S.C. § 1594(a) ("whoever attempts to violate section[s] . . . 1584, 1589, [or] 1590 . . . shall be punishable in the same manner as a completed violation of that section").

To plead attempt, a plaintiff must plausibly allege "both an intent to commit the substantive offense and a substantial step towards its commission." *United States v. Turner*, 501 F.3d 59, 68 (1st Cir. 2007) (quotation modified). Courts applying the TVPRA have defined "attempt" as an "act or an instance of making an effort to accomplish something, especially without success." *Rojas v. First Pick Farms LLC*, 822 F. Supp. 3d 819, 850 (W.D. Mich. 2026) (quoting *Attempt*, *Black's Law Dictionary* (12th ed. 2024)).

As previously discussed, Plaintiff successfully alleged that Defendants knew or should have known their actions violated sections 1584 and 1589 sufficient to establish direct liability. *See* Subsections III.B.1, III.C.1. III.D.1. Those same allegations establish a substantial step toward, and intent to commit, the underlying violations. Count VI

survives as to Malcolm Gauld, Laura Gauld, and the School, and the Court **DENIES** the motion on Count VI as to those Defendants.

### G. Conspiracy to Commit Forced Labor Violations Under 18 U.S.C. §§ 1584, 1589, and 1590 (Counts VII and X)

Plaintiff and putative class members bring one count (Count VII) of conspiracy to commit involuntary servitude, forced labor, and trafficking against all Defendants. They also bring the same claim (Count X) against the Named Defendants. Defendants do not substantively respond to the conspiracy claim but merely request its dismissal. *See* ECF No. 20 at 8.

Sections 1595(a) and 1594(b) provide a cause of action for conspiracy to commit violations of the applicable statutes. *See* 18 U.S.C. § 1595(a) ("[w]hoever . . . attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter"); 18 U.S.C. § 1594(b) ("[w]hoever conspires with another to violate section[s] . . . 1589 [or] 1590 . . . shall be punished in the same manner as a completed violation of that section").

As with the term "harbor," the TVPRA does not define "conspiracy." The Court thus borrows the common law definition of civil conspiracy from Maine. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484 (2023) ("We generally presume that such common-law terms bring the old soil with them." (quotation modified)); *Ortolani*, 2026 WL 1847045, at *11 (applying the state common law definition to a conspiracy charge under the TVPRA). Under Maine law, civil conspiracy requires: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful acts; and (5) damages." *Johnson v. City of Biddeford*, 454 F. Supp.

28

3d 75, 93 (D. Me. 2020), *aff'd in part, vacated in part, remanded sub nom. Welch v. City of Biddeford Police Dep't*, 12 F.4th 70 (1st Cir. 2021) (quoting *Smith v. Coyne*, No. CV-03-405, 2004 WL 1433638, at *4 (Me. Super. Ct. Apr. 12, 2004)).

Plaintiff has adequately pleaded each element: Malcolm Gauld, Laura Gauld, and other participants constitute two or more persons who intended to derive free labor from students; they reached a meeting of the minds by jointly designing and operating the offending work programs, including through the housing arrangements described above; and that conduct caused specific damages to students, including physical and psychological harm. *See Woodhouse*, 2026 WL 2127167, at *6 (finding adequate claim where "Defendants relied almost entirely on student labor" to run their nonprofit boarding school and "the incentive driving the businesses' labor was not payment, but psychological punishment"). Counts VII and X's conspiracy claims thus survive against Malcolm Gauld, Laura Gauld, and the School, and the Court **DENIES** the motion to dismiss as to those counts.

## H. Standing to Assert Class Claims

Defendants advance an overarching argument that the FAICC fails to state forced labor claims on behalf of the putative class members. *See* ECF No. 20 at 16–17. They assert Ms. Fuller, as the sole named plaintiff, has failed to allege she personally suffered injury from each alleged statutory violation, as required to assert a claim on behalf of a class. *See id*. They therefore urge the Court to dismiss all claims on this ground.

Article III standing is an "'indispensable part' of any case that must be present at every stage of the case." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 31 (1st Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). It assures respect for the constitutional requirement that federal court jurisdiction be limited to actual "'Cases'

29

and 'Controversies.'" *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (quoting U.S. Const. art. III, § 2, cl. 1). The "irreducible constitutional minimum" of standing requires that a plaintiff (1) suffer an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) likely redressable by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). That Ms. Fuller seeks to litigate this case as a class action does not relax that requirement: even a named plaintiff representing a class must personally show injury, rather than rely on injury suffered by unidentified class members. *See id.* at 338 n.6 ("That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." (quotation modified)).

The First Circuit has focused the Article III inquiry in class actions on whether the named plaintiff has adequate incentive to litigate issues that matter to the class. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 48–49 (1st Cir. 2018). In practice, incentive exists where the named plaintiff's claims parallel the putative class members' claims closely enough that success on the former "will more or less" dictate success on the latter, assuming proper class certification. *Id.* at 49. The named plaintiff's claims need not mirror the class members' claims exactly; the question is instead whether any differences between them leave the named plaintiff with an insufficient personal stake in the class members' claims. *See id.*

Here, Ms. Fuller clears that bar as to every surviving claim because her own allegations establish the injuries each claim requires. She adequately pleaded that the School compelled her and other students to partake in the "2-4" program under threat of physical injury and additional work punishments for refusal, establishing her personal

stake in the involuntary servitude claim. She likewise pleaded a forced labor claim in her own right: alleging the School obtained her labor through threats of serious physical and psychological harm, and that she continued working in order to avoid the imminent harm those threats created. *See* 18 U.S.C. § 1589(c)(2) (defining "serious harm" to include threats sufficient to compel a reasonable person in the plaintiff's position to continue performing labor to avoid incurring the harm). And as the Court has already held, the work Ms. Fuller and other students performed exceeded ordinary household chores or typical boarding school activities.

Ms. Fuller's own allegations also establish her personal stake in the surviving trafficking claim. She has pleaded that the School housed her, that Defendants benefited from her forced labor throughout her residency, and that her housing and her labor were connected in the manner the Court has found sufficient to state a harboring claim at this stage. *See* Subsection III.D.1. Her injury under that theory is therefore her own, not merely one shared by unidentified class members, which is all Article III demands. Because Ms. Fuller's allegations establish a personal injury traceable to each surviving theory of liability, and because success on her claims will largely determine success on the class members' parallel claims, she has standing to assert all surviving claims on behalf of herself and the class.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss. ECF No. 20 The Court **GRANTS** Defendants' motion to dismiss parts of Counts III and VIII to the extent they assert trafficking on a recruitment theory, and **DENIES** dismissal of those counts on a harboring theory against the School, Malcolm Gauld, and Laura Gauld. The Court **DENIES** Defendants' motion as to all other

claims asserted on behalf of Ms. Fuller and the putative class members: direct and beneficiary liability against the School, Malcolm Gauld, and Laura Gauld for involuntary servitude and forced labor (Counts I, II, and parts of VIII); direct liability against the School, Malcolm Gauld, and Laura Gauld for attempt and conspiracy to violate forced labor statutes (Counts VI, VII, and X); and direct liability against the School, Malcolm Gauld, and Laura Gauld for violations of section 2255 (Counts V and IX). The Court **DISMISSES** Georgia Gauld MacMillan, Donald MacMillan, and Laurie Gauld Hurd as Defendants, without prejudice, and grants Plaintiff leave to amend the complaint to provide proper factual support for the claims against them. *See* Fed. R. Civ. P. 15(a)(2).

**SO ORDERED.**

Dated this 27th day of July, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

32